FUNDAMENTALS OF

# Private Pensions

## Eighth Edition

McGill ▪ Brown ▪ Haley ▪ Schieber

Case 1:06-cv-02280-JPO Document 26-5 Filed 06/08/06 Page 2 of 4



Some plans whose normal benefits are based on career average compensation provide a minimum benefit that is expressed as a percentage of final compensation or a percentage of compensation as of some specified date. This type of provision is motivated by the same factors that lead some sponsors to adopt a modified career average approach; it is designed to ensure that the career average salary base bears a reasonable minimum relationship to the participant's earnings during the years immediately preceding retirement. Although the dollar benefit minimum is general and applies to all participants, the percentage of compensation minimum is specific to the individual participant. The latter is generally conditioned on a minimum period of service, such as 20 or 25 years, with reduced minimum benefits being payable for shorter periods of service.

## Time of Payment

A second broad aspect of retirement benefits is the time of payment. Under the great majority of plans, participants are entitled to receive the full amount of their accrued benefits upon retirement on or after reaching a specified age, called the normal retirement age. This entitlement is a contractual right and can be exercised without the consent of the employer. In some plans, however, the age requirement is supplemented by a minimum service requirement, such as five years. The plan may provide full or reduced benefits upon retirement prior to the normal retirement age.

### Normal Retirement Age

The normal retirement age has traditionally been considered to be the earliest age at which eligible participants are permitted to retire with full benefits. However, ERISA established a statutory definition of normal retirement age, used for determining plan vesting limits, accrual of benefit standards, and plan funding requirements. As defined by ERISA, normal retirement age is the normal retirement age specified in the plan, but not later than age 65 with five years of participation.[8]

There are three essential components in the definition of a benefit accrual: the dollar amount of the benefit, the age of the participant at which the benefit is payable in full (i.e., the normal retirement age), and the annuity form under which the benefit is payable. No benefit definition is complete without all three of these components. The annuity form of the benefit can be a single life annuity, a joint and survivor annuity, or a single life annuity with a refund feature. The dollar amount of prospective retirement benefits to be paid to two participants of the same age and sex under two separate pension plans may be identical, but the actuarial value of the accrued benefits (and, hence, their cost) can be quite different if they do not become payable at the same age and under the same annuity form.

Thus the normal retirement age should be viewed more as an element in the definition of the retirement benefit than as a statement of when participants are expected to retire. In

[8] ERISA §3(24); IRC §411(a)(8).

actuality, participants may retire over a wide range of ages, with appropriate adjustments in their benefits. Most plans permit retirement before the normal retirement age, usually subject to specified age and service restrictions, and most permit deferment of retirement beyond the normal retirement age.

Many retirement plans have linked eligibility to unreduced benefits to five or 10 years of service or participation, but some have a much longer period if the minimum age is under 65. For example, the normal retirement age may be the earlier of age 65 with five years of service, 60 with 20 years of service, or 55 with 30 years of service. Discontinuities in benefit entitlement may be avoided by providing unreduced benefits by the employee's age whenever his or her age and service equal a specified number, such as 90. A provision of this sort is referred to as the 'Rule of 90,' although the concept may also be applied in establishing eligibility for vested benefits.

Under the Rule of 90, such combinations as age 60 and 30 years of service would entitle participants to full benefits for their credited years of service. The rule may, of course, be stated in terms of other numbers, such as 85 or 95. Some plans with a nominal normal retirement age permit retirement before that age, subject to minimum service requirements, with full benefits for the years of accrued service. Under some collectively bargained plans, participants are permitted to retire with full accrued benefits after a specified amount of service, such as 30 years, irrespective of age, a provision commonly referred to as a '30 and out' retirement. Some plans have alternative criteria for normal retirement age, such as the earlier of age 65 or the completion of 30 years of service. Under all the foregoing arrangements, it would have to be said that there are multiple normal retirement ages, which depend on the related service requirement and the participant's age of entry into the plan.

In addition to its actuarial function, the normal retirement age serves as an instrument of personnel policy. In most companies, it indicates the age at which most employees would be expected to retire—or certainly the age by which most employees would have retired. Some plans previously specified an age, usually 70, at which retirement was to be mandatory, but mandatory retirement is generally no longer permitted.[9]

Ideally, from the standpoint of the personnel policy of an individual employer, the normal retirement age is the theoretical age beyond which the service of employees would be uneconomical. This point, of course, is not easy to determine. In theory, multiple retirement ages should be adopted in many cases, since a retirement age that would be suitable for one class of employees might be completely inappropriate for another group. In the airlines industry, for example, flight personnel have a lower retirement age than nonflight employees. Jobs that require physical strength and endurance may call for a lower retirement age than those that emphasize mental agility. Within particular job classifications, moreover, differences in individual employees should, ideally, be recognized. Nevertheless, the practice, subject to certain exceptions, is to have a normal

[9] An exception applies where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business. For example, special rules apply to law enforcement officers and firefighters. ADEA §4(f),(i). *Western Airlines, Inc. v. Criswell*, 472 US 400 (1985).

retirement age that applies to all employees, with provisions for adjustments to particular situations through optional retirement arrangements. Since the ADEA generally does not allow an employer to discharge an employee on the basis of age, the mental and physical fitness of the individual for continued employment may have to be evaluated before any discharge of an older employee.

## Early Retirement

It is customary to provide that an employee may retire earlier than the normal retirement age, subject to attaining a specified age, typically 55, and possibly fulfilling a minimum period of service, such as 10, 15, or 20 years. At one time, some plans required employer consent for early retirement, but IRS regulations no longer permit this.

Some plans permit early retirement only in the event of total and permanent disability, which is discussed later in this chapter. In such plans, age and service requirements are also imposed. Some of the plans provide a special disability benefit, while others pay only the same percentage of the regular accrued benefit that would normally be paid on early retirement.

Calculating an early retirement benefit involves two steps. The first is to determine the amount of benefit that would be payable at normal retirement age based on the participant's service and compensation at the date of early retirement. This determination is made in the same manner as the computation of the vested benefit. The second step is to multiply the accrued benefit payable at normal retirement age by an early retirement factor reflecting the fact that benefit payments begin earlier than contemplated and, therefore, extend over a longer time; the assets supporting the benefits earn less investment income before payments commence; and there will be no gains to the plan from the participant's dying before benefit payments commence (the benefit of survivorship).

When the accrued retirement benefits are reduced by a set of factors that reflect the foregoing elements, they are said to be 'actuarially reduced' or 'actuarially equivalent.' The expression 'full actuarial reduction' is frequently applied to the process that fully recognizes the longer payout period and loss of investment earnings (and benefit of survivorship) to distinguish it from the results obtained by applying a higher scale of percentages to the accrued benefits. Some plans now link eligibility for unreduced benefits to Social Security's age at which a full benefit is payable. Thus one set of reductions applies for workers born before 1938, another for those born between 1938 and 1954, and a third for those born after 1954.

The reduction in the accrued benefits for early retirement depends upon the mortality and interest assumptions that underlie the calculation of the actuarial value of the normal retirement benefits. The greater the assumed rates of mortality and the higher the interest rate assumption, the greater the reduction for each year of early retirement. The percentage reduction in the accrued benefits for each year of early retirement slopes downward. When the actuarial value of the normal retirement benefits is computed on the basis of