UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
TIMOTHY D. LAURENT,                :
on behalf of himself and on        :
behalf of all other similarly      :
situated,                          :
                                   :
                Plaintiff,         :   06 Civ. 2280 (MBM)
                                   :   OPINION AND ORDER
      -against-                    :
                                   :
PRICEWATERHOUSECOOPERS LLP,        :
THE RETIREMENT BENEFIT             :
ACCUMULATION PLAN FOR EMPLOYEES    :
OF PRICEWATERHOUSECOOPERS LLP, and :
THE ADMINISTRATIVE COMMITTEE       :
TO THE RETIREMENT BENEFIT          :
ACCUMULATION PLAN FOR EMPLOYEES    :
OF PRICEWATERHOUSECOOPERS LLP,     :
                                   :
                Defendants.        :
----------------------------------X

APPEARANCES:

ELI GOTTESDIENER, ESQ.
(Attorney for Plaintiffs)
GOTTESDIENER LAW FIRM, PLLC
498 7th Street
Brooklyn, NY 11215
(718) 788-1500

ROBERT J. KOPEKY, ESQ.
(Attorney for Defendants)
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

MARK W. RASMUSSEN, ESQ.
(Attorney for Defendants)
KIRKLAND & ELLIS, LLP
153 East 53 Street
New York, NY 10022
(212) 446-4800

MICHAEL B. MUKASEY, U.S.D.J.

       Plaintiffs Timothy Laurent, Smeeta Sharon, and Michael A. Weil sue Defendant PriceWaterhouseCoopers ("PWC") alleging that PWC's Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP ("the RBAP") violates the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (2000) ("ERISA").  In particular plaintiffs allege that the RBAP violates ERISA's standards for calculating lump-sum benefits payable from a cash balance pension plan, standards for calculating accrued benefits, and age discrimination rules.  PWC has moved to dismiss all four claims, denominated "counts," of plaintiffs' First Amended Class Action Complaint.  For the reasons stated below, PWC's motion to dismiss is denied as to the first claim, but is granted as to the second, third, and fourth claims, which are dismissed.


I.

       Because all assertions in the complaint are accepted as true upon a motion to dismiss, DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1244 (2d Cir. 1987), the following facts are based on plaintiffs' amended complaint and those documents which are incorporated into the amended complaint by reference. See Fed. R. Civ. P. 10(c).

       Federal law recognizes two forms of employer-provided

1

pension plans: defined benefit plans and defined contribution plans.  In a defined contribution plan, an individual account is established for each participant and the employer makes periodic contributions to that account.  The participant's retirement benefit is the balance in the individual account.  A defined benefit plan entitles a participant to fixed periodic benefit payments upon retirement that are paid out pursuant to a formula outlined in the plan.

On July 1, 1994, Price Waterhouse LLP replaced its previous retirement plan with a defined benefit plan identical to the RBAP.  (Amended Compl. ¶17) On July 1, 1998, Price Waterhouse LLP and Coopers & Lybrand LLP merged to create PWC. (Amended Compl. ¶18) On July 1, 1999, the Coopers & Lybrand retirement plan merged with the Price Waterhouse retirement plan to form the RBAP. (Amended Compl. ¶18)

The RBAP is a "cash balance" defined benefit plan sponsored by PWC that covers its entire workforce. (Amended Compl. ¶1) A cash balance plan is a defined benefit plan that strongly resembles a defined contribution plan. See Esden v. Bank of Boston, 299 F.3d 154, 176 (2d Cir. 2000).  Under a cash balance plan, a hypothetical account is established in each participant's name and the benefits payable under the plan are calculated based on the value of that hypothetical account. (Amended Compl. ¶19) The account is funded by PWC's hypothetical

"contributions" in the form of "pay credits" and hypothetical earnings expressed as "interest credits." (Amended Compl. ¶20)

Instead of using guaranteed periodic interest credits based on a fixed or variable rate to value the hypothetical interest credits, the RBAP adjusts account balances daily by hypothetical interest credits that reflect the hypothetical performance of investment vehicles chosen by each participant from a PWC selected list of investments. (Amended Compl. ¶21) The RBAP participant accounts are updated daily so that participants can track their hypothetical investment choices. (Pl. Mem. of Law, Ex. C) Therefore, although a defined benefit plan, the RBAP is designed to mimic a defined contribution plan in that it does not guarantee its participants any return on the hypothetical investments that constitute their pension.

The RBAP allows most participants to leave their account balances in the RBAP after terminating employment or retiring; if the participant does so he will continue to receive interest credits even though he is no longer a PWC employee. (Amended Compl. ¶ 22) A participant with an account balance over $5,000 at the time his employment ends can leave his benefits in the RBAP through April 1 of the year following the later of his retirement or the date he reaches age 70 ½. (Amended Compl. ¶22) Thus, the RBAP is a "front-loaded" interest credit plan, defined as one in which "future interest credits to an employee's

3

hypothetical account balance are not conditioned upon future service." I.R.S. Notice 96-8 at 4.  To be tax-qualified, a cash balance plan must be front-loaded, I.R.S. Notice 96-8, "that is, [it] must include interest on the money in the employee's hypothetical account for the period between his leaving the employer and his reaching" the normal retirement age. <u>Berger</u> v. <u>Xerox Corp. Ret. Income Guar. Plan</u>, 338 F.3d 755, 762 (7th Cir. 2003).

Under the RBAP, a participant is fully vested after 5 years of employment with PWC, meaning PWC must then provide the employee with 100% of PWC's contributions to his RBAP account. (Amended Compl. ¶24)  RBAP participants who leave PWC after this five year vesting period can elect to receive their "normal retirement benefit" as a lump sum distribution at the time they leave.

The RBAP states that "[a] Participant's Normal Retirement Benefit shall be an amount equal to the Actuarial Equivalent (calculated by projecting the Deemed Account Balance to Normal Retirement Age using the Deemed Plan Interest Rate) of his or her Deemed Account Balance." (Amended Compl. ¶28) The Deemed Plan Interest Rate is defined as the annual rate of interest equal to the interest rate on 30-year Treasury securities, as specified by the IRS for the month of February (or before July 1, 2001, the month of May) immediately preceding the

4

plan year in which the calculation is made. (Amended Compl. ¶29) The RBAP defines normal retirement age as "[t]he earlier of a date a Participant attains age 65 or completes five (5) Years of Service." (Amended Compl. ¶30)

Plaintiffs Laurent, Sharon, and Weil are former PWC employees who were and are RBAP participants. (Amended Compl. ¶¶ 11-13) In 2002, Laurent ended his employment with PWC and requested a single lump-sum distribution of his benefits. (Amended Compl. ¶11)  On May 20, 2002, Laurent was paid the balance of his cash balance account, and he claims that he was paid an amount less than the value of his accrued benefit as defined under ERISA. (Amended Compl. ¶11)  In 2002, Sharon's employment with PWC ended and she requested a single lump-sum distribution of her benefits under RBAP, which she received on April 30, 2002. (Amended Compl. ¶12) Sharon was paid the balance of her cash balance account, an amount she claims was less than the value of her accrued benefit. (Amended Compl. ¶12) Weil ended his employment with PWC on December 14, 2001 but has not requested a lump-sum distribution under the RBAP. (Amended Compl. ¶13)  Laurent, Sharon, and Weil had fully vested accounts under the RBAP and all of their account balances exceeded $5000 at the time their employment with PWC ended. (Amended Compl. ¶24)

In a September 1999 letter to the IRS, PWC stated that "a low normal retirement age in a qualified defined benefit plan"

was PWC's response to "poor rule making by the Treasury
Department" and that such a low normal retirement age should not
be considered to be an attempt to circumvent "reasonable" rules.
(Amended Compl. Ex. 1) Further, PWC contends that the regulatory
requirement that a "lump sum may never be less than the present
value of the annuity payable at a participant's normal retirement
date at a mandated interest rate" is "neither mandated nor
suggested by the law or the legislative history." (Amended Compl.
Ex. 1) PWC continued on to explain that it was adopting a low
normal retirement age so that it would not be forced by the IRS
regulations to provide employees seeking a lump-sum distribution
with more money than was in their hypothetical account at the
time of the distribution. (Amended Compl. Ex. 1)

In their first claim, plaintiffs allege that the RBAP
violates ERISA, because under the RBAP the accrued benefit is not
expressed in terms of the annuity that it will yield at normal
retirement age and the lump sum benefit paid to the plaintiffs is
worth less than such an annuity. (Amended Compl. ¶36)
Specifically, plaintiffs allege the RBAP's "normal retirement
age" of five years of service is invalid under ERISA and, in the
alternative, is invalid because it was not stated clearly in
PWC's Summary Plan Description ("SPD").  Under plaintiffs'
theory, the normal retirement age under the RBAP becomes the
statutory default of age 65 because the RBAP did not provide for

an alternative, valid normal retirement age. Thus, as a cash balance defined benefit plan paying lump-sum distributions to former employees who had not reached the normal retirement age, the RBAP was required to project the balance of the hypothetical account forward to age 65 and then pay out the present value of that projected balance. (Amended Compl. ¶¶ 37-38) Additionally, plaintiffs allege the RBAP violates ERISA because it does not provide a projection rate that accurately reflects a reasonable estimate of future interest credits. (Amended Compl. ¶ 59)

Second, plaintiffs claim that the RBAP violates ERISA, because after a participant satisfies the vesting standards her benefit is conditioned on the distribution option chosen. (Amended Compl. ¶68) Specifically, plaintiffs take issue with the RBAP's definition of a participant's accrued benefit as that participant's hypothetical current account balance, which they allege is an incomplete definition because it does not reflect the participant's total "accrued benefit" as defined under ERISA. (Amended Compl. ¶69) Because a participant who leaves his money in the RBAP after he reaches normal retirement age can continue to receive interest credits until age 70 ½, plaintiffs argue that a participant's accrued benefit under the RBAP includes both his current account balance and the stream of future investment credits payable with respect to that account balance until the participant reaches age 70 ½. (Amended Compl. ¶ 70)

7

Third, plaintiffs claim that the RBAP violates the ERISA age discrimination rules, because the older RBAP participants accrue less benefits than younger employees who receive the same pay and interest credits. (Amended Compl. ¶¶ 76-78)

Fourth, plaintiffs claim that the RBAP violates ERISA because it does not actuarially increase a participant's benefit after normal retirement age. (Amended Compl. ¶¶ 81-84) Although the RBAP continues to provide interest credits to participants after the normal retirement age who leave their money in the RBAP, plaintiffs allege these interest credits are not a substitute for an actuarial adjustment because they do not maintain the actuarial value of a participant's normal retirement benefit or any larger benefit accrued as of a date after normal retirement age. (Amended Compl. ¶ 85)

II.

In deciding a rule 12(b)(6) motion to dismiss, the allegations of the complaint are taken as true and construed in a manner favorable to the plaintiffs. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  Such a motion can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,"

8

Conley v. Gibson, 335 U.S. 41, 45-46 (1957), and cannot be granted merely because recovery appears unlikely on the face of the complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

### III.

The RBAP is a defined benefit plan under ERISA even though it imitates a defined contribution plan and "[t]he regulatory consequences of this classification are wide-reaching." Esden, 229 F.3d at 158.  Under ERISA, a defined contribution plan is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses . . . ." ERISA § 3(34).  A "defined benefit plan" is any plan other than a defined contribution plan, thus a cash balance plan such as the RBAP is a defined contribution plan. ERISA § 3(35).

Cash balance plans differ from the traditional final-pay plans for which the defined benefit plan regulations were designed, and ERISA sometimes requires "outcomes that are in tension with the objectives" of the cash balance plans. Esden, 229 F.3d at 159.  Thus, ERISA can mandate the completion of a "whipsaw" calculation to determine the correct value of a cash balance plan that is distributed as a lump-sum before normal retirement age.  Under ERISA, any distribution from a cash

9

balance plan other than a single-life annuity payable at normal
retirement age must be "no less than the actuarial equivalent of
such benefit.  For a cash balance plan this calculation involves
projecting the cash balance forward and then discounting back to
present value." Id.  It is the forward projecting and discounting
back that accounts for the whipsaw terminology.  Under a whipsaw
calculation, if a plan's projection rate is higher than the
statutorily prescribed discount rate, the present value of the
accrued benefit will exceed the participant's account balance.
If that higher accrued benefit is not paid out, an impermissible
forfeiture has occurred in violation of ERISA § 203(a) and I.R.C.
§ 411(a)(2).[1]  Esden, 229 F.3d at 159.  Thus, in calculating the
accrued benefit due to PWC employees based upon a normal
retirement age, PWC can be required to engage in a whipsaw
calculation.  Esden, 299 F.3d at 173 ("[a] defined benefit
pension plan, including one adopting a cash balance format, need
not offer a lump-sum distribution as an optional form of benefit
. . . when it does so provide, that distribution must be the
actuarial equivalent of the accrued benefit valued according to
the statutory methodology . . . The Plan cannot contract around
the statute." (internal citations omitted)).

_____

[1] The IRS has primary jurisdiction and rule-making authority
over ERISA's funding, participation, benefit accrual, and vesting
provisions and ERISA § 2003(c) specifically adopts the
regulations promulgated under I.R.C. §§ 410(a), 411, and 412.
Esden, 229 F.3d at n. 2.

A. Calculation of a lump-sum distribution under the RBAP

          Under ERISA, a "normal retirement benefit" is "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." ERISA § 3(22); I.R.C. § 411(a)(9).  Normal retirement age is defined as 65, unless otherwise provided by the pension plan. ERISA § 3(24); I.R.C. § 411(a)(8). The RBAP defines normal retirement age as the earlier of age 65 or five years of service. (Amended Compl. ¶ 30).  Thus, the relevant question to determine if plaintiffs' lump-sum distributions were properly calculated is whether plaintiffs had reached normal retirement age at the time they consented to such a distribution.  If plaintiffs had not reached normal retirement age, then the lump-sum distribution must be equivalent to the present value of the single-life annuity that would be payable if the participant had reached normal retirement age.

          The RBAP's defined normal retirement age of five years of service is invalid and, therefore, the normal retirement age under the RBAP becomes the statutory default of age 65.  The RBAP normal retirement age is invalid because it is expressed as a term of years of service as opposed to a certain, specified age in contravention of the intent of ERISA as interpreted by the Second Circuit.  In the alternative, the RBAP normal retirement age is invalid, because it was not defined, or even mentioned, in

the RBAP Summary Plan Description ("SPD"); the SPD controls when it conflicts with the pension plan itself, thus the RBAP has no defined normal retirement age and the age 65 statutory default applies.  Further, defendant's argument that a whipsaw calculation does not apply because the RBAP did not guarantee its participants a minimum interest rate is without merit; a whipsaw calculation is required to determine the proper pension benefit owed to plaintiffs.  Therefore, defendant's motion to dismiss the first claim of the amended complaint is denied, as explained more fully below.

        1. <u>Definition of Normal Retirement Age</u>

        Defendant argues that plaintiffs' first claim should be dismissed, because ERISA authorizes the plan sponsor to define the "normal retirement age as any age below age 65" and, thus, the RBAP "normal retirement age" of five years of service is valid. (Def. Mem. of Law at 2)  While defendant's argument that a normal retirement age can be any age before 65 may be true, the RBAP does not specify one consistent age as the normal retirement age.  Instead the RBAP defines the normal retirement age as five years of service, which means that each employee will be a different age at the time he reaches the normal retirement age.  Such a normal retirement age is invalid under the Second Circuit's interpretation of ERISA.

        In § 203(a)(2)(B), ERISA enacted certain minimum

vesting requirements that all covered pension plans must meet to decrease the number of pension benefits lost; these minimum vesting standards are calculated in terms of years of service.  A pension must vest by the time an employee has completed five years of service, thereby entitling the employee to the percentage of his accrued benefits derived from employer contributions. ERISA § 203(a)(2)(B); I.R.C. § 411(a)(2)(A).  In addition to the vesting standards, ERISA § 203(a) states that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age . . . ."  Normal retirement age is defined in ERISA § 3(24) as the earlier of "(A) the time a plan participant attains normal retirement age under the plan, or (B) the later of (i) the time a plan participant attains age 65, or (ii) the 10th anniversary of the time a plan participant commenced participation in the plan."

The Second Circuit has stated that ERISA § 203(a)'s provisions "with regard to employer contributions are properly interpreted as imposing two distinct types of minimum vesting requirements, one of which is independent of the employee's years of service." Duchow v. New York State Teamsters Conference Pension and Ret. Fund, 691 F.2d 74, 77 (2d Cir. 1982).  The Court further explained:

> [a]ccordingly § 203(a)(2) has been described
> as requiring vesting of rights 'prior to

13

> retirement.' <u>See, e.g.</u>, <u>Alessi</u> v. <u>Raybestos-
> Manhattan, Inc.</u>, 451 U.S. at 510.  In
> complementary fashion, the first clause of §
> 203(a) refers only to the attainment of
> normal retirement age and makes no mention of
> periods of service.  Thus both the format of
> § 203(a) and the disparate contents of its
> conjoined parts indicate that two discrete
> vesting requirements are imposed, the first
> <u>linked</u> <u>to</u> <u>age</u> <u>without</u> <u>regard</u> <u>to</u> <u>length</u> <u>of</u>
> <u>service</u> and the second depending on the
> length of service without regard to age.

<u>Duchow</u>, 691 F.2d at 77 (emphasis added).  The Eleventh Circuit

takes this view also, finding that normal retirement age is a

term of art under ERISA that was incorporated into the Act in

1976 to differentiate it from the vesting period limitations of a

pension, which are based upon years of service as opposed to a

set age. <u>See</u> <u>Deak</u> v. <u>Masters, Mates and Pilots Pension Plan</u>, 821

F.2d 572, n. 5 (11th Cir. 1987).  Thus, a normal retirement age

below age 65 cannot be defined in reference to length of service.

Further, the Second Circuit explained that the use of

the phrase "10th anniversary" in ERISA's definition of the

default normal retirement age does not impose a service

requirement such that years of service can be used to define a

normal retirement age. <u>Duchow</u>, 691 F.2d at 80.  The Court

explained, "had Congress intended 'normal retirement age' to be

dependent on ten years of service, it would hardly have selected

such convoluted and imprecise . . . language as 'the 10th

anniversary of the time a plan participant commenced

participation in the plan' instead of a clear and direct phrase

14

such as 'the participant's completion of ten years of service.'"
Id.  The Court then confirmed its holding "that Congress intended
that an employee's pension rights would vest, irrespective of the
length of his service" at a certain age.  Id.

Additionally, in explaining the ability of an employer
to set a normal retirement age below 65, the I.R.S. described
normal retirement age as a "certain specified age." Rev. Rul. 78-
20 (1978).  Under this ruling, a pension plan can set a normal
retirement age of less then 65 years old, but it must be a set
age as opposed to a term of years in service.  Id.

Because a normal retirement age cannot be defined in
reference to years of service, the RBAP proposed normal
retirement age is invalid.  Because the RBAP does not provide for
an alternative, valid normal retirement age, the normal
retirement age for purposes of the RBAP is age 65.

2. Summary plan description

In the alternative, plaintiffs contend that the RBAP's
five years of service normal retirement age is invalid because it
was not clearly stated in the relevant SPDs.  Defendant counters
that it did not conceal or misrepresent the normal retirement age
under the RBAP.  Specifically, defendant claims that the RBAP
documents defined normal retirement age as "[t]he earlier of the
date a Participant attains age 65 or completes give (5) Years of
Service." (Def. Mem. of Law Ex. A, RBAP at 27) To gain access to

15

the documents, RBAP participants had to make a written request to PWC and defendant argues this is enough to alert the participants of the normal retirement age provided by the RBAP. (Def. Mem. of Law, Ex. B, RBAP SPD (1999) at 15) Neither the PWC 1999 SPD nor the 2001 SPD states what the "normal retirement age" under the RBAP is. (Callen Decl. Ex. B; Ex. C)  Further, when the former Coopers & Lybrand Pension Plan was amended to incorporate RBAP's five-year normal retirement age, the relevant SPD did not disclose this change or that the RBAP's normal retirement age was five years of service, as opposed to age 65 under the old Coopers & Lybrand plan. (Amended Compl. ¶¶ 49-50)

     Employers are required to distribute SPDs describing pension plan benefits to employees and the SPD "must be sufficiently accurate and comprehensive to apprise participants and beneficiaries of their rights and obligations under the plan." Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 110 (2d Cir. 2003); ERISA § 102 ("[T]he summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."). Specifically, 29 C.F.R. § 2520.102-3(j)(1) states "[f]or employee pension benefit plans, [the SPD] shall also include a statement describing the plan's normal retirement age, as that term is

16

defined in section 3(24) of the Act, and a statement describing any other conditions which must be met before a participant will be eligible to receive benefits."  The SPD may be relied on by employees as the "'primary source of information regarding employment benefits,'" and it controls over conflicting provisions of the pension plan itself. <u>Frommert</u> v. <u>Conkright</u>, 433 F.3d 254, 268-69 (2d Cir. 2006) (quoting <u>Layaou</u> v. <u>Xerox Corp.</u>, 239 F.3d 205, 209 (2d Cir. 2001)); <u>Burke</u>, 336 F.3d at 110 ("Where the terms of a plan and the SPD conflict, the SPD controls.").

Under Second Circuit law, a faulty SPD violates ERISA if the plaintiff shows he was prejudiced by the fault. <u>Frommert</u>, 433 F.3d at 267.  A showing of prejudice requires "that a plan participant or beneficiary was *likely* to have been harmed as a result of a deficient SPD." <u>Burke</u>, 336 F.3d at 113.  Here, the complaint, read in the light most favorable to plaintiffs, could support a finding that the omission of a statement that the normal retirement age under RBAP is five years of service "likely, and quite reasonably, led plan participants to believe" that the normal retirement age upon which their benefits would be calculated was age 65. <u>Frommert</u>, 433 F.3d at 267.  Plaintiffs likely were harmed, because it was reasonable for plaintiffs to assume that they would continue to accrue interest credits until age 65 even if they terminated their employment before that point, thus grossly overestimating the value of their pension

17

benefits.  "There is no doubt about the centrality of ERISA's
object of protecting employees' justified expectations of
receiving the benefits their employers promise them." <u>Central
Laborers' Pension Fund</u> v. <u>Heinz</u>, 541 U.S. 739, 743 (2004).
Additionally, because plaintiffs were not informed that the
normal retirement age under the RBAP was five years, they were
prevented from immediately "seeking injunctive relief, altering
their retirement investment strategies, or perhaps considering
other employment," which is enough to meet the likely prejudice
standard. <u>Frommert</u>, 433 F.2d at 267.  An "employer may rebut a
showing of likely prejudice by demonstrating that the deficiency
was in fact a harmless error." <u>Frommert</u>, 433 F.3d at 267.  PWC
has not made such a showing.

   Thus, the normal retirement age provided in the RBAP is
invalid, because it was not clearly stated in the SPD and
plaintiffs were likely to have been harmed by their reliance on
the faulty SPD.  Because the SPD, which stated no normal
retirement age, controls, the normal retirement age for purposes
of the RBAP is the statutory default of age 65.

    3. <u>Lump-sum distribution for participants who have not
     reached normal retirement age</u>

   Because plaintiffs had not reached the normal
retirement age, the lump-sum distributions they received must
include the pay and interest credits that would have been
attained at age 65 as part of the accrued benefit; thus PWC may

have inaccurately calculated the amount owed to plaintiffs under the RBAP. See Esden, 229 F.3d at 154.

As discussed above, the RBAP is a defined benefit plan. The term "accrued benefit" has different definitions under ERISA § 3(23) for defined benefit and defined contribution plans. An "accrued benefit" for a defined contribution plan is "the balance of the individual's account," while an "accrued benefit" for a defined benefit plan is "the individual's accrued benefit . . . expressed in the form of an annual benefit commencing at normal retirement age." ERISA § 3(23)(B); I.R.C. § 411(a)(7)(A); ERISA § 3(23)(A); I.R.C. § 411(a)(7)(A)(I).

Under a defined benefit plan "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [such as a lump-sum distribution at termination] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit . . ." ERISA § 204(c)(3); I.R.C. § 411(c)(3); Treas. Reg. § 1.411(c)-1(e) (confirming this general rule).  Thus, for a cash balance plan, the accrued benefit is not the hypothetical account balance, but rather an amount derived from such hypothetical accounts that expresses an annuity with payments commencing at normal retirement age. Esden, 229 F.3d at 166-67; Berger v. Nazametz, 157 F. Supp. 2d 998, 1007 (S.D. Ill. 2001); Lyons v. Georgia-Pacific Corp., 221 F.3d 1235, 1251 (11th Cir. 2000)

19

("Thus, [plaintiff] did not have a statutory right to the amount found in his hypothetical account prior to the normal retirement date, and [defendant] did not have a right to limit any distribution to him to that amount."). The lump-sum distribution "must be valued in terms of the annuity that it will yield at normal retirement age and . . . it must be worth at least as much as that annuity." Esden, 299 F.3d at 163; see also McDaniel v. The Chevron Corp., 203 F.3d 1099, 1120 (9th Cir. 2000); Spacek v. Maritime Assoc., I L A Pension Plan, 134 F.3d 283, 290 (5th Cir. 1998).

When determining the amount owed to an employee whose pension plan has vested but who has not reached normal retirement age, a whipsaw calculation must be performed. "[T]he actuarial equivalent is calculated by projecting a participant's hypothetical account balance to normal retirement age using the rate at which future interest credits would have been calculated if the participant had remained in the plan until retirement age and then discounting it back to its present value." West v. AK Steel Corp. Retirement Accumulation Pension Plan, 318 F. Supp. 2d 579, 583 (S.D. Ohio 2004) (citing Xerox, 338 F.3d at 760; Esden, 229 F.3d at 159).

In Esden, as here, the plaintiff consented to a lump-sum benefit payment after her pension benefits had vested but before she reached normal retirement age. 299 F.3d at 159-60.

20

The Second Circuit required the pension plan to perform a whipsaw
calculation and held that "when a cash balance plan guarantees
that interest will be credited to a participant's hypothetical
account at a minimum rate, it violates ERISA to assume a lower
rate when projecting that account's value out to normal
retirement age for the purposes of calculating the lump-sum . . .
." 229 F.3d at 157.  Defendant argues that it need not undertake
a whipsaw calculation because, unlike the cash balance plan in
Esden, the RBAP does not guarantee that interest will be credited
to a participant's hypothetical account at a minimum rate so as
to create a floor beneath which the value of the interest credits
could not drop. See id.  Specifically, defendant argues that the
RBAP interest rate is far from guaranteed, because "the
investment credits are based entirely on the future performance
of each participant's investment measures and therefore can
fluctuate up or down significantly from one period to the next."
(Def. Mem. of Law at 21)

        However, I do not read Esden to create such a loophole
in ERISA's requirement of a whipsaw calculation for a cash
balance defined benefit plan.  The requirement that cash balance
plans project the cash account balance forward to normal
retirement age applies even when the plan does not have a
guaranteed minimum interest rate. See Hirt v. Equitable Ret. Plan
for Employees, Managers, and Agents, No. 01 Civ. 7920, 2006 WL

2023545, at * 43 (July 20, 2006) ("Esden and Berger . . .
required that the plans project the cash account balance forward
to normal retirement age -- using a rate not less than the
minimum guaranteed interest rate, if applicable, or an estimate
of the variable interest rate provided by the company's
retirement plan if not.") Further, I.R.S. Notice 96-8 explains
that when calculating the lump sum distribution under a cash
balance plan, "the balance of the employee's hypothetical account
must be projected to normal retirement age and then the employee
must be paid at least the present value, determined in accordance
with [IRC] section 417(e), of that projected hypothetical account
balance," while making no mention of the requirement of a
guaranteed minimum interest rate.

Allowing a pension plan to avoid the required whipsaw
calculation by providing its participants with a less secure
benefits package conflicts with ERISA's purpose to guarantee that
employees receive the pension benefits they were promised. See
Nachman v. Pension Benefit Guar. Corp., 446 U.S. 359, 375 (1980).
Although defendant is correct that it is not required by ERISA to
set a minimum interest rate for its cash balance plan, see Hirt,
2006 WL 2023545, at * 24, the lack of such a minimum rate does
not exempt the RBAP from having interest credits fall within the
definition of an accrued benefit.  Courts require "estimation
rather than determination" of the accrued benefit, because

interest and discount rates are often tied to government securities and such securities fluctuate over time just as the participant-chosen investments under the RBAP will fluctuate. See, e.g. Xerox, 338 F.3d at 760; Hirt, 2006 WL 2023545, at *24. As a cash balance plan is based upon hypothetical accounts, the accrued benefit is always an estimate.  The RBAP's use of participant-chosen investments as the method of determining the value of the interest credits does not change the requirement that such interest credits be calculated as a benefit promised under the plan.  A benefit's inclusion in the whipsaw calculation is not contingent upon the form and degree of estimation required by that benefit; every whipsaw calculation involves estimation and it is irrelevant that some require more than others.

        For the reasons stated above, defendant's motion to dismiss the first claim in the amended complaint on this ground is denied.


B. Interest credits for age 65 through age 70 ½

        Plaintiffs allege in their second claim for relief that, at the time of the termination of their employment, each had a vested accrued benefit equal to "(1) the nominal balance in their hypothetical cash balance account, plus (2) the stream of future investment credits payable on such account balance through April 1 of the calendar year following the year in which they

would attain age 70 ½. (Amended Compl. ¶25)   According to
plaintiffs, "the essence of the claim is that because the RBAP <u>by
its terms</u> promises to continue providing investment credits for
as long as a participant leaves his money in the Plan – even
after normal retirement age – the right to these future
investment credits accrues at the same time the underlying pay
credits accrue." (Pl. Mem. of Law at 28)
Thus, plaintiffs' claim is that, for the purposes of the whipsaw
calculation, defendant must use age 70 ½ in place of the normal
retirement age.

        ERISA and the law of the Second Circuit do not require
cash balance defined benefit plans to project the value of
account balances beyond the time of normal retirement age if the
employee has terminated his employment before he reaches normal
retirement age.  As explained previously, whipsaw calculations
are required to project only up to, but not beyond, the normal
retirement age. <u>See</u> <u>Esden</u>, 229 F.3d at 163 (accrued benefit "must
be valued in terms of the annuity that it will yield at normal
retirement age."). Specifically, ERISA § 3(22) defines the
"normal retirement benefit" as "the benefit under the plan
commencing at normal retirement age." Here, the benefit
commencing at normal retirement age does not include interest
credits that could be earned, at the participant's option,
between ages 65 and 70 ½.  Further, there is no case or statutory

24

law that requires a defined benefit plan to provide post-normal
retirement age interest credits to participants or that considers
such post-normal retirement age optional interest credits to be
part of the accrued benefit owed to a participant taking a lump-
sum distribution before normal retirement age.

Plaintiffs attempt to analogize the present situation
to the body of case law requiring that cost-of-living adjustments
("COLAs") and living pensions, which are guaranteed increases in
a previously-accrued benefit mandated by the terms of a pension
plan after the participant's benefits commence, be included in a
participant's accrued benefit.

In Shaw v. International Association of Machinists and
Aerospace Workers, 750 F.2d 1458, 1459 (9th Cir. 1985), the Court
determined that a "living pension feature," which increased the
amount of payments to pensioners when the current salary of the
job from which they retired increased, was an "accrued benefit"
under ERISA.  In particular, the Court ruled that the living
pension was not conditional and thus an accrued benefit, because
the pension plan "provides for the adjustment in mandatory
language, to be measured by an occurrence wholly outside the
pensioner's control." Id. at 1464.  In Laurenzano v. Blue Cross
and Blue Shield of Massachusetts, Inc., 134 F. Supp. 2d 189, 199
(D. Mass. 2001), the Court held that a COLA is a part of the
participant's accrued benefit for the purposes of valuing a lump-

sum payment in a defined benefit plan, because participants would begin receiving COLA payments at the time they reached normal retirement age as a part of their annuity payments.  The present case differs from both Shaw and Laurenzano, because the interest credits available after the normal retirement age is reached are not mandatory, are not measured by an occurrence outside the pensioner's control, are not guaranteed, and, most importantly, are not available at the moment the normal retirement age commences.

Plaintiffs also rely on Esden to support their position that post-normal retirement age optional interest credits constitute an accrued benefit under the RBAP.  However, Esden does not provide any guidance as to whether interest credits that can be accrued after the participant reaches the normal retirement age should be included in that participant's accrued benefit for the purposes of a pre-normal retirement age lump-sum distribution.

Under 26 C.F.R. § 1.411(a)(4)(a), a right in an accrued benefit is "nonforfeitable," and thus must be included in the calculation to determine the lump-sum distribution before normal retirement age is reached, if at a particular time and thereafter, "it is an unconditional right."  Further, "a right which, at a particular time, is conditioned under the plan upon a subsequent event, subsequent performance, or subsequent

26

forbearance which will cause the loss of such right is a forfeitable right at that time." Id.  Under 29 U.S.C. § 1002(19), the term "nonforfeitable" when used with respect to a pension benefit or right "means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan."  The interest credits available to RBAP participants between ages 65 and 70 ½ are conditioned on the subsequent event of leaving money in the RBAP after attaining normal retirement age; therefore, such interest credits are forfeitable and need not be included in the accrued benefit calculation.

Accordingly, to determine the accrued benefit under the RBAP at a time before normal retirement age, the plan must project the participant's hypothetical account balance to age 65, using the rate at which future interest credits would have been calculated if the participant remained in the RBAP until age 65, and then discount that back to present value.  Any interest credits that could be acquired between ages 65 and 70 ½ due to the participant choosing to leave his money in the RBAP after he reaches normal retirement age are not included in the calculation of the accrued benefit for the purposes of a distribution before the participant has reached the normal retirement age.

Accordingly, defendant's motion to dismiss the second

27

claim is granted.

C. Age discrimination

        Plaintiffs' third claim is that the benefit formula used to compute RBAP participant's benefits violates ERISA § 204(b)(1)(H), because the RBAP benefits accrue at a rate that is reduced as a participant ages.  For the reasons explained below, cash balance defined pension plans, including the RBAP, do not violate ERISA's anti-discrimination provision.  Therefore, defendant's motion to dismiss the third claim is granted.

        Under ERISA § 204(b)(1)(H), an employee's "rate of benefit accrual" cannot be reduced on account of the employee's age.  Plaintiffs describe the RBAP's discriminatory conduct in the following manner:

> If two employees, one who is 30 years old and another who is 60 years old, each accrue a retirement benefit under the Plan that has the same *present value* -- then fundamental mathematical principles instruct that the promised benefit at retirement age (i.e., the "accrued benefit") must be far greater for the younger employee.  For example, if each employee is promised a retirement benefit at age 65 that has a present value for each of $2,000, this means that the retirement benefit promised to the 30-year-old employee is in the neighborhood of $4,082 a year commencing at age 65, while the annual benefit promised to the 60-year-old employee is closer to $308.

(Pl. Mem. of Law at 33)

        Specifically, a defined benefit plan violates ERISA if

28

"an employee's benefit accrual is ceased, or the rate of an
employee's benefit accrual is reduced, because of the attainment
of any age." 29 U.S.C. § 1054(b)(1)(H)(I).  Plaintiffs theory is
that a cash balance benefit plan violates this provision, because
accrued benefits are the "annual benefit commencing at normal
retirement age," 29 U.S.C. § 1002(23)(A), meaning that an accrued
benefit is a traditional annuity beginning at age 65.  To apply
ERISA's definition of an accrued benefit to a cash balance plan,
the current hypothetical account balance must be translated to
the equivalent annuity those sums could purchase at the normal
retirement age.

        Thus, the claim of age discrimination arises because
pay credits placed into the account of a younger employee are
worth more than the same amount of pay credits placed into the
account of an older employee, because the younger employee's pay
credits will have more years to accrue interest before normal
retirement age. See Tootle v. Arinca, Inc., 222 F.R.D. 88, 93
(D.Md. 2004); Campbell v. BankBoston, N.A., 327 F.3d 1, 9-10 (1st
Cir. 2003); Eaton v. Onan Corp., 117 F. Supp. 2d 812, 823-24
(S.D. Ind. 2000).  The argument continues that if an employer
contributes the same proportional pay credit to an employee's
cash balance account every year, the value of that annual benefit
decreases with each passing year; the result is a declining
benefit accrual rate as an employee ages.  Under this line of

29

reasoning, all cash balance plans violate the ERISA age
discrimination provision.

The existing case law on this issue is sparse but
heavily weighted to one side. Compare Richards v. FleetBoston
Fin. Corp., 427 F. Supp. 2d 150 (D. Conn. 2006) (finding
violation of ERISA), with Cooper v. IBM Personal Pension Plan,
No. 05-3588, 2006 WL 2243300 (7th Cir. Aug. 7, 2006)(finding no
violation of ERISA); Tootle, 222 F.R.D. at 93 (same); Eaton, 117
F. Supp. 2d at 826 (same), Hirt, 2006 WL 2023545, at *27 (same);
Register v. PNC Fin. Servs. Group, Inc., No. 04 Civ. 6097, 2005
WL 3120268 (E.D.Pa. Nov. 21, 2005) (same);  Campbell, 327 F.3d at
10 (noting problems with this theory of age discrimination).  I
find that Richards is at odds not only with all other applicable
case law but also the logic of ERISA, and, thus, I agree with the
majority position that a cash balance benefit plan does not
violate the ERISA age discrimination provision.

First, the ERISA anti-discrimination provision does not
apply to employees who have not yet reached normal retirement
age.  I agree with the majority view that the legislative history
and statutory language of ERISA provide strong evidence that the
age discrimination provision was not intended to protect
employees until after they reach normal retirement age. See
Register, 2005 WL 3120268, at *5; Eaton, 117 F. Supp. 2d at 826-
29.  It is particularly persuasive that the statutory headings in

the parallel provision in the I.R.C. refer to the accrual of benefits "beyond normal retirement age" as being the subject of the anti-discrimination provision. <u>See</u> 26 U.S.C. § 411(b)(1)(H) and Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1975.

In <u>Tootle</u>, 222 F.R.D. at 93, the Court held that a cash balance defined benefit plan did not violate the ERISA age discrimination provision, because ERISA's "legislative history and statutory language provide strong evidence that this aspect of ERISA is not intended to protect workers until after the have attained normal retirement age."  The Court in <u>Hirt</u> also held that a cash balance plan does not violate ERISA's age discrimination provision, because the legislative history illustrates that ERISA's anti-discrimination provision was "intended to prevent discrimination against employees who wished to work past their normal retirement age without compromising their ability to continue earning pension benefits," thus the purpose was not to protect employees who had not yet reached normal retirement age. 2006 WL 2023545, at *27; <u>see</u> OBRA of 1986 § 9002, 100 Stat. At 1975; 26 U.S.C. § 411; <u>see</u> <u>also</u> <u>Eaton</u>, 117 F. Supp. 2d at 826 (holding cash balance plan does not violate ERISA's prohibitions on age discrimination because there are "strong indications in the statutes and the legislative history . . . that Congress did not intend to apply those provisions to the

31

rate of benefit accrual for employees who have not yet reached retirement age").

The First Circuit, did not decide whether a cash balance plan violated the anti-discrimination provision of ERISA, but supported this position when it stated that "the ERISA age discrimination provision may not even apply to workers younger than the age of normal retirement" based upon their interpretation of the statutory text of I.R.C. § 411(b)(1)(H). Campbell, 327 F.3d at 10.

Based on my reading of the statutory text, particularly the statutory headings of IRC § 411(b)(1)(H), and considering also the nature of the legislative history, I agree with the majority view that ERISA's anti-discrimination provision does not apply to employee who have not reached normal retirement age.

Second, the term "benefit accrual" is not equivalent to the term "accrued benefit" for the purpose of ERISA's anti-discrimination provision. ERISA does not define "rate of an employee's benefit accrual" for the purpose of applying the ERISA age discrimination provisions. Because cash balance plans accrue benefits otherwise than traditional defined benefit plans, and in particular are not defined in terms of an age 65 annuity, it is logical that the rate of benefit accrual is not determined by the change in the age 65 annuity but is instead determined by the change in account balance. The change in the account balance is

32

the logical measurement because cash balance plans are defined in terms of an account balance that grows with pay credits and interest. See Register, 2005 WL 3120268, at *7; Tootle, 222 F.R.D. at 94; Eaton, 117 F. Supp. 2d at 830.

The Court in Hirt took a similar approach, holding that the test for age discrimination with regard to a cash balance plan focuses on the amount of credits a plan provides to participants' accounts as opposed to the amount of interest those credits can accrue over time; thus, ERISA's age discrimination rule is not violated because such amounts are not varied based upon age. 2006 WL 2023545, at *33.  The Court in Register agreed, noting that "cash balance plans accrue benefits differently than traditional defined benefit plans," thus "it follows logically that the rate of benefit accrual [for cash balance plans] is determined by the change in the account balance." 2005 WL 3120268 at *7; see also Tootle, 222 F.R.D. at 94 ("The more sensible approach is to measure benefit accrual under cash balance plans by examining the rate at which amounts are allocated and the changes over time in an individual's account balance, as the ERISA provisions designed for traditional defined contribution plans would direct.").

Richards, 427 F. Supp. 2d at 161, is the only contrary case.  That case found that the phrase "attainment of any age" was "unambiguous with respect to the question of whether it

protects only employees who have reached age 65," and she used Esden's definition of the term accrued benefit in place of the term "benefit accrual" in the ERISA anti-discrimination rule. Therefore, the court held that "ERISA itself requires the court to compare annual benefits commencing at normal retirement age when considering age discrimination in a cash balance plan under § 204(b)(1)(H)," Richards, 427 F. Supp. 2d at 167, and, as a result, ruled that any cash balance defined benefit plan violates ERISA's anti-discrimination provision.  I do not believe such a drastic result is warranted.  If the term "benefit accrual" and "accrued benefit" are to be read as equivalents then the same term would have been used in both statutory sections.

Third, even if ERISA's age discrimination provision does apply to all participants, when that provision is properly applied to cash balance plans the rate of benefit accrual under such plans is not age dependent. See, e.g., Eaton, 117 F. Supp. 2d at 816.  The pay credits do not depend on a participant's age, nor do the interest credits themselves depend on age.  The effect of a younger employee's pay credits being worth more than those paid to older workers is caused not by discrimination but by the time value of money.  That RBAP participants all earn potentially different rates of interest credits is irrelevant to the discrimination claim, because all RBAP participants have the same opportunity to select investments from the same PWC-created list.

34

Any participant may chose any mix of investment vehicles under the RBAP to yield the amount of interest credits they deem most prudent, this determination is in no way based upon or limited by age.

Hirt supports this position, reasoning that "[t]he compounding of interest does not . . . cause a reduction in the rate of benefit accruals because of the attainment of any age." Cash balance plans do not grant any rights to one group of participants that are different from those granted to participants who were younger or older.  Every participant is entitled to the same employer contributions. Because "each participant, regardless of age, is entitled to increases in the participant's cash account according to the same interest rate, without any variation according to age," Hirt, 2006 WL 2023545, at *33, there is no violation of ERISA's anti-discrimination provision.

The Seventh Circuit is the only Circuit Court of Appeals to address this issue and it held that a cash balance defined benefit pension plan is not unlawfully discriminatory. Cooper, 2006 WL 2243300.  The Court held that the terms of a cash balance plan are age-neutral, because every participant receives the same pay credit and interest credit each year. Id. at *2. Further, the time value of money does not create age discrimination, because "[i]nterest is not treated as age

35

discrimination for a defined contribution plan, and the fact that [a defined contribution plan and a defined benefit plan] are so close in both function and expression implies that it should not be treated as discriminatory for a defined benefit plan either. The phrase 'benefit accrual' reads most naturally as a reference to what the employer puts in . . . while the defined phrase 'accrued benefit' refers to outputs after compounding." Id. at *2.  Age discrimination simply cannot arise from the neutral application of interest to account balances.

      Further, the Department of Treasury has stated consistently that cash balance plans are not age discriminatory. In its Revenue Proposals for 2005 and 2006, the Department of Treasury, after noting the disagreement between the district courts, stated that "cash balance plans and cash balance conversions are not inherently age-discriminatory." Department of Treasury, General Explanations of the Administration's Fiscal Year 2006 Revenue Proposals 82 (2005); Department of Treasury, General Explanations of the Administration's Fiscal Year 2005 Revenue Proposals 104 (2004).

      For the aforementioned reasons, defendant's motion to dismiss the third claim in plaintiffs' amended complaint is granted.

D. Forfeiture of accrued benefits

Plaintiffs allege in their fourth claim that the RBAP violates ERISA because it "did not and does not actuarially increase a participant's benefit after normal retirement age." (Amended Compl. ¶ 84) Thus, this claim focuses on benefits paid to RBAP participants after they reach normal retirement age. However, ERISA does not require PWC to provide RBAP participants with actuarial increases above the benefits they accrued under the RBAP after reaching normal retirement age.  Further, under the RBAP, participants do not suffer any impermissible benefit forfeitures resulting from benefit payments being deferred until participants stop working, because each participant is entitled to the entire value of his account balance regardless of when he elects to receive payments.  This differs from the traditional defined benefit plan, under which a participant's benefit is expressed as a lifetime stream of monthly payments commencing at normal retirement age; delaying benefit payment for a year beyond normal retirement age in that situation causes the participant to lose the value of the 12 monthly payments unless some additional benefit accrues after normal retirement age.

Under ERISA § 203(a)(3)(B), benefits based upon employer contributions are not forfeitable solely because the plan permits the payment of benefits to be suspended if the participant works past normal retirement age.  ERISA § 204(c)(3)

states that if a participant's accrued benefit is determined in an amount other than a normal retirement age annuity, then that amount must be the actuarial equivalent of such an annuity. Thus, ERISA requires only that an employee not forfeit benefits he has accrued prior to normal retirement age because he decides to continue working past that age.

Under the RBAP, participants can continue to earn pay credits for work after normal retirement age as well as interest credits in the same manner they did before reaching normal retirement age; thus, there is no forfeiture. See Lunn v. Montgomery Ward & Co., 166 F.3d 880, 883 (7th Cir. 1999); Atkins v. Northwest Airlines, 967 F.2d 1197, 1202 (8th Cir. 1992) (finding a "plan's failure to actuarially increase benefits to account for the delay in receiving benefits does not constitute a forfeiture of benefits under ERISA §203(a).").

If an RBAP participant decides to defer payment of his pension after the normal retirement age passes, that participant will still receive his full account balance including any additional pay and interest credits he accrues. When continued benefits accruals are provided for employment beyond normal retirement age, ERISA does not require further actuarial adjustments to a participant's accrued benefit. In Lunn, Judge Posner explained that there is no forfeiture under ERISA when plan participants continue to earn benefits at the same rate

38

after normal retirement age as they did before normal retirement age. 166 F.3d at 883; see also Monks v. Keystone Powdered Metal Co., 78 F. Supp. 2d 647, 668-69 (E.D. Mich. 2000) (holding that ERISA does not require additional actuarial adjustment beyond the plaintiff's continued accruals of benefits for each year he worked past normal retirement age).

Further, ERISA § 204(c)(3), the provision upon with plaintiffs' rely, is titled "Allocation of accrued benefits between employer and employee contributions."  The RBAP does not provide for employee contributions, and thus this section likely does not even apply here. See Kohl v. Assoc. of Trial Lawyers of Am., 183 F.R.D. 475, 482 (D.Md. 1998) (§204(c)(3) does not apply when a plan does not include employee contributions because that provision "pertain[s] to an employee's accrued benefits derived from employer and employee contributions.").

Accordingly, defendant's motion to dismiss the fourth claim of plaintiffs' amended complaint is granted.

\*                         \*                         \*

For the reasons set forth above, defendant's motion to dismiss is denied as to claim one of the plaintiffs' amended complaint and is granted as to claims two, three, and four.

SO ORDERED:

Michael B. Mukasey
U.S. District Judge

Dated: New York, New York
       September 5, 2006

40