UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY D. LAURENT, on behalf of himself and on behalf of all others similarly situated, SMEETHA SHARON, and MICHAEL A. WEIL,

                 Plaintiffs,

-v-

PRICEWATERHOUSECOOPERS LLP, THE RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP, and THE ADMINISTRATIVE COMMITTEE TO THE RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP,

                 Defendants.

MEMORANDUM ORDER
AND DECISION

06 cv 02280 (GBD)

GEORGE B. DANIELS, District Judge:

    Plaintiffs Timothy D. Laurent, Smeetha Sharon, and Michael Weil commenced this action to challenge the amount of his benefits payment under the ERISA-governed defined benefit "cash balance" pension plan known as the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (hereinafter, the "RBAP"). In the only remaining claim in this action,[1] Plaintiffs assert that they are entitled to a larger benefit payment than they received under the RBAP because Defendants miscalculated their benefits payment by using a formula that violated section 203(e)(3) of the Employee Retirement Income Security Act of

---

[1] Counts Two (Unlawful Conditioning of Accrued Benefits), Three (Age Discrimination Under ERISA § 204(b)(1)(H)), and Four (Failure to Preserve Actuarial Value of Normal Retirement Benefits) were dismissed upon consideration of Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ P. 12(b)(6). See Laurent v. PriceWaterhouseCoopers LLP, 448 F. Supp. 2d 537 (S.D.N.Y. 2006). This Court subsequently denied Defendants' motion for reconsideration with respect to Count One, which was sustained, on two occasions. See Laurent v. PricewaterhouseCoopers LLP, 2010 U.S. Dist. LEXIS 137123 (S.D.N.Y. Dec. 22, 2010); Laurent v. PriceWaterhouseCooper LLP, 2007 U.S. Dist. LEXIS 60774, 1-2 (S.D.N.Y. Aug. 17, 2007).

1974, as amended, 29 U.S.C.S. § 1001, et seq. ("ERISA"), and section 411(a) of the Internal Revenue Code, and Treasury Regulation § 1.411(a)-4T. Defendants now move for summary judgment dismissing Plaintiffs' claim pursuant to Fed. R. Civ. P. 56(c).[2] Defendants' motion for summary judgment is DENIED.

## BACKGROUND

### A.   BENEFITS UNDER THE RBAP[3]

The RBAP is a defined benefit cash balance pension plan for partners and employees of PricewaterhouseCoopers LLP ("PwC"). Answer ¶¶ 15, 27. Each plan participant has an account that accumulates credits. The plan participant automatically receives credits each pay period from PwC based upon a specified percentage of the plan participant's compensation. Ex. A, RBAP § 2.15. The plan participant also earns or loses credits based upon market performance. Ex. A, RBAP §§ 2.13, 2.14; Ex. B, RBAP Summary Plan Description ("SPD") (1999) at 2-3. The plan participant selects from various investment funds in which to hypothetically invest his or her credits. Ex. B, RBAP SPD (1999) at 3-4; Ex. C, RBAP SPD (2001) at 3-4. Investment options range in terms of asset class and level of risk, from the default money-market fund to large capitalization stock funds to international stock funds. Ex. D, PwC Retirement Plan Newsletter (Winter 2004). The plan participant may change the investment selection on a daily basis. Ex. A, RBAP §§ 2.14(c), 2.45; Ex. C., RBAP SPD (2001) at 4-5. However, these are hypothetical investments – that is, no monies are actually invested in the selected investment on behalf of the plan participant. The daily performance of the selected investment is simply used

---

[2] Plaintiffs cross-moved for an order refusing Defendants' application for summary judgment or granting a continuance to permit discovery pursuant to Fed. R. Civ. P. 56(f). This Court denied Plaintiffs' 56(f) motion by Order dated March 27, 2009. See Docket # 81.

[3] All exhibits are attached to the Declaration of Lauren O. Casazza, unless otherwise stated.

to adjust the credits in the plan participant's account upward or downward. Ex. A, RBAP § 2.13(b). Unlike many pension plans with a similar structure, there is no minimum guaranteed rate of return.

The plan participant becomes fully vested – or entitled to receive 100% of the credits in his or her account – after five years of service with PwC. Ex. A, RBAP § 6.1(b). After that time, and upon termination of employment by retirement or some other specified event, a plan participant is entitled to receive payment of the accrued benefit. Payments are made in one of two forms: a lump sum payment or a life annuity. Ex. A, RBAP §§ 5.4(b) and (c)). A life annuity pays out the credits in the plan participant's account in equal monthly installments for the life of the plan participant. A lump sum payment is the actuarial equivalent of a life annuity, meaning that the plan participant receives a one-time cash payment in the amount of the plan participant's credits.

## B.   WHIPSAW CLAIM ALLEGATIONS

In the First Amended Class Action Complaint, Plaintiffs claim that their accrued benefits upon withdrawing from the RBAP before age 65 were not properly calculated in the manner required under ERISA and the Tax Code, and that they were entitled to payments greater than their account balances. With respect to the claim at issue, "[P]laintiffs allege the RBAP's 'normal retirement age' of five years of service is invalid under ERISA and, in the alternative, is invalid because it was not stated clearly in PWC's Summary Plan Description." Laurent v. PriceWaterhouseCoopers LLP, 448 F. Supp. 2d 537, 542 (S.D.N.Y. 2006). Plaintiffs contend that "the normal retirement age under the RBAP becomes the statutory default . . . age [of] 65 because the RBAP did not provide for an alternative, valid normal retirement age." Id. (citing Amended Complaint ¶ 36). Plaintiffs further contend that "as a cash balance defined benefit

plan paying lump-sum distributions to former employees who had not reached the normal retirement age, the RBAP was required to project the balance of the hypothetical account forward to age 65 and then pay out the present value of that projected balance." Id. (citing Amended Complaint ¶¶ 37-38).

"Additionally, plaintiffs allege the RBAP violates ERISA because it does not provide a projection rate that accurately reflects a reasonable estimate of future interest credits." Id. at 542-543 (citing Amended Complaint ¶ 59). The RBAP identifies the current rate on a 30-year Treasury bond (hereinafter, the "Treasury Rate") as the projection rate. Ex. A, RBAP § 2.16. Plaintiffs allege that the Treasury Rate "does not reflect the average actual interest credit over a certain number of previous periods," and is "well below the Plan's own internal assumptions about the rate of future investment credits." Amended Complaint ¶ 34. Plaintiffs also allege that the Treasury Rate was not "a reasonable estimate of the value of expected future investment credits" in light of the fact that plan participants "are permitted to 'invest' their account balances in a diversified portfolio of mutual funds," and "can change their investment mix on a daily basis." Amended Complaint ¶ 35. Plaintiffs contend that the best estimate is "a uniform rate for all [p]lan participants based on historical market averages," which Plaintiffs estimate to be "between 9% and 10%" – a rate or return significantly higher than the Treasury Rate – based on a Plan portfolio of 70% in equities and 30% in debt securities. Amended Complaint ¶ 35.

C.   **MOTION TO DISMISS RULINGS**

The Honorable Michael B. Mukasey denied Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Judge Mukasey determined as a matter of law that the normal retirement age under the RBAP is the statutory default age of 65. Laurent, 448 F. Supp. 2d at 545-47. Judge Mukasey also determined that PwC must perform a whipsaw

4

calculation. It must project the participant's hypothetical account balance to age 65, using the rate at which future interest credits would have been calculated if the participant remained in the RBAP until age 65 [i.e. the projection rate], and then discount that back to present value." The proper whipsaw calculation must calculate the lump-sum benefit payment owed to a plan participant who is vested but has not yet reached the normal retirement age of 65, even though the RBAP "does not have a guaranteed minimum interest rate." Id. at 548-49,[4] 551. Judge Mukasey noted that "[b]ecause plaintiffs had not reached the normal retirement age, the lump-sum distributions they received must include the pay and interest credits that would have been attained at age 65 as part of the accrued benefit; thus PWC *may have* inaccurately calculated the amount owed to plaintiffs under the RBAP." Id. at 547 (emphasis added).

## STANDARD OF REVIEW

Summary judgment is appropriate where the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Vacold. L.L.C. v. Cerami, 545 F.3d 114, 121 (2d Cir. 2008). The burden of proof rests upon the moving party to show that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A "material" fact is one that will affect the outcome of the suit under governing law. Anderson v. Liberty Lobby. Inc, 477 U.S. 242, 248 (1986). For there to be a "genuine" issue of material fact, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether there is a genuine issue of material fact, the court is required

---

[4] Judge Mukasey explained that: "Allowing a pension plan to avoid the required whipsaw calculation by providing its participants with a less secure benefits package conflicts with ERISA's purpose to guarantee that employees receive the pension benefits they were promised. . . . Courts require "estimation rather than determination" of the accrued benefit, because interest and discount rates are often tied to government securities and such securities fluctuate over time just as the participant-chosen investments under the RBAP will fluctuate. As a cash balance plan is based upon hypothetical accounts, the accrued benefit is always an estimate." Laurent, 448 F. Supp. 2d at 549 (internal citations omitted).

5

to resolve all ambiguities and draw all inferences in favor of the non-moving party. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line. Inc., 391 F.3d 77, 83 (2d Cir. 2004).

## PROPER WHIPSAW CALCULATION

The dispositive issue for Plaintiffs' whipsaw claim is whether the Treasury Rate satisfies the legal requirement for an appropriate projection rate. ERISA does not set the projection rate, but rather permits plans subject to the whipsaw calculation to select a projection rate. The only requirement is that the selected projection rate must be a "fair estimate" of the rate of return an average participant would have received had he remained in the plan until normal retirement age. See Berger v. Xerox Corp. Ret. Income Guar. Plan, 338 F.3d 755, 761 (7th Cir. 2003). In other words, the selected rate cannot understate the future value of investment credits. I.R.S. Notice 96-8, at *10-11. The law provides no guidance as to how plans must or should determine the appropriate projection rate under the specific provisions of the plan.

Defendants argue that judgment as a matter of law should be granted without the need for any further discovery because, after performing the whipsaw calculation, none of the Plaintiffs were entitled to receive a lump sum payment greater than his or her account balance. Defendants contend that Plaintiffs' proposed projection rate is unsupportable because it overstates the value of future investment credits under the RBAP by ignoring the degree of risk associated with those future credits, and the fact that payment of a lump sum distribution eliminates future risk. Defendants further contend that the appropriate and, in fact, only reasonable, projection rate is a rate no greater than a risk-free rate of return like the Treasury Rate. Having used the Treasury Rate to calculate Plaintiffs' payments,[5] Defendants assert that

---

[5] As explained in Esden v. Bank of Boston, 229 F.3d 154, 165 (2d Cir. 2000), "[i]f the plan's projection rate (that is the hypothetical interest credits it provides) and the statutorily prescribed discount rate are identical, then the present value of the hypothetical account projected forward to normal retirement age determined by this

6

this Court must find that their calculation did not understate the value of Plaintiffs' future credits, or otherwise cause Plaintiffs to forfeit any of their accrued benefits.

Defendants' contentions are based solely on the declaration of their purported expert in economics. See Declaration of William F. Sharpe. The expert opined that, under basic economic theory, a risk-free projection rate is appropriate because a plan participant's current account balance can never be worth more than the marketable assets in the account today.[6] Sharpe Decl. ¶¶ 10-16. The expert also opined that, under finance theory, a risk-free projection rate is appropriate because "the projection and discount rates must be consistent with one another."[7] Sharpe Decl. ¶ 17; see also Sharpe Decl. ¶¶ 17-22. The expert concluded that:

> [P]laintiffs' theory is flawed because it fails to appropriately take market risk into account in valuing the Plan's future interest credits. If we adjust the value of future investment credits to account for the risk premium . . . implicit in the investment choices a participant makes, we necessarily arrive at the risk-free rate of return. Therefore, using a risk-free rate of return as the projection rate in the whipsaw calculation does not result in any reduction to the value of future investment credits and thus no loss of benefits under the Plan. For a participant in the Plan who takes a lump sum distribution before age 65, payment of an amount equal to the participant's account balance on the date of the distribution has the same economic value as the participant's account would yield if he or she continued earning interest credits on the account balance under the Plan until age 65.

Sharpe Decl. ¶ 23.

Defendants' only evidence, their expert's opinion, does not meet Defendants' burden to

---

computation will be exactly the current cash account balance." "It follows that a plan which provides for interest credits at the section 417(e) applicable rate may pay out the cash account balance as the actuarial equivalent of the accrued benefit." Id. (citation omitted). Thus, by selecting a projection rate equal to the statutory discount rate, Defendants effectively eliminated the need to formally perform a whipsaw calculation. The inevitable result would always require them to pay Plaintiffs the monetary equivalent of the credits in their accounts at the time of their departure from PwC.

[6] "If it were possible to invest $100,000 for eight years in a manner that would earn exactly 9% each year, the value after eight years would be $199,256. Assume that risk-free investments provide returns of 5% per year. What would it cost to purchase an investment that would return precisely $199,256 in eight years? The answer is $134,865. . . . *No set of calculations can turn $100,000 of marketable assets today into $134,865 today.*" Sharpe Decl. ¶¶ 12, 15.

[7] The discount rate is set by statute to be the Treasury Rate, a risk-free rate.

demonstrate that the Treasury Rate satisfies the legal requirement for a projection rate. The parties have engaged in no expert discovery. Plaintiffs have not produced their own expert, nor has Defendants' expert been deposed. The record on this issue is neither yet developed nor complete.

The opinion of Defendants' expert fails to conclusively answer the question at hand. The issue is whether the Treasury Rate is an appropriate projection rate for the RBAP. The expert opined that a "risk-free rate" is an appropriate projection rate for the RBAP. However, the expert never quantified the rate of return of the risk-free rate as being equivalent to the Treasury Rate, or provided a justification for why the risk-free rate is necessarily equivalent to the Treasury Rate, rather than some other risk-free rate. Defendants, as a result, have no current evidentiary basis from which to establish that the Treasury Rate is an appropriate projection rate for the RBAP. Furthermore, it is wholly insufficient for Defendants to rely upon the expert's conclusion that the projection and discount rates must be consistent. The expert recommended a risk-free rate based upon that conclusion without any consideration of the specific investments available under the RBAP, or any examination of whether Defendants' chosen risk-free rate was a fair estimate of the average rate of return under the RBAP.

It is unclear whether Defendants' expert properly applied the legally required formula for the whipsaw calculation. The expert focused on the question of today's worth of the current account balance, instead of the future worth of the current account balance. This is best illustrated by the expert's conclusion that under no circumstances can the plan participant be entitled to more than the current account balance. A required proper whipsaw calculation provides that the plan participant is entitled to the future account balance discounted back to present value, regardless of whether that value exceeds the current account balance. The crucial

question that remains is what is the proper way to calculate the future value of a plan participant's account balance at age 65.

The expert also refused to consider the possibility that the projection rate might differ from (or be greater than) the discount rate. The expert selected the risk-free rate as the projection rate based solely upon the fact that the discount rate set by statute was a risk-free rate. The expert did so in an effort to ensure that the RBAP operated consistent with his understanding of finance theory. However, the whipsaw calculation primarily exists to facilitate benefits calculations under circumstances where the projection rate is different from the discount rate. The variance is both contemplated and permitted under ERISA. Without acknowledging this fact, the expert's current limited analysis renders the whipsaw calculation superfluous. The expert's report does not clearly indicate that he engaged in a sufficient analysis of the RBAP to indisputably establish that the proper projection rate has been utilized. Defendants' evidence does not show that there is no genuine dispute as to any material issue of fact and that Defendants are entitled to judgment as a matter of law.

## CONCLUSION

Defendants' motion for summary judgment is DENIED.


Dated: New York, New York
       August 15, 2011

                                              SO ORDERED:

                                              *George B. Daniels*
                                              GEORGE B. DANIELS
                                              United States District Judge