UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                       :

TIMOTHY D. LAURENT, ET. AL.,       :
                           Plaintiffs   :
                                       :          06-CV-2280 (JPO)
            -against-         :
                                       :        OPINION AND ORDER

PRICEWATERHOUSECOOPERS, LLP,   :
                      Defendants. :
                                       :
----------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

      This case involves claims against Defendant PricewaterhouseCoopers ("PWC") under the

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et. seq.* ("ERISA").[1]

Plaintiffs move to certify a class of themselves and all others similarly situated pursuant to Rule

23 of the Federal Rules of Civil Procedure and to appoint Eli Gottesdiener as class counsel.

Plaintiffs seek certification only as to the first and fifth counts of their Second Amended Class

Action Complaint—both of which seek a declaration under ERISA § 502(a)(1)(B).  For the

reasons that follow, the motion is granted.

## I.    Background

      This case concerns the "whipsaw" problem that arises when participants in certain

ERISA plans end their employment before normal retirement age ("NRA").  *See Edsen v.*

*Retirement Plan of the First Nat'l Bank of Boston*, 229 F.3d 154, 159-59 (2d Cir. 2000).  Until

2006,[2] ERISA required that "(1) the accrued benefit under a defined benefit plan must be valued

---

[1] Familiarity with the relevant facts is assumed. For a detailed explanation of those facts, see
*Laurent v. PricewaterhouseCoopers, LLP*, 448 F. Supp. 2d 537 (S.D.N.Y. 2006) (Mukasey, J.).

[2] In 2006, Congress passed the Pension Protection Act, which eliminated the whipsaw problem.
*See West v. AK Steel Corp.*, 484 F.3d 395, 411 (6th Cir. 2007) ("This law resolves the whipsaw

in terms of the annuity that it will yield at normal retirement age; and 2) if the benefit is paid at any other time . . . or in any other form . . . it must be worth at least as much as that annuity." *Id.* at 163.  Under the pre-2006 regime, then, employees could cash out their retirement benefits at any time before NRA and still receive the actuarially discounted value of those benefits in the form of a one-time lump-sum payment.  To make a one-time lump-sum payment worth as much as an annuity that begins in the future, two calculations are required: first, one must calculate what the annuity would have been worth had the employee worked until NRA; and second, one must discount *that* amount back to its present value to adjust for the time-value of money.  This is called a "whipsaw" calculation because it requires a round-trip from the present to the NRA, conceptually resembling a saw that cuts back and forth.  Whenever the rate at which the cash-balance account is predicted to increase (the "projection rate") exceeds the 30-year Treasury rate (which is the present-discount value rate under ERISA), a whipsaw calculation will increase the value of the employee's cashed-out benefits.

Defendant claims that the appropriate projection rate *is* the 30-year Treasury rate, in which case the whipsaw comes out in a wash: in step one, the whipsaw projects the value out to NRA using the 30-year Treasury rate, but on the return trip it reverses the same calculation, leaving the cash balance right where it started.  Plaintiffs, on the other hand, claim that the fair projection rate ought to be higher than the 30-year Treasury rate.  This is because, under the RBAP, Plaintiffs could invest the money in their accounts in one or more of a selection of mutual funds provided by the plan.  On average, Plaintiffs claim, the investments selected by plan participants beat the 30-year Treasury rate of return.

---

controversy for the future by amending ERISA . . . to explicitly state that cash balance plans are not required to employ the whipsaw calculation when figuring lump-sum distributions.").

## II.  Discussion

Plaintiffs and Defendants continue to dispute whether RBAP's NRA is valid under ERISA and, if it is not, how to remedy the problem.  But the scope of their dispute with respect to class certification is considerably narrower.  The parties agree that most issues could be solved on a class-wide basis.  (Dkt. No. 168, Response to Motion to Certify Class, at 7).  They disagree only on whether a class can be certified "with respect to adjudication of an alternative projection rate in the event the Court were to determine that the 30-year Treasury rate specified in the plan is invalid."  *Id.* at 8.

### A.  Legal Standard

To certify a class, a "party seeking class certification must affirmatively demonstrate his compliance with [Rule 23] . . . ."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Specifically, a party must "affirmatively demonstrate" compliance with all of Rule 23(a) and at least one subsection of Rule 23(b).  The Court must undertake a "rigorous analysis" to determine that the requirements are met.  *Id.*

Rule 23(a) requires that "(1) the class [be] so numerous that joinder of all members is impracticable; (2) there [be] questions of law or fact common to the class; (3) the claims or defenses of the representative parties [be] typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  A class can be maintained if the requirements of Rule 23(a) are satisfied and the action is one of the three types described in Rule 23(b).  The Supreme Court has recently held that actions for monetary relief cannot be maintained under 23(b)(1) or (b)(2) unless the monetary relief is "incidental to the injunctive or declaratory relief."  *Wal-Mart*, 131 S. Ct. at 2557.  To determine what constitutes "incidental" relief in the ERISA context, courts ask whether "the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer

program." *Johnson v. Meriter Health Servs. Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir. 2012) (Posner, J.).  If so, the class action can be maintained under Rule 23(b)(1) or (b)(2); if not, it must qualify under (b)(3) or not at all.  Under Rule 23(b)(3), an action may be maintained only if damages are "capable of measurement on a classwide basis."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2012).[3]

The method for calculating the hypothetical projection rate will ultimately determine which legal standard will apply.  If the hypothetical projection rate turns out to be merely a matter of "laying each class member's pension-related . . . records alongside the text of the reformed plan and computing the employee's entitlement," Rule 23(b)(1) or (b)(2) will apply. *See Johnson*, 702 F.3d at 371.  But if the appropriate projection rate requires the Court to engage in an individualized inquiry, the monetary relief sought by Plaintiffs will cease to be "incidental" under *Dukes* and Plaintiffs will be relegated to Rule 23(b)(3).

**B.      Class Certification**

If Plaintiffs prevail on their claims that the NRA as originally written is invalid and that they are entitled to a whipsaw calculation, this Court will have to determine what projection rate is appropriate.  This question, though, need not be resolved conclusively today.  Rather, the Court must determine only that whatever method will be chosen is sufficiently mechanical to warrant class certification.  This will entail some analysis of the merits of Plaintiffs' claim, but "[t]hat cannot be helped."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Id.* (internal quotation marks and internal citations omitted).

---

[3] Rule 23(c)(4) allows courts to certify classes "with respect to particular issues."

Courts tasked with fashioning whipsaw remedies under ERISA attempt to "find the [projection] rate that reasonable persons in the position of the plan drafters would have chosen to fairly reflect the value of the plan's retirement benefit." *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 2010 WL 5464196, at *2 (W.D. Wis. Dec. 29, 2010). Plaintiffs claim that, whatever the appropriate projection rate may be, it will be "determined solely by reference to standardized actuarial computations based on a common methodology." (Dkt. No. 162, Plaintiff's Memorandum of Law, at 22 n.9.) Defendants, on the other hand, contend that "an individualized rate for each participant" is appropriate. (Dkt. No. 168, Defendant's Response, at 10.) Plaintiffs counter that an individualized rate for each participant would be *illegal* under ERISA because such a rate would not be "definitely determinable" and would fail to "preclude employer discretion," violating ERISA § 401(a)(25). *See Edsen v. Retirement Plan of the First National Bank of Boston*, 229 F.3d 154, 166 (2d Cir. 2000).

Even the most "individualized" calculation the court could reasonably employ is sufficiently mechanical to trigger the applicability of Rule 23(b)(1)-(2) and to satisfy the requirements of Rule 23(a).[4] Defendants contend that an individualized rate would require the Plan—or the Court—to inquire into (1) the varying rates at which each participant's investments grew, and (2) whether each participant's "selected investment[s] were likely to remain constant during the relevant period." (Dkt. No. 168, Defendant's Memorandum, at 11, 14 n.7.) No reasonable plan drafter would require the second inquiry. Basing the projection rate on a subjective assessment of each participant's investment plans would be unmanageable and likely counterproductive.

---

[4] The Court need not consider Plaintiffs' claim that a more individualized inquiry would be illegal because no reasonable plan-drafter would undertake one.

Therefore, the remaining question is whether a declaration that could be converted to monetary relief by calculating the average performance of each qualifying employee and using that as her projection rate is sufficiently mechanical to qualify for certification under Rule 23(b)(2).  Whether or not converting declaratory relief to monetary relief in this way renders the latter "incidental" under *Dukes* is chiefly a matter of the level of generality at which the question is answered.  The specifics of each plan participant's investments must be considered, but that consideration invites no room for dispute—absent an error in the records, the plan participant's past returns are a known fact.  The purpose of Rule 23 compels the conclusion that this is the sensible level of generality at which to answer the question: will the assessment of monetary relief create any more than an incidental burden on the trier of fact?  Assessing the projection rate under the *Defendant's* hypothesized relief is a task "for a computer program."  *Johnson v. Meriter Health Servs. Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir. 2012) (Posner, J.). Defendants have offered no evidence that the investment records are not completely accurate. Any monetary relief that may follow the requested declaration will be incidental.  Therefore, Plaintiffs' claims are entitled to treatment under Rule 23(b)(1) or (b)(2).

Plaintiffs quite clearly satisfy Rule 23(b)(2).  Defendant is alleged to have failed to pay the actuarially fair value of Plaintiffs' accounts.  This action—or failure to act, as the case may be—applies uniformly to the class and the requested declaration would apply equally to all the class members, notwithstanding the fact that the individual inputs into the remedy calculation would differ.  *See Johnson*, 702 F.3d at 371.  Each member of the Plaintiff class would be entitled to the same declaratory relief, obviating the concerns expressed in *Wal-Mart*.  131 S. Ct. at 2557 ("[Rule 23(b)(2)] does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.") (emphasis in original).

6

Similarly, the hypothetical relief discussed above makes clear that Plaintiff's claims satisfy the requirements of Rule 23(a).  The declaration sought by plaintiffs would "generate common answers apt to drive the resolution of the litigation," *Wal-Mart*, 131 S. Ct. at 2551 (emphasis removed).  Each member of the Plaintiff Class will have suffered the same injury and will be entitled to the same declaration, satisfying Rule 23(a)(2).[5]  Mr. Laurent's and Ms. Sharon's claims, then, will be typical of those of the class, satisfying Rule 23(a)(3).[6]  Defendant acknowledges that the class is sufficiently numerous, so Rule 23(a)(1) is clearly satisfied.

A final concern remains: Rule 23(a)(4).  Defendant objects that litigation over the potential projection rate could generate intra-class conflict.  Presumably, some employees invested more profitably than others.  Those whose rate of return beat the average would stand to benefit from an individualized rate—instead of, say, an average of the performance of the RBAP accounts as a whole—while those whose rate of return was below the average would lose.  This is a reasonable concern.  But Defendant has offered no evidence with which to evaluate its truth.  Judge Posner's opinion in *Johnson* addresses nearly identical issues.  In that case, in an analogous context, defendants objected that some members of the plaintiff class would benefit

---

[5] *Groussman v. Motorola, Inc.*, 2011 WL 5554030, at *3-*4 (N.D. Ill. 2011), is not to the contrary.  There, plaintiffs alleged a variety of breaches of fiduciary duty against plan administrators.  The plaintiffs claimed that, among other things, plan managers failed to provide accurate and complete information about stocks they were offering to participants.  The court held that the plaintiffs could not prove commonality in part because they each invested in the allegedly offending stock in different amounts—some not at all—and under different circumstances.  There, unlike here, the plaintiffs had to prove that their individual trading patterns caused them to suffer damages in order to get relief at all.  Here, Plaintiffs need only show—at most—the average rate of return on their account, and then only to get relief incidental to their prayer for declaratory relief.

[6] Defendants argue that Mr. Laurent's circumstances disqualify him as a typical plaintiff because he is subject to a unique defense.  Defendant's position rests on parts of the record that have been redacted from public view—but the Court need not address them anyway.  If Mr. Laurent cannot serve as a valid lead plaintiff, Ms. Sharon can.

from a fixed rate while others would suffer.  The district court concluded that—even where defendants had offered "some evidence" of the possibility of conflict—the conflicts were "hypothetical." *Id.* at 372.  The appellate court concluded that the proper way to solve the problem would be to address it if it arises: "should the conflicts prove real . . . it may be possible to resolve them by dividing some of the subclasses and appointing new class representatives for the newly carved out subclasses." *Id.*  This is the appropriate course here.  If during the litigation the Defendants produce evidence of a conflict, the Court will consider bifurcating the class into those whose rates beat the average and those whose rates did not—or another similar division. Until then, it is premature to speculate about a conflict that does not yet exist.  Rule 23(a)(4) is satisfied.

### C.      Appointment of Class Counsel

The appointment of class counsel is governed by Rule 23(g) of the Federal Rules of Civil Procedure, which mandates that a court certifying a class appoint class counsel, and specifies that a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class . . . ."

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).  A court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(1)(B).

Mr. Gottesdiener has handled named Plaintiffs' claims for eight years, and he has extensive experience in ERISA litigation.  Defendant acknowledges that Mr. Gottesdiener is an "experienced and accomplished ERISA practitioner."  (Dkt. No. 168, Defendant's Memorandum, at 13 n.6.)  Undeterred, Defendant objects that Mr. Gottesdiener has failed to

pursue certification of this class for seven years. *Id.* It is unclear from its brief if Defendant

thinks this is a reason to disqualify Mr. Gottesdiener. Regardless, it is not.

**III.      Conclusion**

For the foregoing reasons, Plaintiffs' motion to certify a class of those PWC employees

who elected to take lump-sum distribution of their benefits under PWC's Retirement Benefit

Accumulation Plan between March 23, 2000, and August 17, 2006, is certified. Mr.

Gottesdiener is appointed class counsel.

The Clerk of Court is hereby directed to close the motion pending at Docket Number 161.


SO ORDERED.


Dated: June 26, 2014
       New York, New York

_____
                    J. PAUL OETKEN
                 United States District Judge