

**Gottesdiener**
Law Firm, PLLC

New York | Washington, D.C.
www.gottesdienerlaw.com

498 7th Street
Brooklyn, NY 11215
Tel: 718.788.1500
Fax: 718.788.1650

**Eli Gottesdiener**
eli@gottesdienerlaw.com

February 2, 2016

Via ECF and By Hand

The Honorable J. Paul Oetken
Southern District of New York
40 Foley Square, Room 2101
New York, NY 10007-1312

      Re:    *Laurent, et al. v. PwC, et al.*, Civ. No. 06-2280 (S.D.N.Y.) (JPO)

Dear Judge Oetken:

      Plaintiffs look forward to discussing the "scheduling and . . . unresolved discovery disputes" that the Court indicated it wished to address at Wednesday's conference.  Dkt. 199.

      However, in advance of that conference, Plaintiffs write to respond to PwC's letter filed yesterday via ECF, Dkt. 200, as it neglects to tell the Court that the issues PwC apparently intends to raise at Wednesday's status conference were addressed and decided in this case years ago.  PwC's letter suggests that it intends to once again attempt to use the delay tactics that it has engaged in repeatedly during the course of this lawsuit, now in its 10th year.  *See* Dkt. 134 (summarizing PwC's previous serial motions for reconsideration); 3/4/13 Hrg. Tr. (Dkt. 145) 10:19-24 (this Court asking defense counsel in 2013:  "isn't it a consequence of your repeated motions for reconsideration that we're still at the motion to dismiss stage?" "[Isn't the reason] we haven't even gotten further along in the case because of your tactics?").

      PwC asserts that it is premature to move to identification of the appropriate "whipsaw" projection rate because Plaintiffs have purportedly not yet established that they are entitled to a whipsaw calculation.  PwC Ltr. at 1-2.  But as Judge Daniels explained in his 2011 denial of PwC's motion for summary judgment making the same argument:  "Judge Mukasey [already] determined that PwC must perform a whipsaw calculation." *Laurent v. PricewaterhouseCoopers LLP*, No. 06-02280 GBD, 2011 WL 3794921, at *3 (S.D.N.Y. Aug. 15, 2011).  Judge Daniels was right to say this because Judge Mukasey clearly determined that "***a whipsaw calculation must be performed***" here "by projecting a participant's hypothetical account balance to normal retirement age ***using the rate at which future interest credits would have been calculated*** if the participant had remained in the plan until retirement age." *Laurent v. PricewaterhouseCoopers LLP*, 448 F. Supp. 2d 537, 548-49 (S.D.N.Y. 2006) (*Laurent I*) (emphasis added).

      Two years later, in 2008, PwC admitted that under Second Circuit binding precedent, a whipsaw projection was indeed required—and that the only question left on the table was the

The Honorable J. Paul Oetken                                          Gottesdiener Law Firm, PLLC
February 2, 2016
Page 2

"rate" that PwC was required to use to make the required projection:

> ERISA provides that a lump sum distribution of an accrued benefit in a defined benefit pension plan prior to normal retirement age must have value equal to the retirement benefit a participant **would receive if he left his money in the plan** until normal retirement age. . . . This calculation entails projecting the employee's account balance forward to normal retirement age using the plan's specified "interest credit rate," and then using the discount rate mandated by ERISA – the 30-year Treasury rate – to discount this amount back to present value. As the [Second Circuit] explained in *Esden*, if a plan calculates lump sum payments using a projection rate that understates the value of the plan's future interest credits, a participant would have to "forfeit" a portion of the value of those credits in order to receive an immediate lump sum distribution – a result ERISA forbids. . . . In its September 5, 2006 opinion on defendants' motion to dismiss, the Court ruled that plaintiffs' lump sum payments **should have been determined using a whipsaw calculation** based on an age-65 normal retirement age. The Court did not, however, address the *rate* that the Plan must use to project a participants account balance to normal retirement age. . . . **The issue left unresolved** by the Court's opinion – whether plaintiffs are entitled to any additional payments based on a whipsaw calculation – **turns on the appropriate rate** to be used in projecting future credits under the specific provisions of the RBAP.

Defs. Mtn. for Summary Judgment (Dkt. 63) at 2-5 (internal citations omitted; italics in original; bolding added). *See also* Defs. Summary Judgment Reply (Dkt. 76) at 2 ("defendants are not asking this Court to reconsider or alter its September 6, 2006 ruling holding that **the RBAP is required to make a projection to age 65** for certain participants who took lump sum distributions before that age") (emphasis added).

PwC indicates that it nevertheless will argue again (for at least the fourth time, *see, e.g.,* Dkts. 23, 40, 62; Defs. 9/13/10 Ltr.) that PwC is not required to perform a whipsaw calculation—at all—because the RBAP does not "offer ongoing participants a guaranteed positive rate of return for future interest credits." PwC Ltr. at 2. But PwC offers no explanation as to why Judge Mukasey's rejection of that argument the first time PwC made it 10 years ago should not remain law of the case (as Judge Daniels agreed it should):

> Defendant argues that it need not undertake a whipsaw calculation because, unlike the cash balance plan in *Esden*, the RBAP does **not guarantee** that interest will be credited to a participant's hypothetical account at a minimum rate . . . . However, I do not read *Esden* to create such a loophole in ERISA's requirement of a whipsaw calculation for a cash balance defined benefit plan. The requirement that cash balance plans project the cash account balance forward to normal retirement age applies **even when the plan does not have a guaranteed minimum interest rate**. . . . [T]he lack of such a minimum rate does not exempt the RBAP from having interest credits fall within the definition of an accrued benefit.

The Honorable J. Paul Oetken                                             Gottesdiener Law Firm, PLLC
February 2, 2016
Page 3

*Laurent I*, 448 F. Supp. 2d at 548-49 (emphasis added); *see also* 8/15/11 Order (Dkt. 102) at 3 (Judge Daniels explaining that there was no question that a whipsaw calculation was required—"[t]he crucial question that remains is what is the proper way to calculate the . . . plan participant's account balance at age 65"). The Second Circuit was well aware that "the RBAP does not guarantee any set rate of return," but said that did not excuse PwC from conducting a lawful whipsaw calculation, even though the lack of a minimum guarantee meant that the amount of future interest credits could not be "precisely ascertained." *Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 276, 287 (2d Cir. 2015) (*Laurent V*); *see also id*. at 286 ("the PwC Plan accomplishes precisely what we forbade in *Esden,* by choosing a methodology for calculating actuarial equivalence that effectively withholds th[e] statutory protection from plaintiffs' accounts").

      PwC also previously presented a fallback argument to Judge Mukasey and Judge Daniels that both judges also rejected: that even if a whipsaw calculation is required, the RBAP's projection rate for purposes of fairly estimating the future value of a participant's account balance at age 65 was, or should now be declared to be, the 30-year Treasury rate—the same rate ERISA required pension plans to use to discount a participant's estimated age-65 account balance to an immediate lump-sum value for purposes of a pre-65 benefit payment. PwC made the argument in an attempt to render moot the issue of whether its "5 years on the job" purported "normal retirement age" was legal. *See* Defs. Mtn. to Dismiss (Dkt. 23) at 19-22; Defs. Mtn. to Dismiss Reply (Dkt. 27) at 12-15; Defs. Mtn. for Summary Judgment Reply (Dkt. 76) at 2-3. This was PwC's second-line of defense against Plaintiffs' complaint that PwC had failed to perform the required whipsaw calculation. PwC argued that it *did* perform a whipsaw calculation: but if the *projection* rate to age 65 equals the *discount* rate coming back—as PwC contended was proper under the RBAP—the up-and-back whipsaw calculation is a wash and the whipsaw *calculation* produces no whipsaw *benefits*.

      The Sixth Circuit explained the mechanics of the wash calculation in a case involving a plan designed by PwC that gave participants the same stock-and-bond market investment credits as the RBAP:

> The Allmerica Plan merely went through the motions of a whipsaw calculation, since it is undisputed that the Plan projected out and discounted back at precisely the same rate. The whole exercise, by design, always ended up exactly where it started: the departing participant received her account balance.

*Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436, 441 (6th Cir. 2009). The Sixth Circuit made clear that this gimmickry did not satisfy the plan's obligation to conduct a real whipsaw calculation that complied with ERISA. *Id*. at 438.

      Although the 30-year Treasury rate projection-rate argument also left both Judge Mukasey and Judge Daniels decidedly unimpressed, *see Laurent I*, 448 F. Supp. 2d at 548-49; *Laurent,* 2011 WL 3794921, at *4-5, PwC said in its November 2013 partial opposition to

The Honorable J. Paul Oetken                               Gottesdiener Law Firm, PLLC
February 2, 2016
Page 4

Plaintiffs' motion for class certification that Defendants nevertheless intended to try the same argument with this Court again:

> Even if [normal retirement age] is age 65, the Court must still determine whether the lump sum distributions to plaintiffs understated the value of their future hypothetical interest credits. Plaintiffs have not proven, and the Court has not ruled, that the [30-year Treasury] projection rate in the Plan understates the value of participants' right to earn interest credits [through age 65].

Dkt. 168 at 3.  In other words, the Court has not yet decided what the *rate* PwC must use to perform a whipsaw calculation, so it is theoretically possible that the Court could decide that the appropriate projection rate should be the 30-year Treasury rate.  That is a true statement.  In Plaintiffs' opposition to PwC's petition for certiorari in support of the Class's tertiary argument for why the petition should be denied, Plaintiffs reproduced in their brief exactly the passage quoted above (*i.e.*, PwC's argument in its own words) and said to the Supreme Court that "[i]f PwC's position were to prevail at summary judgment or trial, the Second Circuit's interlocutory ruling would become moot."  Pls. Opp., *PricewaterhouseCoopers LLP v. Laurent*, 2015 WL 9412867, at *32 (Dec. 21, 2015).

      This history establishes two things.  First, it shows that PwC is wrong to spend the opening paragraph of its letter to the Court accusing Plaintiffs of saying one thing to the United States Supreme Court in December and something "inconsistent" to this Court last week.

      Second, it shows that PwC conceded in its brief to this Court opposing class certification (as it did in several earlier briefs) that it is the law of the case that PwC must perform a whipsaw calculation.  Indeed, PwC contends that it did perform whipsaw "calculations," using the 30-year Treasury rate as both the projection rate and discount rate, which resulted in a wash.  But the 30-year Treasury rate obviously was not "a 'fair estimate' of the rate of return an average participant would have received had he remained in the plan until normal retirement age," *Laurent*, 2011 WL 3794921, at *3, as Judge Daniels pointed out in his incredulous reaction to PwC's contention.[1]  Likely for this reason, the Internal Revenue Service held in the 2014 TAM that PwC's use of the 30-year Treasury rate for projection purposes *was illegal* (as PwC surely knew the IRS was likely to conclude:  why else attempt to define "normal retirement age" as 5 years of service, and then fight tooth and nail all the way to the Supreme Court to try to defend that concoction).  If the Court agrees with the IRS's holding, which Plaintiffs will argue is entitled to binding deference at the same time they will present evidence and recommendations to the Court

---

[1] 2/15/11 Hrg. Tr. (Dkt. 100) 19:14-21 ("THE COURT:  If you tell me that the 30-year treasury rate is the worst that I can do, how is that a projection of the hypothetical balance at normal retirement age? . . . [I]t is almost impossible for one to believe that the only money that's going to be in the account on average for employees is the minimum amount of money that is represented by the 30-year treasury rate because you give them so many greater options that would likely yield higher rates"); *id.* at 13:2-4 ("Nobody who is going to project for the stock market, not even your expert, [would use] a rate that is lower than the 30-year treasury rate.  That would be unreasonable").

The Honorable J. Paul Oetken                                          Gottesdiener Law Firm, PLLC
February 2, 2016
Page 5

to help it identify an ERISA-compliant age-65 account estimation methodology, the matter *and this case* will be resolved once and for all.

      The bottom line is that PwC is wrong about what remains to be decided in this case: the only question remaining (besides formalizing that the "normal retirement age" under the RBAP is now indeed 65, *see Laurent V*, 794 F.3d at 289 n.19) is for the Court to identify the benefit calculation methodology that reasonable, law-abiding "persons *in the position of the plan drafters*"—*i.e.*, at the RBAP's inception in 1994—would have written into the RBAP *ex ante* to fairly estimate what a departing participant would have received had he or she remained in the plan until age 65.  6/26/14 Class Certification Order at 5 (Dkt. 175) (emphasis added).  *See also Laurent V*, 794 F.3d at 275 ("plans . . . cannot deprive the participants of the value that would accrue if the participants waited and took their distributions as an annuity at normal retirement age"); *id.* at 287 ("what plaintiffs' accounts would [have been] worth if they stayed in the Plan until age 65").

      Plaintiffs look forward to a productive conference tomorrow.

                                          Respectfully submitted,

                                          /s

                                          Eli Gottesdiener
                                          *Attorney for Plaintiffs and the Class*

cc:      All defense counsel