UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
TIMOTHY D. LAURENT, *et al*.,                               :
                                                            :
                    Plaintiffs,                             :
                                                            :
              -v-                                           :        06-CV-2280 (JPO)
                                                            :
PRICEWATERHOUSECOOPERS, LLP, *et al*.,                      :
                                                            :
                    Defendants.                             :
                                                            :
                                                            :
                                                            :
                                                            :
                                                            :
------------------------------------------------------------X

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF THE CASE.......................................................................................... 4

    A.    The PwC Cash Balance Benefits Plan. ..................................................... 4

    B.    Plaintiffs' Pleaded Claims........................................................................... 6

    C.    Litigation Over the Plan's Normal Retirement Age. ................................. 7

    D.    Plaintiffs' Class Certification Motion. ...................................................... 7

    E.    Class Certification Ruling. .......................................................................... 8

    F.    Current Case Posture.................................................................................... 9

LEGAL STANDARD......................................................................................................... 9

ARGUMENT .................................................................................................................... 10

I.    PWC IS ENTITLED TO JUDGMENT ON THE PLEADINGS BECAUSE THE RELIEF PLAINTIFFS SEEK HAS NO STATUTORY ENDORSEMENT UNDER ERISA § 502(a)(1)(B)............................................................................................ 10

    A.    Plaintiffs' Claims, Which Are Predicated on Judicial Alteration of the Deemed Plan Interest Rate, Cannot Be Pursued Under ERISA § 502(a)(1)(B) Following the *Amara* Decision........................................................................................ 12

    B.    Circuit Courts Have Recognized that Plaintiffs Cannot Avoid *Amara*'s Limiting Interpretation of ERISA § 502(a)(1)(B) by Arguing for the Imputation of Plan Terms Based on ERISA or Other Extrinsic Sources................................... 16

II.    PLAINTIFFS' ASSERTION OF CLAIM SIX UNDER ERISA § 502(a)(3) DOES NOT PROVIDE AN AVENUE FOR THE RELIEF THEY SEEK. .................................. 20

III.    THE RELIEF PLAINTIFFS SEEK IS NOT OTHERWISE AVAILABLE UNDER ERISA § 502(a)(2) or § 502(a)(3). ..................................................................... 20

    A.    Plaintiffs Cannot Invoke ERISA § 502(a)(2) Because They Neither Allege A Breach of Fiduciary Nor Seek Plan-Wide Relief......................................... 21

    B.    Plaintiffs Cannot State A Claim Under ERISA § 502(a)(3) Because They Seek A Legal, Not Equitable, Remedy And Have Not Alleged Any Fraud Or Mistake With Regard To the Deemed Plan Interest Rate. ....................................... 22

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Psych. Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)..............................................................................10

*Amara v. CIGNA Corp.*,
348 F. App'x 627 (2d Cir. 2009) ......................................................................13

*Amara v. CIGNA Corp.*,
559 F. Supp. 2d 192 (D. Conn. 2008)...........................................................12, 13

*Amara v. CIGNA Corp.*,
775 F.3d 510 (2d Cir. 2014)..............................................2, 12, 13, 23, 24

*Bank of N.Y. v. First Millennium, Inc.*,
607 F.3d 905 (2d Cir. 2010)..............................................................................10

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
338 F.3d 755 (7th Cir. 2003) ............................................................................15

*Biro v. Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and
*aff'd*, 622 F. App'x 67 (2d Cir. 2015)...........................................................9, 10

*Central States, S.E. & S.W. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*,
771 F.3d 150 (2d Cir. 2014)..............................................3, 11, 22, 25

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)............................................................................... *passim*

*Clark St. Wine & Spirits v. Emporos Sys. Corp.*,
754 F. Supp. 2d 474 (E.D.N.Y. 2010) ..............................................................9

*Durand v. Hanover Ins. Grp., Inc.*,
560 F.3d 436 (6th Cir. 2009) .............................................................................2

*Esden v. Bank of Boston*,
229 F.3d 154 (2d Cir. 2000)..........................................................................5, 15

*Flynn v. Comm'r*,
269 F.3d 1064 (D.C. Cir. 2001) .......................................................................24

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*,
463 U.S. 1 (1983)..............................................................................................11

*Gabriel v. Alaska Elec. Pension Fund*,
773 F.3d 945 (9th Cir. 2014) ...........................................................................24

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Great-West Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002)...................................................................................................11, 23, 25

*Hall v. Kodak Ret. Income Plan,*
363 F. App'x 103 (2d Cir. 2010) ..................................................................................23

*Johnson v. Rowley,*
569 F.3d 40 (2d Cir. 2009)...........................................................................................10

*Kendall v. Emps. Ret. Plan of Avon Prods.,*
561 F.3d 112 (2d Cir. 2009)..........................................................................................10

*Laurent v. PricewaterhouseCoopers LLP,*
963 F. Supp. 2d 310 (S.D.N.Y. 2013).............................................................................7

*Lockheed Corp. v. Spink,*
517 U.S. 882 (1996)......................................................................................................21

*Mass. Mut. Life Ins. Co. v. Russell,*
473 U.S. 134 (1985)......................................................................................................21

*Mertens v. Hewitt Assocs.,*
508 U.S. 248 (1993).................................................................................................22, 25

*Montanile v. Bd. of Trustees of Nat'l Elevator Indus.,*
136 S. Ct. 651 (2016)....................................................................................................22

*Patel v. Contemporary Classics of Beverly Hills,*
259 F.3d 123 (2d Cir. 2001)..........................................................................................10

*Pender v. Bank of Am. Corp.,*
788 F.3d 354 (4th Cir. 2015) ...........................................................................10, 17, 18, 23

*Piazza v. Florida Union Free School Dist.,*
777 F. Supp. 2d 669 (S.D.N.Y. 2011)...........................................................................10

*Ruppert v. Alliant Energy Cash Balance Pension Plan,*
726 F.3d 936 (7th Cir. 2013) ..................................................................................15, 16

*Singletary v. United Parcel Serv., Inc.,*
No. 15-30762, 2016 WL 3629029 (5th Cir. July 6, 2016).........................................11, 19, 21

*Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc.,*
651 F.3d 600 (7th Cir. 2011) ........................................................................................16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*West v. AK Steel Corp.*,
    484 F.3d 395 (6th Cir. 2007) ................................................................................15


**Statutes**

ERISA § 502(a)*................................................................................11, 24, 25

ERISA § 502(a)(1)(B)................................................................................ *passim*

ERISA § 502(a)(2)................................................................................3, 20, 21, 22

ERISA § 502(a)(3)................................................................................ *passim*

26 U.S.C. § 7476................................................................................24


**Rules**

Rule 12(b)(6)................................................................................4, 7, 9, 10

Rule 12(c)................................................................................9, 10

* ERISA § 502(a) and its subsections are codified at 29 U.S.C. § 1132(a).

## PRELIMINARY STATEMENT

In June 2014, the Court granted Plaintiffs' motion to certify Counts One and Five of the Second Amended Complaint ("SAC") for class treatment, setting those claims on course for trial. Both those Counts seek the same relief:  Recalculation of lump-sum benefits using an interest-projection rate different from the projection rate stated in Defendant PricewaterhouseCoopers LLP's ("PwC") cash balance plan, and a declaration pursuant to ERISA § 502(a)(1)(B) that Class members are entitled to unpaid benefits in an amount equal to the difference between lump sums recalculated using that new projection rate and the lump sums they received when they left the plan.  Courts have previously referred to such claims as "whipsaw" claims, and, with little if any analysis, have assumed that plaintiffs can pursue such claims under ERISA § 502(a)(1)(B), which permits a "civil action [to] be brought [by a participant or beneficiary] . . . to recover benefits due to him **under the terms of his plan**, to enforce his rights **under the terms of the plan**, or to clarify his rights to future benefits **under the terms of the plan**[.]"  29 U.S.C. § 1132(a)(1)(B) (emphases added).  That assumption can no longer be indulged in light of the United States Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) and its progeny, upon which this Motion is based.

Plaintiffs premise their claims on allegations that PwC's "plan design" violated ERISA in two respects:  (i) in its definition of Normal Retirement Age; and (ii) in its use of the 30-year Treasury securities rate as the projection rate for the calculation of future interest credits.  The first of those issues has been the central focus of the litigation thus far, with the Court rejecting PwC's motion to dismiss based on the five-years-of-service element of Normal Retirement Age. But, as Plaintiffs concede, the Court's now-affirmed determination that the Plan's stated Normal Retirement Age cannot be enforced under ERISA does not independently entitle Class members

to the additional, monetary remedy they want:  Recalculated lump sums for the Class in amounts

higher than those already received requires a further judicial declaration replacing the plan's

interest-projection rate with a higher rate, which Plaintiffs assert should be "implied-by-law."

Thus, after the Court denied PwC's freestanding defense based on the Plan's Normal

Retirement Age, Plaintiffs clarified that they seek affirmative relief in the form of a declaration

that invalidates the Plan's projection-rate under ERISA and substitutes in a different Court-

determined projection rate that allegedly will comply with ERISA's valuation rules.  They

premise this relief entirely on ERISA § 502(a)(1)(B).  That theory of recovery fails as a matter of

law after *Amara*, which held that ERISA § 502(a)(1)(B) only permits judicial enforcement of

pension plan terms "***as written***."   *Amara*, 563 U.S. at 436 (emphasis added); *see also Amara v.

CIGNA Corp.*, 775 F.3d 510, 518 (2d Cir. 2014).  Although *Amara*, which arose out of the

Second Circuit, was not itself a whipsaw case, its holding is directly applicable to whipsaw

cases.  Here, as in all reported whipsaw cases, Plaintiffs have requested that the court order

recalculation of previously-distributed benefits under judicially-restated plan terms, including, at

a minimum, a different and higher projection rate for the calculation of future interest credits

than that called for by the plan.  *Compare* SAC ¶ 97 (alleging that PwC "undervalued future

interest credits"), *with Durand v. Hanover Ins. Grp., Inc.*, 560 F.3d 436, 440 (6th Cir. 2009) ("In

[whipsaw] cases, the claimant typically concedes that her benefit was properly calculated under

the terms of the plan as written, but argues that the plan itself is illegal in some respect.").

*Amara* makes clear that Plaintiffs cannot obtain such relief under ERISA

§ 502(a)(1)(B)—the only subsection of the statute that permits recovery of legal damages and the

only subsection that Plaintiffs relied on as the basis for their Class-wide declaratory remedy.  Nor

can Plaintiffs invoke either of ERISA's two remaining private enforcement provisions,

subsections 502(a)(2) and 502(a)(3), as an alternative basis for the remedy sought.  The former subsection allows actions for breach of fiduciary duty seeking recovery for the plan as a whole, which is not what Class members demand (and explains why Plaintiffs have never invoked that provision of ERISA).  The latter allows only *traditional* equitable remedies in limited circumstances.  But the relief that Plaintiffs seek, couched in terms of a declaratory judgment, is a retroactive award of monetary benefits—*i.e.*, legal damages—to Class members, which is not a traditional equitable remedy under the Supreme Court's ERISA jurisprudence.  And, although ERISA § 502(a)(3) might permit a court to award monetary relief where beneficiaries are defrauded about specific plan terms governing benefit-calculation and are thereby injured, Plaintiffs have not pleaded any such predicate for recalculating their lump sums.  For purposes of calculating lump sums, the SAC does not allege any disclosure that suggested the use of any rate other than the projection rate stated in the Plan, and provides no basis to impute a new rate term.

After *Amara*, the ERISA § 502(a) private-enforcement scheme does not authorize a cause of action to redress allegedly unlawful plan terms through judicial restatement.  Therefore, no further proceedings should take place in this Court to resolve the dispute over whether any such ERISA violation in fact occurred.  ERISA expressly refers disputes over the legality of plan provisions to the Tax Court upon the filing of a petition challenging plan-qualification by an authorized party (such as present employees, which these Plaintiffs are not).  As the Second Circuit recently recognized, notwithstanding "the underlying purposes of ERISA and of equitable relief generally," federal courts are not at liberty "to fashion an appropriate remedy" for an ERISA violation where no remedy exists under the terms of the statute.  *Central States, S.E. & S.W. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 159 (2d Cir. 2014).  That is precisely the case here; judgment should be entered for PwC.

## STATEMENT OF THE CASE

**A.      The PwC Cash Balance Benefits Plan.**

Before July 1, 1994, Price Waterhouse LLP, a "predecessor" entity of Defendant PwC, "maintained for its employees a traditional defined benefit plan. . . ."  Declaration of Daniel J. Thomasch ("Thomasch Decl."), Ex. A, ¶ 25 (hereinafter "SAC").  Effective July 1, 1994, "Price Waterhouse LLP adopted" the Retirement Benefit Accumulation Plan ("RBAP")—a defined benefit plan with "a formula . . . commonly referred to as a 'cash balance' formula"—to replace its traditional defined benefit plan for all employees (freezing any further accruals under the old plan after June 30, 1994).  Thomasch Decl., Ex. B [Defendants' Answer to SAC] at 13-14. "Price Waterhouse LLP and Coopers & Lybrand LLP merged to create PwC in July 1998," and in July 1999 "the RBAP merged with the Coopers & Lybrand Retirement Plan," which also offered "a cash balance formula."  *Id.*  In that merger, the terms of the Coopers & Lybrand Retirement Plan were "amended and restated" to conform to the terms of the RBAP, with the combined cash balance plan being renamed the RBAP for Employees of PricewaterhouseCoopers LLP.  *Id.*; *see also* Thomasch Decl., Ex. C [RBAP] at 1-2.  Plaintiffs' SAC challenges "[t]he legality of the design of the [RBAP]."  SAC ¶ 1.

The terms of the RBAP are set forth in an "Agreement" that constitutes the Plan document.  Thomasch Decl., Ex. C (hereinafter "RBAP" or "Plan").  The Agreement is cited throughout the SAC and incorporated by reference therein.  SAC ¶ 23 & n.2.  The Plan's benefit-accrual and vesting provisions, including the payroll credits and "Investment Experience" that together make up any participant's "Deemed Account Balance" have been described in detail in PwC's previous Rule 12(b)(6) motions, and familiarity with those aspects of the RBAP is assumed.  *See* Dkt. 23 at 3-6; Dkt. 138 at 1-3.  Relevant to this Motion are the RBAP provisions governing how lump sums would be calculated under the Plan if a vested participant exiting the

Plan could choose that optional form of benefit before attaining Normal Retirement Age.[1] Plaintiffs allege that the RBAP's "lump sum calculation methodology," which was "design[ed] and adopt[ed]" in 1993-1994, "failed to comply with the ERISA standard for calculating lump sum benefits payable from a cash balance pension plan."  SAC ¶¶ 2, 27.

The RBAP stated that "[t]he amount of any lump sum payment to a Participant or Beneficiary shall not be less than the Actuarial Equivalent of the Participant's Normal Retirement Benefit."  RBAP § 5.4(b).  An RBAP participant's "Normal Retirement Benefit," in turn, was defined as the "amount equal to the Actuarial Equivalent (calculated by projecting the Deemed Account Balance to Normal Retirement Age using the Deemed Plan Interest Rate) of his or her Deemed Account Balance."  RBAP § 5.1.  The Plan defined the "Deemed Plan Interest Rate" used for any projection to Normal Retirement Age that might be required when calculating a participant's Normal Retirement Benefit under Section 5.1 as the "the interest rate on 30-year Treasury securities" for either February or May of the year preceding the year the participant claimed his or her Plan benefit.  RBAP § 2.16; *see also* SAC ¶¶ 70, 89 (alleging that lump sums calculated under the RBAP's terms "include[] projected interest at the 30-year Treasury bond rate").  The Plan further provided that Plaintiffs' entitlement was to the "present value" of the Normal Retirement Benefit at Normal Retirement Age, which "present value" calculation employed the ***identical*** interest rate for discounting that was previously used for projection. RBAP §§ 2.2, 2.16, 5.1.  The Plan's use of identical rates to project and discount results in a

---

[1]  The RBAP provided a lump-sum distribution option ***only*** for departing participants who had attained the Plan's stated Normal Retirement Age.  RBAP § 5.4.  Such a provision is undeniably valid under ERISA.  *See Esden v. Bank of Boston*, 229 F.3d 154, 173 (2d Cir. 2000).  Yet, that provision would have altogether precluded Class members from receiving any lump-sum distribution on their respective benefit-election dates if the Plan had had an age 65 Normal Retirement Age during the Class Period.

vested participant's lump-sum benefit being equal to his then-current account balance whenever he elects to take a distribution, *i.e.*, the net effect would be a wash.

### B.     Plaintiffs' Pleaded Claims.

In March 2006, Plaintiffs filed a putative class action challenging the "legality of the [RBAP's] design . . . ."  Dkt. 1, ¶ 1.  Plaintiffs allege that they are former PwC employees who "terminat[ed] employment with PwC" sometime after "complet[ing] 5 years of service" at the firm."  SAC ¶¶ 20-21, 32.  Based on their years of service, all Plaintiffs had fully vested under the Plan as of their departure from PwC.  *Id.*  Upon terminating employment, Plaintiffs elected a distribution of their benefits under the Plan's lump-sum option, and each Plaintiff received the then-current balance of his or her notional cash balance account.  *Id.* ¶¶ 20-21, 34, 87; Thomasch Decl., Ex. D [Motion for Class Certification] at 13.  In August 2012, Plaintiffs filed the operative SAC, which contains Counts One through Six.  Counts Two, Three, and Four were dismissed by Judge Mukasey and are no longer at issue.  SAC ¶¶ 119, 120 & n.8.

Applying all reasonable inferences in Plaintiffs' favor, Count One of the SAC alleges that the RBAP's terms violated ERISA in two respects:  (1) use of an invalid Normal Retirement Age, SAC ¶ 115; and (2) use of a projection rate to account for future interest credits that caused those credits to be undervalued, SAC ¶¶ 117-18.  Count One alleges that PwC's "lump sum calculation methodology," which used the Normal Retirement Age and projection rate terms of the Plan, "result[ed] in an unlawful forfeiture of accrued benefits . . . ."  SAC ¶ 117.

Similarly viewing Count Five, that Count asserts the same alleged violation as Count One, differing only in its articulated basis for alleging the invalidity of the Plan's stated Normal Retirement Age.  SAC ¶¶ 131-32; *see also* Thomasch Decl. Ex. D at 8 ("Counts One and Five are pled in the alternative and are a means to the same goal . . . .").

6

The SAC alleges in Count Six that "Defendants violated ERISA's disclosure requirements and their fiduciary and co-fiduciary duties in making . . . material false and misleading statements and omissions regarding the Plan's normal retirement age definition . . . ." SAC ¶¶ 134-136. This Count is the only claim based on alleged violation of a fiduciary duty. Count Six complains about PwC's disclosures regarding the Plan's Normal Retirement Age, but includes no allegation concerning the Plan's projection rate for future interest credits.

The SAC seeks "all relief under ERISA § 502(a)." *Id.* at p. 41.

### C.    Litigation Over the Plan's Normal Retirement Age.

From 2006 until 2015, the bulk of motion practice before this Court concerned the validity of the Plan's stated Normal Retirement Age. In August 2013, the Court denied Defendants' second Rule 12(b)(6) motion to dismiss the SAC on those grounds and held that the Plan's "five years of service" Normal Retirement Age was invalid. *Laurent v. PricewaterhouseCoopers LLP*, 963 F. Supp. 2d 310 (S.D.N.Y. 2013). In January 2014, the Court certified that ruling for interlocutory review because a contrary ruling "would immediately terminate the litigation." Dkt. 173 at 4. The Second Circuit granted leave to appeal in April 2014; affirmed the Court's ruling in July 2015; and—following PwC's unsuccessful petition for *certiorari*—issued the mandate in February 2016.

### D.    Plaintiffs' Class Certification Motion.

In October 2013, Plaintiffs moved to certify for class treatment Counts One and Five of the SAC, which both "contend that when lump sums were calculated and paid to Plaintiffs and other participants, Defendants failed to take into account the portion of participants' accrued benefits attributable to future investment credits through age 65, the 'normal retirement age' under the Plan as properly construed." Thomasch Decl., Ex. D at 7-8 (citation omitted). Plaintiffs stated that the relief sought under both Counts One and Five consisted of "three related

declarations **under ERISA § 502(a)(1)(B)** clarifying Class members' rights to benefits under the RBAP"—after which "Defendants would have no choice but to calculate any pension benefits that are still owed to members of the Class pursuant to the terms of the Plan as the Court declares they must be interpreted and applied." *Id.* at 2-3 (emphasis added) (footnote omitted).

The three declarations sought are as follows:

1) A declaration that the lawful 'normal retirement age' under the RBAP for purposes of calculating lump sum benefits is not '5 years of service' but age 65[;]

2) [A] declaration that [the RBAP's] method of computing the lump sums to which withdrawing employees are entitled is unlawful, [and;]

3) A declaration that members of the Class remain entitled to benefits under the Plan attributable to the investment credits that would have been credited between the date of their lump sum distributions and age 65, using the rate that the Court determines would have been the most reasonable projection rate to estimate the amount of those future credits at the time of the lump sum payments[.]

*Id.* (second and third alterations in original, internal quotation marks and citations omitted). According to Plaintiffs, "[i]f the Court were to make each of these declarations, its work should be done." *Id.* at 3. Indeed, having succeeded in invalidating the Plan's Normal Retirement Age, Plaintiffs expressly disclaimed in their class-certification motion any need for equitable relief under ERISA § 502(a)(3). *Id.* at 1 n.1.

## E.    Class Certification Ruling.

In June 2014, the Court granted Plaintiffs' motion for class certification. Dkt. 175. The Court defined the class certified as "[a]ll persons ('participants') who accrued benefits after June 30, 1994 under the Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP or the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (together, the 'Plan' or 'RBAP'), who received (and/or whose alternate payees or whose beneficiaries or estates received) a lump sum payment from the Plan between March 23, 2000

and August 17, 2006 prior to such participants attaining age 65 and whose benefit as calculated

by the Plan and/or its administrator PricewaterhouseCoopers LLP did not take into account the

portion of these participants' accrued benefits attributable to future investment credits through

age 65 . . . ." *Id.* at 9; Thomasch Decl., Ex. D at 7.

> F.      **Current Case Posture.**

On February 3, 2016, the last time the parties appeared before the Court, a status

conference was held at which Plaintiffs dismissed the notion that their claims are based in equity.

Thomasch Decl., Ex. E at 32.  With the Court's permission at that conference, Plaintiffs filed a

motion to compel the production of additional documents on February 16, 2016.  That motion

was fully briefed as of March 8, 2016 and is *sub judice*.  Fact discovery is open.  Expert

discovery has yet to begin.  No trial date has been set.

**LEGAL STANDARD**

The grounds for dismissal raised in the instant Motion were neither raised—nor

addressed by this Court—in either of PwC's pre-answer Rule 12(b)(6) motions, which focused

instead on the validity of the Plan's Normal Retirement Age under ERISA.  Rule 12(c), under

which PwC now moves, is designed to ensure that only legally cognizable claims proceed to

trial.  It may be invoked where, as here, all motions to dismiss have been resolved, but

meritorious defenses to the asserted claims are evident from the closed pleadings without the

need for further record development.  Thus, even if a particular defense that would dispose

entirely of a claim was "not raised in an initial 12(b)(6) motion," it may later "be raised . . . by a

motion under Rule 12(c) . . . ."  *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d

474, 480 (E.D.N.Y. 2010) (citation omitted); *see also Biro v. Conde Nast*, 963 F. Supp. 2d 255,

266 n.2 (S.D.N.Y. 2013) (Oetken, J.), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 F. App'x

67 (2d Cir. 2015) (stating that the Federal Rules of Civil Procedure expressly permit a party "to

9

bring successive motions challenging the sufficiency of a claim, the first under 12(b)(6) and the

second, after the Answer has been filed, under Rule 12(c)") (citations omitted).

There is no issue as to the timeliness of this Motion.  "Federal Rule of Civil Procedure

12(c) provides that '[a]fter the pleadings are closed—but early enough not to delay trial—a party

may move for judgment on the pleadings.'"  *Biro*, 963 F. Supp. 2d at 265 (alteration in original).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that

of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of*

*Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  Thus, while the Court

"accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences"

in favor of the non-movant, *Bank of N.Y. v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir.

2010) (internal quotation marks and citations omitted), to survive a Rule 12(c) motion the

complaint must "'state a claim to relief that is plausible on its face.'"  *Johnson v. Rowley*, 569

F.3d 40, 44 (2d Cir. 2009) (citations omitted).  In considering a Rule 12(c) motion, "'a district

court may consider the facts alleged in the complaint, documents attached to the complaint as

exhibits, and documents incorporated by reference in the complaint.'"  *Piazza v. Florida Union*

*Free School Dist*., 777 F. Supp. 2d 669, 677 (S.D.N.Y. 2011) (citations omitted).

## ARGUMENT

## I.   PWC IS ENTITLED TO JUDGMENT ON THE PLEADINGS BECAUSE THE RELIEF PLAINTIFFS SEEK HAS NO STATUTORY ENDORSEMENT UNDER ERISA § 502(a)(1)(B).

A threshold question in every ERISA benefits suit is whether a plan participant can

"'identify a statutory endorsement of the action'" as pleaded and presented to the court.  *Am.*

*Psych. Ass'n v. Anthem Health Plans, Inc*., 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Kendall v.*

*Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Pender v. Bank of*

*Am. Corp.*, 788 F.3d 354, 361 (4th Cir. 2015) (observing that plaintiffs must "identify the portion

of ERISA that entitles them to bring the claim for the relief they seek"). The SAC fails this basic requirement. Instead of identifying a specific statutory endorsement of Plaintiffs' whipsaw claim, the SAC broadly pleads a claim for "all relief under ERISA § 502(a), 29 U.S.C. § 1132(a)," SAC at p. 41, but it nowhere identifies any specific subsection of ERISA's remedial provisions that authorizes Plaintiffs' demand for additional benefits. In their motion for class certification, however, Plaintiffs remedied their prior omission by averring that the relief requested on behalf of the certified Class consists entirely of "three related declarations **under ERISA § 502(a)(1)(B)** . . . ." *See supra* pp. 7-8.

Whether ERISA authorizes that cause of action depends, in turn, on two separate inquiries. **First**, the putative plaintiff must fall within the classes of persons permitted to institute a lawsuit under ERISA § 502(a). *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983). For purposes of this Motion, Defendants assume that Plaintiffs qualify as "participants" or "beneficiaries" of the RBAP who may bring an action.

**Second**, assuming a proper ERISA plaintiff, the statute must expressly authorize the claim and related relief sought because, as the Supreme Court has underscored, courts must refrain from "extending remedies not specifically authorized by [ERISA's] text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (citation omitted). Thus, a participant or beneficiary cannot bring a civil action seeking general, unspecified relief and expect "a court to fashion an appropriate remedy." *Central States*, 771 F.3d at 159. To the contrary, the relief sought must be identified and grounded in a "provision of the civil remedies scheme in [ERISA] § 502 . . . ." *Id.* at 154; *see also Singletary v. United Parcel Serv., Inc.*, No. 15-30762, 2016 WL 3629029 at *4 (5th Cir. July 6, 2016) ("'Following the lead of the Supreme Court[,] courts now look closely at the particular § 502(a) claim for relief being alleged. Courts

are extremely reluctant to improvise or alter these forms of action.'") (citation omitted). *Amara* and its progeny establish that ERISA § 502(a)(1)(B) does not authorize a court to award the relief Plaintiffs seek, *i.e.*, recalculation of plan benefits using judicially-imposed plan terms.

### A. Plaintiffs' Claims, Which Are Predicated on Judicial Alteration of the Deemed Plan Interest Rate, Cannot Be Pursued Under ERISA § 502(a)(1)(B) Following the *Amara* Decision.

In *Amara v. CIGNA Corp.*, 559 F. Supp. 2d 192 (D. Conn. 2008), the plaintiffs alleged that they had been underpaid promised benefits after the conversion of the sponsor's traditional defined benefit plan (termed "Part A") to a cash-balance plan (termed "Part B"). *See Amara*, 559 F. Supp. 2d at 195. Bringing suit under both ERISA § 502(a)(1)(B) and § 502(a)(3), the plaintiffs contended that various communications from CIGNA Corporation—in Summary Plan Descriptions and like materials—had created a reasonable expectation that their post-conversion Part B benefits would be more generous than the terms of the cash-balance plan actually allowed. The relief they sought was "a declaration that Part B is void and an injunction ordering a return to Part A, or, failing that, an injunction remedying the [sponsor's] misrepresentations . . . (for example, by establishing A+B and 'comparable' benefits)." *Id.* at 203.

After finding that CIGNA had indeed misrepresented the nature of post-conversion Part B cash-balance benefits, the district court assessed whether the declaratory and injunctive "relief Plaintiffs request[ed] [was] available to them under ERISA § 502(a)(1)(B) . . . ." *Id.* The district court recognized that the plan terms described clearly what Part B benefits participants were entitled to under the new plan. *Id.* But it found that "the notices and disclosures describing the transition to Part B" had misled participants into believing that Plan B's terms calculated benefits *differently* than the methodology actually stated in the plan document. *Id.* The district court thus "ordered CIGNA to reform the terms of its plan to provide A+B benefits." *Amara*, 775 F.3d at 516; *see also Amara*, 559 F. Supp. 2d at 222. The district court concluded that such "remedial

12

benefits, disbursed in the manner" prescribed by the ***reformed*** plan provisions "constitute

'benefits under the terms of the plan' under ERISA § 502(a)(1)(B)." *Amara*, 559 F. Supp. 2d at

222.  By summary order, the Second Circuit affirmed the district court's remedy.  *Amara v.

CIGNA Corp.*, 348 F. App'x 627 (2d Cir. 2009).

Granting *certiorari*, the Supreme Court unanimously rejected the central premise

underlying the *Amara* district court's order of relief—*i.e.*, that ERISA § 502(a)(1)(B) "provided

the legal authority" to order (i) the terms of the plan to be reformed to conform to the plaintiffs'

expectations, and (ii) an award of remedial benefits under those judicially-revised terms.  *Amara*,

563 U.S. at 434-37[2]; s*ee also Amara*, 775 F.3d at 518 (recognizing that the Supreme Court

squarely "examin[ed] whether § 502(a)(1)(B) authorized the relief that the district court had

granted").  The Supreme Court did not accept the district court's conclusion that payments

flowing from rewritten plan provisions "constitute[d] 'benefits under the terms of the plan. . . .'"

*Amara*, 559 F. Supp. 2d at 222.  Rather, the Supreme Court found that the district court

> had ordered relief in two steps[:]  Step 1:  It ordered the terms of the plan
> reformed (so that they provided an 'A plus B[]' . . . guarantee).  Step 2:  It ordered
> the plan administrator . . . to enforce the plan as reformed.

*Amara*, 563 U.S. at 435.  The Court held that the first step of reformation, the necessary

predicate for recalculating the benefits, ***was not available under ERISA § 502(a)(1)(B)*** because

there existed no "authority in that section to reform CIGNA's plan as written":

> Where does § 502(a)(1)(B) grant a court the power to ***change*** the terms of the
> plan as they previously existed?  The statutory language speaks of '***enforc[ing]***'
> the 'terms of the plan,' not of ***changing*** them.  The provision allows a court to
> look outside the plan's written language in deciding what those terms are, *i.e.*,
> what the language means.  But we have found nothing suggesting that the

---

[2]  Although Justice Scalia, together with Justice Thomas, did not join the Court's opinion, his
concurring opinion endorsed the Court's holding that ERISA § 502(a)(1)(B) only authorizes
a private action to enforce the terms of an ERISA plan ***as written***, not as they may "derive
from" other sources.  *Amara*, 563 U.S. at 445-46 (Scalia, J., concurring in judgment).

provision authorizes a court to alter those terms, at least not in present circumstances, where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy.

*Id.* at 435-36, 438 (alteration and emphasis in original) (citations omitted).  Thus, the entire "Step 1/Step 2" remedy the district court had ordered failed as a matter of law under ERISA § 502(a)(1)(B).  With that paragraph, the Supreme Court negated the statutory predicate for relief invoked in the very whipsaw cases that Plaintiffs have relied upon throughout this litigation.[3]

Just as in *Amara*, Plaintiffs here ask the Court to order "relief in two steps," 563 U.S. at 435, **both** of which are necessary in unison to afford the sought monetary remedy.  As step 1, Plaintiffs ask the Court (in requested declaration number 3) to disregard the Plan's projection rate and to replace it with the "rate that the Court determines would have been 'the most reasonable projection rate' to estimate" future investment credits under the Plan.  *See supra* p. 8.  As step 2, Plaintiffs ask the Court to order PwC "to enforce the plan as reformed," *see Amara*, 563 U.S. at 435, by declaring "that members of the Class remain entitled to benefits under the Plan" recalculated using the new projection rate the Court imposes.  Thomasch Decl., Ex. D at 2-3; *see also id.* at 10 ("Plaintiffs seek a declaration under ERISA § 502(a)(1)(B) clarifying that participants still have undistributed accrued benefits under the Plan attributable to future interest credits projected to age 65 at the implied-by-law rate the Court identifies.").

And, just as in *Amara*, step 1—the substitution or imputation of a new projection rate—is critical to the remedy Plaintiffs demand because it is the **only way** Class members can obtain recalculated lump-sum balances greater than the lump-sum distributions they previously

---

[3]  On remand, the *Amara* plaintiffs ultimately prevailed under ERISA § 502(a)(3) based on specific findings of fraud in regard to the complained-of plan terms.  Here, Plaintiffs have made no allegations of fraud (or mutual mistake) regarding the RBAP's Deemed Plan Interest Rate, which is the Plan term they seek to reform.  *See infra* at III.B.

received.  SAC ¶¶ 73, 98.  But "step 1" is exactly what the Supreme Court held cannot be performed under ERISA § 502(a)(1)(B).  That subsection does not "grant a court the power to *change* the terms of [a] plan as they previously existed[.]"  *Amara*, 563 U.S. at 435-36 (emphasis in original).  *Amara* squarely holds that unless *each* necessary component of the "Step 1/Step 2" remedy sought is authorized by ERISA § 502(a)(1)(B), the *entire* remedy is unavailable under that subsection and can only be obtained (if at all) under another.  In other words, after *Amara* a remedy that necessarily requires departure from a plan's written terms is simply not cognizable under ERISA § 502(a)(1)(B)—that subsection authorizes complete relief under the "terms of [the] plan" or not at all.

PwC recognizes that the proposition that courts do not have the power to award benefits pursuant to judicially-restated plan terms seems to fly in the face of all prior whipsaw cases.  It does.  But, *Amara* controls.  Before *Amara,* courts mistakenly reasoned—or assumed without discussion—that whipsaw claims inherently seek underpaid benefits, and subsection 502(a)(1)(B) is the ERISA provision that allows a private right of action to recover such benefits. *See, e.g.*, *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 726 F.3d 936, 938 (7th Cir. 2013) (seeking recovery of benefits under ERISA § 502(a)(1)(B)); *West v. AK Steel Corp.*, 484 F.3d 395, 404-05 (6th Cir. 2007) (holding that "ERISA § 502(a)(1)(B) provides an appropriate remedy" when a plaintiff claims to have been "paid less than the full accrued benefit due him" because of plan terms that violate ERISA); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) ("[T]he suit here is by plan participants suing 'to recover benefits,' [ERISA 502 §](a)(1)(B)."); *Esden v. Bank of Boston*, 229 F.3d 154, 162 (2d Cir. 2000) (noting that the "class action [was brought] pursuant to ERISA § 502(a)(1)(B) and (a)(3)")).

15

With two exceptions, those prior whipsaw cases were decided before the Supreme Court's 2011 decision in *Amara* fundamentally changed the legal landscape and clarified that ERISA § 502(a)(1)(B) cannot be used to obtain a remedy that necessarily requires a judicial restatement of plan terms (even where such a judicial restatement would result in the recovery of "benefits").  The underlying basis for relief in whipsaw cases before *Amara* has been abrogated; and, the two post-*Amara* decisions upholding whipsaw relief simply did not consider the impact of *Amara* on such claims.[4]  Plaintiffs' ERISA § 502(a)(1)(B) claim fails as a matter of law.

**B.**   **Circuit Courts Have Recognized that Plaintiffs Cannot Avoid *Amara*'s Limiting Interpretation of ERISA § 502(a)(1)(B) by Arguing for the Imputation of Plan Terms Based on ERISA or Other Extrinsic Sources.**

Plaintiffs cannot circumvent the limitations on ERISA § 502(a)(1)(B) actions announced in *Amara* by arguing (as they have before) that the relief they seek is not plan ***reformation** per se*, but merely an enforcement of ERISA's guarantees achieved by "ignoring unlawful terms and imputing terms implied by law."  *See* Dkt. 170 at 10 (citing *Berger*); SAC ¶ 118 (alleging that Class members "would have received larger distributions than the amounts in fact paid to them" if PwC had "calculated and paid lump sums benefits in the manner required under ERISA and the Tax Code").  The essential underpinning of Plaintiffs' claim is that the Court must impute to the Plan from some outside source an ERISA-compliant projection rate which guarantees participants the supposed value of their "Investment Experience" through Normal Retirement Age.  SAC ¶¶ 97-98 (alleging that the problem with using the 30-year Treasury rate is that it

---

[4]   The two appellate decisions issued after *Amara—Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc.*, 651 F.3d 600 (7th Cir. 2011) and *Ruppert*, 726 F.3d 936—did not examine the statutory basis for the plaintiffs' requested whipsaw relief.  Both cases had been decided in the plaintiffs' favor in the district court before issuance of the *Amara* decision by the Supreme Court.  There is no indication that the defendant in either case invoked *Amara* in the circuit court as having subsequently foreclosed the plaintiffs' whipsaw claim as a matter of law.

"undervalued" the "future interest credits" promised by the Plan"); Dkt. 170 at 11 ("While it may involve a complex counterfactual inquiry, it is an exercise in *discovering* by reference to the written interest crediting rate, an unwritten plan term—the projection-rate methodology—and then using that implied term to calculate the benefits that are due.") (emphasis in original) (footnote omitted).  But following *Amara*, circuit courts have held that the fiction of imputing terms into a plan has no place in the cause of action created by ERISA § 502(a)(1)(B).

Of particular relevance in that regard is the Fourth Circuit's decision in *Pender v. Bank of America Corp.*, 788 F.3d 354 (4th Cir. 2015).  In *Pender*, the plaintiffs—represented by the same counsel as Plaintiffs here—claimed that certain provisions of the Bank's cash-balance plan violated ERISA's "anti-cutback" rule (29 U.S.C. § 1054(g)(1)) because they failed to provide participants with the value of all investment gains realized upon their accounts.  788 F.3d at 361. There was no dispute that the complained-of plan provisions had been validly adopted from a procedural standpoint, *i.e.*, the Bank had the power to design the plan the way it did.  *See id.* at 363 (noting that the Bank was acting as a trust settlor when it adopted the terms of the plan). Nor was there any dispute that, under the terms of the plan, the plaintiffs were not entitled to any additional benefits over the amount actually in their accounts, *i.e.*, the plan terms did not promise participants the value of any profits the Bank made using their plan-held money.  *Id.* at 359-60.

Instead, the *Pender* plaintiffs argued—just as Class members allege here—that the Bank had committed a statutory violation of ERISA by "fail[ing] to administer the plan in a manner 'consistent with ERISA's minimum standards'"; namely, that the plan's illegal provisions were unenforceable and required replacement with ERISA-compliant provisions.  *Compare id.* at 361 (citation omitted), *with* SAC ¶¶ 2-3, 118.  In other words, the plaintiffs sought to import from the statute an implied valuation rule—*not actually stated in the plan itself*—that would guarantee

them the value of the Bank's investment gains (in addition to their own) and, thereby, avoid a

purported cutback of accrued benefits.  *Pender*, 788 F.3d at 361.[5]  According to the plaintiffs, the

Bank "misapplied" the plan-stated benefits formula by not also taking into account (and grafting

onto the formula) ERISA-mandated minimum-valuation rules, and "§ 502(a)(1)(B) is the proper

section under which to bring a claim for benefits due based on a misapplied formula . . . ."  *Id.*

 The Fourth Circuit held that the Supreme Court's *Amara* decision "explicitly preclud[ed]

[the plaintiffs] from using [§ 502(a)(1)(B)] to recover the relief they seek."  *Id.* at 362.  The

*Pender* Court realized that, just as in *Amara*, "the plaintiffs sought to enforce the plan not as

written, but as it should properly be enforced under ERISA."  *Id.*  The plaintiffs' euphemism of

applying the benefits "'formula'" consistent with "'ERISA's minimum standards,'" *id.* at 361,

was just another way of saying that the plan's actual terms had to be replaced by an unstated

valuation rule purportedly supplied by the statute.  *Amara*, however, foreclosed relying on

ERISA § 502(a)(1)(B) to authorize judicial changes to a plan's stated terms to grant relief on a

claim for past-due benefits.  *Id.* at 362.  Because the plaintiffs' "requested remedy would require

the court to do more than simply enforce [the] contract as written," the court concluded that

"Section 502(a)(1)(B) provide[d] no avenue for bringing their claim."  *Id.*

 Thus, Plaintiffs' theory of imputing into the Plan "implied-by-law" terms purportedly

supplied by ERISA has been squarely rejected based on *Amara*.  Yet it is apparent from

Plaintiffs' class-certification motion—in particular requested declaration number 3—that such

plan-term imputation is exactly what Plaintiffs seek from this Court.  *See supra* pp. 7-8; *see also*

Dkt. 170 at 11 (arguing that "the Court, as numerous courts have done in whipsaw cases, may

---

 [5]  The *Pender* plaintiffs asserted that the Bank was obligated to "ignor[e] the terms of the
amendments to the extent the amendments were inconsistent with ERISA."  *Pender*, 788
F.3d at 362 (internal quotation marks and citation omitted).  That same basic allegation is
made here.  *See* SAC ¶ 87 ("Defendants did not disregard the terms of the Plan . . . .").

supply a required, missing implied-by-law term").  That relief is not available under ERISA § 502(a)(1)(B), which is limited to enforcing plan terms as written.  It matters not that Plaintiffs "challeng[e] the legality of the design of [the RBAP]" and argue that "it would have been unlawful for Defendants to use the 30-year Treasury rate to calculate lump sums . . . ."  SAC ¶¶ 1, 88, 98.  This Motion is not predicated on the legality of the RBAP's design in general or the Deemed Plan Interest Rate specifically, but rather on the conceded fact that the Deemed Plan Interest Rate—if enforced as written—would not afford relief to Plaintiffs.  Even if Plaintiffs are correct about the illegality of the Deemed Plan Interest Rate (which they are not), ERISA § 502(a)(1)(B) does not provide a private right of action to remedy that alleged wrong.

Nor does ERISA § 502(a)(1)(B) allow a court to alter plan terms based solely on participant expectations that are derived from materials extrinsic to the plan document itself—an argument Plaintiffs have suggested might offer an alternative route to the whipsaw remedy they seek.  *See, e.g.*, SAC ¶ 92 (alleging that participants expected "to earn rates of return that would significantly exceed the projected return on Treasury bonds").  In *Singletary v. United Parcel Serv., Inc.*, No. 15-30762, 2016 WL 3629029 (5th Cir. July 6, 2016), the Fifth Circuit held that "to succeed under Section [502](a)(1)(B)," "the claimant must show that he or she qualif[ies] for the benefits provided in that plan.  For this cause of action, courts do not look for equitable or other reasons the insurer should provide benefits not strictly owed under the Plan."  *Id.* at *3.  The same result follows here.  Regardless of what Class members may have expected by way of long-term investment returns, there is no allegation that Class members who elected a pre-age 65 distribution expected to receive lump sums greater than what they in fact received (*i.e.*, their then-current account balances), and—even if such an inference could be coaxed from the SAC— ERISA § 502(a)(1)(B) does not authorize suits for benefits unavailable under a plan as written.

## II.    PLAINTIFFS' ASSERTION OF CLAIM SIX UNDER ERISA § 502(a)(3) DOES NOT PROVIDE AN AVENUE FOR THE RELIEF THEY SEEK.

Count Six was added to this case by the filing of the SAC.  Alone among the causes of action pleaded in the SAC, Count Six seeks equitable relief.  Dkt. 150 at 29-30.  Plaintiffs have described Count Six as "a stand-alone claim for equitable relief under ERISA § 502(a)(3) rather than a part of the claim [for] relief under § 502(a)(1)(B) requested in Count One."  Dkt. 140 at 22 (citation omitted).  While Count Six thus brings ERISA § 502(a)(3) into this action, it does so only to provide Plaintiffs with an alternative basis, no longer necessary, for their argument that the Plan's Normal Retirement Age is invalid.  *See* SAC ¶ 136.  Count Six became redundant and moot when this Court (affirmed by the Second Circuit) rejected PwC's Normal-Retirement-Age defense.  Thomasch Decl., Ex. D at 1 n.1.  That Count is of no significance to the instant Motion, which assumes *arguendo* that the Plan's Normal Retirement Age is age 65.

Even assuming that the Plan can be enforced under ERISA § 502(a)(3), with only the age 65 aspect of the Plan's Normal Retirement Age definition remaining viable, Plaintiffs cannot obtain meaningful relief unless this Court also imposes a Deemed Plan Interest Rate greater than that as written in the Plan.  *See supra* pp. 14-15.  Plaintiffs cannot obtain such a new projection-rate term as relief under ERISA § 502(a)(3).  *Infra* pp. 20-24.  Indeed, they have not even requested such relief for Count Six.  SAC ¶ 136.  Accordingly, Plaintiffs' claim for recalculated benefits, which fails as a matter of law, cannot be resurrected in equity.

## III.   THE RELIEF PLAINTIFFS SEEK IS NOT OTHERWISE AVAILABLE UNDER ERISA § 502(a)(2) or § 502(a)(3).

While, as previously noted, Plaintiffs have based their claims for Class relief on ERISA § 502(a)(1)(B), the holding of *Amara* and this Motion may well incentivize them to invoke one of the two remaining ERISA provisions authorizing private rights of action, *i.e.*, ERISA §§ 502(a)(2) and (a)(3).  Doing so would be improper.  Where the plaintiff's "pled cause of

action" does not state a "cognizable" claim for relief, courts "should not transform [the] Section § [502](a)(1)(B) suit into a Section § [502](a)(2) or (a)(3) suit." *Singletary*, 2016 WL 3629029 at *4. That is the case here. Plaintiffs have never so much as mentioned § 502(a)(2) as a plausible avenue of relief. S*ee* Dkt. 126 at 5. And the only claim Plaintiffs brought under ERISA § 502(a)(3) was Count Six, the uncertified claim alleging inadequate disclosure of the Plan's Normal Retirement Age, which claim provides no basis for relief predicated on a new projection rate. *See supra* p. 20. Even apart from Plaintiffs' failure to plead their plan-design claim as an equitable action under ERISA § 502(a)(3), however, it is clear that neither ERISA § 502(a)(2) nor § 502(a)(3) can provide statutory endorsement of their whipsaw claim.

### A. Plaintiffs Cannot Invoke ERISA § 502(a)(2) Because They Neither Allege A Breach of Fiduciary Nor Seek Plan-Wide Relief.

Any resort to ERISA § 502(a)(2) in this case would be futile. First, PwC's selection of the RBAP's Deemed Plan Interest Rate was not a "fiduciary" act redressable through subsection (a)(2). PwC "acted not as a fiduciary but as a settlor when it amended the terms of" its pension plan to convert it to a cash balance plan—which is when the Deemed Plan Interest Rate provision was inserted—and that "act of amending a pension plan does not trigger ERISA's fiduciary provisions." *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996).

Second, it is beyond dispute that Plaintiffs are seeking a remedy that would flow to "***individual***" Class members in the form of benefit payments attributable to a whipsaw calculation—the type of "personal relief" that is not authorized by subsection 502(a)(2) because it does not "inure[] to the benefit of ***the plan as a whole***." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 144 (1985); *see also id.* at 150 (Brennan, J., concurring in judgment). Plaintiffs' claim seeks relief solely on behalf of the ***subset*** of Plan participants who elected lump-

21

sum distributions between 2000 and 2006—not all RBAP participants during that or any other

period. The SAC alleges no predicate for an ERISA § 502(a)(2) claim.

> **B.  Plaintiffs Cannot State A Claim Under ERISA § 502(a)(3) Because They Seek A Legal, Not Equitable, Remedy And Have Not Alleged Any Fraud Or Mistake With Regard To the Deemed Plan Interest Rate.**

Plaintiff's whipsaw claim asks the Court to reform the Plan's projection rate to conform

to what they allege ERISA requires and to declare that each Class member has the right to a

recalculated lump-sum benefit based on the reformed plan. *Supra* pp. 7-8. That remedy is not

authorized by ERISA § 502(a)(3) in the circumstances of this case.

The Supreme Court has repeatedly held that ERISA § 502(a)(3) *only* authorizes "those

categories of relief that were typically available in equity (such as injunction, mandamus, and

restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256

(1993); *see also Montanile v. Bd. of Trustees of Nat'l Elevator Indus.*, 136 S. Ct. 651, 657

(2016). The legal remedy Plaintiffs seek here is, in substance, nothing more than a demand for

money damages and thus does not fall within this limited class of remedies.

In their pleadings and throughout this case, Plaintiffs have been careful to avoid any

express request for damages. Instead, Plaintiffs have styled their requested relief as "three

related declarations," after which the Court's "work should be done." Thomasch Decl., Ex. D at

2-3. That phraseology, however, does nothing to change the essence of this case as one in law.

If Plaintiffs prevail, it does not matter whether their relief comes in the form of an award of

damages by this Court, or occurs "'mechanically,'" *id.* at 21 (citation omitted), as a result of

benefit recalculation and payment by the Plan administrator in accordance with a new Court-

declared projection rate higher than the one written into the Plan. *Id.* at 2-3.

The Second Circuit recognizes that a "declaration" taking that form seeks a ***legal*** remedy

in the form of compensatory benefit payments. *See, e.g.*, *Central States*, 771 F.3d at 154

("'Almost invariably . . . suits seeking (whether by judgment, ***injunction, or declaration***) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.'") (quoting *Great-West*, 534 U.S. at 210) (emphasis added by Second Circuit) (alteration in original).  If, as here, the requested declaration is nothing more than a necessary way-station on the path to an award of benefits allegedly underpaid, then the claim is one for ***damages*** and cannot be brought under ERISA § 502(a)(3). *Hall v. Kodak Ret. Income Plan*, 363 F. App'x 103, 107 (2d Cir. 2010) (declaratory relief in the form of "designation as an annuitant" was not "'appropriate ***equitable*** relief'" because it was "in substance no more than a request for the annuity payments Plaintiff would have been due" and thus sought "'money damages'") (emphasis in original).  Counts One and Five for allegedly forfeited benefits sound in law, not equity—no matter how Plaintiffs style their relief.[6]

Equitable relief in the form of "plan reformation" leading to a monetary recovery could be a remedy available under § 502(a)(3), but only in limited circumstances; specifically, in the event of "mutual mistake," or "fraud or similar inequitable conduct" when "such fraud reasonably cause[s] [a] plaintiff[] to be mistaken about the terms of [a] pension plan."  *Amara*, 775 F.3d at 525-26 (citations and footnote omitted).  Those were the predicate facts that permitted such relief in *Amara*, where the court found that participants had been deceived (and thereby mistaken) regarding the value of their benefits.  *See Amara*, 563 U.S. at 440-41.

---

[6]  In *Pender*, the court ruled that the plaintiffs had stated a claim under ERISA § 502(a)(3) because they expressly sought "an accounting for profits," which the Fourth Circuit agreed was an "equitable remedy . . . akin to a constructive trust."  788 F.3d at 368.  The court repeatedly made clear in ruling on that aspect of the plaintiff's requested relief that an accounting seeks a disgorgement of the defendant's profits and for that reason was equitable in nature.  *Id.* at 366.  That relief bears no resemblance to the remedy Plaintiffs seek here.

But although Plaintiffs are asking the Court to rewrite the Plan's projection rate, they are not asking for such reformation on the basis of "fraud" or "mutual mistake." Nor could Plaintiffs establish either predicate. The Deemed Plan Interest Rate is disclosed in the RBAP as the rate used to value any lump-sum distribution. RBAP § 5.4. Further, the SAC alleges that the RBAP explicitly provided for lump-sum distributions in the amount of the participants' account balance at the time of benefit election, and Plaintiffs admit that is what they received. SAC ¶ 87. There is no allegation of any communication from PwC to Plan participants that suggested any other basis for the calculation of lump-sum payments. Plaintiffs' allegations of fraud with respect to the Plan's Normal Retirement Age, even if assumed to be true, provide no basis for Plaintiffs to demand the equitable remedy of reformation of the Plan's projection rate (as they do in requested declaration number 3). *Amara*, 775 F.3d at 526; *see also Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) ("The power to reform contracts is available only in the event of mistake or fraud.") (citation omitted).

This is a case in which former participants are seeking to reform a plan based on the purported facial illegality of its terms; specifically, a projection rate that allegedly violates ERISA by undervaluing future interest credits. SAC ¶ 97. But a dispute over the "legality" of plan design, SAC ¶ 1, is simply not within the statutory endorsement of ERISA § 502(a) under the Supreme Court's construction of the causes of action afforded to private plaintiffs therein. Instead, such a "controversy" is appropriately brought in the Tax Court. *See* 26 U.S.C. § 7476.[7]

\*     \*     \*

---

[7]  This provision authorizes employers, plan administrators, **present** employees, and the Pension Benefit Guaranty Corporation to act, through declaratory actions in Tax Court, as "watchdogs" safeguarding "employees' interests" when a plan "fail[s] to conform to ERISA's requirements . . . ." *Flynn v. Comm'r*, 269 F.3d 1064, 1066 (D.C. Cir. 2001).

In 2012, Plaintiffs argued to this Court "that rights without remedy are not only unacceptable but incompatible with the objectives of [ERISA] . . . ." Dkt. 126 at 5. That principle is not applicable to ERISA's civil enforcement mechanisms. In 2014, the Second Circuit, in *Central States*, rejected outright such a policy-based rationale for relief when analyzing a private-party enforcement action under ERISA, stating that "vague notions of a statute's purpose 'basic purpose' are . . . inadequate to overcome the words of its text . . . ." *Central States*, 771 F.3d at 159 (quoting *Great-West*, 534 U.S. at 220). The Second Circuit found that remedies courts had previously allowed under ERISA § 502(a)(3) had been foreclosed by "the Supreme Court's [subsequent] limiting interpretation of 'appropriate equitable relief' and its restriction of federal common law remedies . . . ." *Id.* at 158. In so finding, the Second Circuit directly followed well-established Supreme Court precedent on the scope of private enforcement actions under ERISA § 502(a). *See Mertens*, 508 U.S. at 261-62 ("ERISA [is] an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs.").

The combination of *Amara*, *Central States*, and *Mertens* eliminates any private right of action for payment of recalculated benefits based, as here, on the assertion that plan terms violate ERISA. *Amara*'s holding disposes of traditional whipsaw claims. *Central States* and *Mertens* make clear that *Amara* cannot be circumvented on policy grounds through the invocation of ERISA § 502(a)(3). Because Congress has not provided a private right of action for recalculated pension benefits as sought by Plaintiffs, the instant action must be dismissed.

## CONCLUSION

For the foregoing reasons, PwC requests that judgment on the pleadings be entered for Defendants and that the Court dismiss the Second Amended Complaint with prejudice.

Dated:  September 16, 2016

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: /s/ Daniel J. Thomasch
    Daniel J. Thomasch
    Richard W. Mark
    Amer S. Ahmed
    200 Park Avenue
    New York, New York 10166-0193
    Tel.:  (212) 351-4000
    Fax:  (212) 351-4035

    *Attorneys for Defendants*