UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

TIMOTHY LAURENT, *et al.*,

                              Plaintiffs,

                -v-

PRICEWATERHOUSECOOPERS LLP, *et al.*,

                              Defendants.

06-CV-2280 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

      This action is brought by Plaintiffs Timothy Laurent and Smeeta Sharon, on behalf of themselves and all others similarly situated, against Defendants PricewaterhouseCoopers LLP, the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, and the Administrative Committee to the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (collectively, "PWC") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*  PWC moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asking the Court to dismiss Plaintiffs' claims with prejudice.  (Dkt. No. 209.)  Plaintiffs move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 216.)  The Court held oral argument on May 23, 2017.  (Dkt. No. 233.)  For the reasons that follow, PWC's motion is granted and Plaintiffs' motion is denied.

I.      **Motion for Judgment on the Pleadings**

   A.      **Background**[1]

The following facts are taken from the SAC and documents incorporated therein.[2] (Dkt. No. 133 ("SAC").)

At issue in this action are terms of the Retirement Benefit Accumulation Plan for Employees of PWC. (Dkt. No. 210-3 to -10 ("RBAP" or "Plan"); *see* SAC ¶ 23 n.2 (incorporating the Plan by reference).) Plaintiffs are former employees of PricewaterhouseCoopers LLP who elected a distribution of the fully vested benefits under the RBAP's lump-sum option. (SAC ¶¶ 20-21, 32, 34.) The RBAP provides a lump-sum distribution option for departing participants who have attained the Plan's "Normal Retirement Age."[3] (RBAP § 5.4(a).) Under the RBAP, "[t]he amount of any lump sum payment . . . shall not be less than the Actuarial Equivalent of the Participant's Normal Retirement Benefit." (*Id.* § 5.4(b).) The "Normal Retirement Benefit" is "calculated by projecting the Deemed Account

---

[1] The Court provides a brief overview of certain background information relevant to the current motions. Additional background is provided in the prior opinions in this case. *See Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d 310 (S.D.N.Y. 2013), *aff'd*, 794 F.3d 272 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 981 (2016); *Laurent v. PricewaterhouseCoopers LLP*, 448 F. Supp. 2d 537 (S.D.N.Y. 2006) (Mukasey, J.).

[2] "In considering a Rule 12(c) motion, 'a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Biro v. Conde Nast*, No. 11 Civ. 4442, 2014 WL 4851901, at *1 n.1 (S.D.N.Y. Sept. 30, 2014) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

[3] The Plan's definition of "Normal Retirement Age" was the subject of previous rulings by this Court and the Second Circuit. The RBAP defines "Normal Retirement Age" as "[t]he earlier of the date a Participant attains age 65 or completes five (5) Years of Service." (RBAP § 2.32.) This Court held that the "five (5) Years of Service" component of this definition was invalid under ERISA. *See Laurent*, 963 F. Supp. 2d at 319-22. The Second Circuit affirmed, albeit on somewhat different grounds. *See Laurent*, 794 F.3d at 285.

Balance to Normal Retirement Age using the Deemed Plan Interest Rate." (*Id.* § 5.1.) The "Deemed Plan Interest Rate" is the annual rate of interest equal to the interest rate on 30-year Treasury securities, as specified by the IRS for the month of February (or before July 1, 2001, the month of May) immediately preceding the "Plan Year" in which the calculation is made. (*Id.* § 2.16; *see id.* § 2.37 (defining "Plan Year" as "[t]he twelve (12) consecutive month period commencing each July 1 and ending the immediately following June 30").)

Plaintiffs allege that the 30-year Treasury rate "was not an appropriate predictor of future investment crediting rates under the RBAP." (SAC ¶ 90.) The problem with using the 30-year Treasury rate, according to Plaintiffs, is that it "undervalued" the "future interest credits" promised by the Plan, which unlawfully forced participants who opted to receive their benefits in the form of a lump sum to forfeit a portion of their return. (*Id.* ¶¶ 97-98.)

On June 26, 2014, this Court granted Plaintiffs' motion for class certification as to Count One and Count Five of the SAC. (Dkt. No. 175.) Both counts assert so-called "whipsaw" claims seeking lump-sum distributions equal to the annuity payable at normal retirement age.[4] (SAC ¶¶ 113-118, 129-133.) *See Laurent*, 794 F.3d at 275 (describing the "whipsaw" calculation at issue). Count One, in relevant part, alleges that PWC's "lump sum calculation methodology," which used the 30-year Treasury rate specified in the Plan, "result[ed] in an unlawful forfeiture of accrued benefits" in violation of ERISA and the Internal Revenue Code. (SAC ¶ 117.)

---

[4] Until 2006, under ERISA, plans that offered participants lump-sum distributions could not "deprive the participants of the value that would accrue if the participants waited and took their distributions as an annuity at normal retirement age." *Laurent*, 794 F.3d at 275. In other words, plans were required to take the employee's account balance, increase it "by the plan's interest rate multiplied by the time to normal retirement age," and then discount that total "back to present value at a set rate." *Id.* This is known as the "whipsaw calculation." *Id.* These mandatory payments were eliminated in 2006—after this case was filed and after the distributions at issue were made—when Congress passed the Pension Protection Act of 2006, 120 Stat. 780 (2006); the parties agree that the Pension Protection Act does not apply to this case. *Laurent*, 794 F.3d at 276.

Plaintiffs have acknowledged that Count Five is pleaded in the alternative and seeks similar relief—albeit under a slightly different theory.  (Dkt. No. 162 at 8.)

Here, Plaintiffs seek relief under both Counts One and Five in the form of three declarations from the Court:

1. A declaration that the lawful "normal retirement age" under the RBAP for purposes of calculating lump sum benefits is not "5 years of service" but age 65.

2. "[A] declaration that [the RBAP's] method of computing the lump sums to which withdrawing employees are entitled is unlawful," *Berger v. Xerox*, 338 F.3d 755, 763 (7th Cir. 2003).

3. A declaration that members of the Class remain entitled to benefits under the Plan attributable to the investment credits that would have been credited between the date of their lump sum distributions and age 65, using the rate that the Court determines would have been "the most reasonable projection rate" to estimate the amount of those future credits at the time of the lump sum payments, Ruppert v. Alliant Energy Cash Balance Pension Plan, [726 F.3d 936, 939 (7th Cir. 2013).]

(Dkt. No. 162 at 2-3 (alterations in original) (citing SAC ¶¶ 115-118, 133, 144, Prayer for Relief ¶ F).)

In their motion for judgment on the pleadings, Defendants argue that Plaintiffs do not have an avenue for relief under ERISA.  (*See* Dkt. No. 209.)  Specifically, Defendants argue that nothing in ERISA enables this Court to issue a declaration that invalidates the Plan's projection rate and replaces it with a new projection rate that complies with ERISA's valuation requirements.  (Dkt. No. 210 at 2.)

**B.    Legal Standard**

Under Rule 12(c), "a party is entitled to judgment on the pleadings 'only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.'"  *Zurich Ins. Co. v. Crowley Latin Am. Servs., LLC*, No. 16 Civ. 1861, 2016 WL 7377047, at *2 (S.D.N.Y. Dec. 20, 2016) (alteration in original) (quoting *Bailey*

4

*v. Pataki*, No. 08 Civ. 8563, 2010 WL 234995, at *1 (S.D.N.Y. Jan. 19, 2010)). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Citibank, N.A. v. Tormar Assocs. LLC*, No. 15 Civ. 1932, 2015 WL 7288652, at *3 (S.D.N.Y. Nov. 17, 2015) (quoting *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 427 (S.D.N.Y. 2013)) (internal quotation marks omitted). "In both postures, the district court must accept all allegations in the non-movant's pleadings as true and draw all inferences in [that party's] favor." *Id.* (alteration in original) (quoting *Gioconda Law Grp. PLLC*, 941 F. Supp. 2d at 427) (internal quotation marks omitted).

### C.  Discussion

In order to maintain an action under ERISA, "a plaintiff must both 'assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty' *and* 'identify a statutory endorsement of the action.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)). Because "ERISA is a 'comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system,'" *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 251 (1993)) (internal quotation marks omitted), courts are "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text," *id.* (alteration in original) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). "ERISA's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mertens*, 508 U.S. at 251).

In the SAC, Plaintiffs point generally to ERISA § 502(a) as the provision under which all

relief may be granted.  (SAC at 41.)  In Plaintiffs' motion for class certification, they specifically identified ERISA § 502(a)(1)(B) as the particular provision under which they move for relief.  (Dkt. No. 162 at 2.)  Now, in their opposition to PWC's motion for judgment on the pleadings, Plaintiffs also propose ERISA § 502(a)(3) as an alternative ground for relief.  (*See* Dkt. No. 212 at 18-20.)

The Court addresses (1) whether PWC's motion is untimely or procedurally improper; (2) whether controlling authority permits Plaintiffs' claims under ERISA § 502(a)(1)(B); and (3) whether ERISA § 502(a)(3) provides an alternative path to relief.

### 1. Timeliness and Propriety

Plaintiffs contend that PWC's motion for judgment on the pleadings (1) "is untimely in the extreme"; (2) was previously rejected by this Court in its decision on the motion for class certification (*see* Dkt. No. 175); and (3) conflicts with the Second Circuit's decision in *Laurent*, 794 F.3d at 289.  (*See* Dkt. No. 212 at 2-3.)

Rule 12(c) provides the standard for determining whether a motion for judgment on the pleadings is timely.  It states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  It is true that this case is over a decade old, and PWC could have raised this argument years earlier than it did.  Instead it chose to focus on a different set of arguments at the motion-to-dismiss stage.  But there was no waiver or forfeiture by PWC.  Rule 12(c) focuses on "delay [of] trial."  Where, as here, the pleadings are closed but the parties have not started expert discovery and no trial date has been set, PWC's motion is not untimely. *See Vail v. City of N.Y.*, 68 F. Supp. 3d 412, 422-23 (S.D.N.Y. 2014) (collecting cases).

Second, PWC made a similar argument to that advanced here in opposition to Plaintiffs' Motion for Class Certification. (*See* Dkt. No. 168 at 4.)  However, in deciding that motion, the

Court nowhere addressed whether ERISA endorses the relief sought by Plaintiffs, which is addressed here for the first time. (*See* Dkt. No. 175 at 3 ("Plaintiffs and Defendants continue to dispute whether RBAP's NRA is valid under ERISA and, if it is not, how to remedy the problem. But the scope of their dispute with respect to class certification is considerably narrower.").) Accordingly, this Court has not previously rejected PWC's arguments.

Finally, the Second Circuit's prior opinion in this case concerned the legality of the Plan's five-years-of-service "normal retirement age" provision. *See Laurent*, 794 F.3d at 289. The Second Circuit expressly left "to the district court" the task of considering the "appropriate relief," which is the subject of the instant dispute. *Id.* And even if the Second Circuit's decision could be read as assuming that *some* relief would be appropriate, it made no such holding.

The Court thus concludes that Defendants' motion for judgment on the pleadings is timely and properly made.

### 2. ERISA § 502(a)(1)(B)

Under ERISA § 502(a)(1)(B), "[a] civil action may be brought by a participant or a beneficiary . . . to recover benefits due to him *under the terms of his plan*, to *enforce* his rights *under the terms of the plan*, or to *clarify* his rights to future benefits *under the terms of the plan*." ERISA § 502(a)(1)(B) (emphases added). Plaintiffs argue that ERISA § 502(a)(1)(B) is the proper section under which to assert their whipsaw claims. (*See* Dkt. No. 212 at 8-18.)

The Supreme Court has made clear that courts may invoke ERISA § 502(a)(1)(B) only to enforce the terms of the Plan, "as written." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011). In *Amara*, the Court considered both ERISA § 502(a)(1)(B) and ERISA § 502(a)(3). *See id.* at 425. *Amara* was not a whipsaw case; rather, it involved allegations that an ERISA plan administrator provided inaccurate "summary plan descriptions," which misled plan participants. *Id.* at 428-31. Finding authority in ERISA § 502(a)(1)(B), the district court had ordered the

7

terms of the plan reformed and enforced, in order to remedy the false or misleading information provided by the plan administrator. *Id.* at 425, 433-34; *see also Amara v. CIGNA Corp.*, 348 F. App'x 627 (2d Cir. 2009) (affirming the district court's judgment).

On review, the Supreme Court held that reformation of plan terms is not a remedy available under ERISA § 502(a)(1)(B). *Amara*, 563 U.S. at 436 ("The statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them." (alteration in original) (quoting 29 U.S.C. § 1132(a)(1)(B))). While ERISA § 502(a)(1)(B) "allows a court to look outside the plan's written language in deciding what [a] term[] [is], *i.e.*, what the language means," it does not "authorize[] a court to alter [that] term[]." *Id.*

Plaintiffs in this case, invoking ERISA § 502(a)(1)(B), ask the Court to strike the Plan's projection rate—the 30-year Treasury rate—and replace it with the "rate that the Court determines would have been 'the most reasonable projection rate' to estimate" future investment credits under the Plan. (Dkt. No. 162 at 3 (quoting *Ruppert*, 726 F.3d at 939).) The crux of the disagreement between the parties here is whether, after the Supreme Court's 2011 decision in *Amara*, this Court is permitted to afford the relief sought by Plaintiffs

PWC does not dispute, for the purposes of this motion, that the 30-year Treasury rate is improper.[5] (*See* Dkt. No. 211 at 19; Transcript of Oral Argument, May 23, 2017 at 21.)

However, PWC *does* dispute Plaintiffs' request for a replacement rate. According to

---

[5] Plaintiffs argue that the 30-year Treasury projection rate contained in the Plan is illegal in light of a 2014 IRS Technical Advice Memorandum ("IRS TAM"), which explains that "the balance in the cash balance account must be projected with interest credits to [Normal Retirement Age]," and this projection must use "*the same interest rate used to provide interest credits to the cash balance account*." (Dkt. No. 212 at 12.) In other words, Plaintiffs argue that it is illegal to credit accounts using one rate structure while Participants are working, but to project the estimated future value of the accounts at retirement age when an early lump sum is taken using a different (and lower) rate structure—here, the 30-year Treasury rate. This is the essence of an ERISA "whipsaw" claim. *See Laurent*, 794 F.3d at 275–76; *Ruppert*, 726 F.3d at 939.

Plaintiffs, RBAP § 2.14 defines the correct interest-crediting rate, which is determined by "an algorithm that defines a variable rate based on the performance of the funds offered under the Plan's hypothetical investment menu." (Dkt. No. 212 at 12.) Plaintiffs argue that the correct projection rate is equal to the average actual interest credit over a number of prior periods and ask to the Court to supply this rate to replace the 30-year Treasury rate. (*Id.* at 12-13 (citing *Esden v. Bank of Boston*, 229 F.3d 154, 166 n.17, 177 (2d Cir. 2000)).) PWC, however, argues that such relief would amount to reformation rather than interpretation of the Plan, which, they argue, is not authorized under ERISA § 502(a)(1)(B), as clarified by the Supreme Court in *Amara*.

Plaintiffs rely primarily on pre-*Amara* cases to support their contention that, under ERISA § 502(a)(1)(B), this Court can strike the Treasury rate from the Plan and replace it with a new rate. (*See* Dkt. No. 212 at 9-13 (citing *West v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007); *Berger*, 338 F.3d 755; *Esden*, 229 F.3d 154.) Plaintiffs chiefly rely on *May Department Stores Co. v. Federal Insurance Co.*, 305 F.3d 597 (7th Cir. 2002), and *UNUM Life Insurance Co. of America v. Ward*, 526 U.S. 358 (1999), two cases discussing the scope of permissible interpretation under ERISA § 502(a)(1)(B). (*See* Dkt. No. 212 at 7-8, 15-16.) In *May Department Stores*, decided almost a decade before *Amara*, the Seventh Circuit held that, "like many other contracts, pension plans governed by ERISA contain provisions implied by law." 305 F.3d at 601. Relying on *May Department Stores*, Plaintiffs argue that, if they are correct that the 30-year Treasury rate violates ERISA, then "fleshing out the specifics of the RBAP's implied-by-law projection rate is not 'changing' the Plan's terms: it is resolving an ambiguity" by interpreting it to reflect a provision implied by law. (Dkt. No. 212 at 14.)

Plaintiffs also rely heavily on *UNUM*, pointing particularly to the Supreme Court's citation of *UNUM* in *Amara*. (*Id.* at 15-16.) *UNUM* involved a suit brought under ERISA

9

§ 502(a)(1)(B) to recover disability benefits under an ERISA-governed insurance policy in California, which an insurance company had denied as untimely under the terms of the plan at issue. *UNUM*, 526 U.S. at 364-65, 377. However, under California's "notice-prejudice" rule, an insurer denying a claim as untimely must also "prove that it suffered substantial prejudice" before denying a claim. *Id.* at 366-67 (quoting *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 15 Cal. Rptr. 2d 815, 845 (1st Dist. 1993)). ERISA preempted the state's notice-prejudice rule as a state law that "relate[s] to" an employee benefit plan, ERISA § 514(a); unless, as disputed by the parties, the rule "regulat[ed] insurance" and thus escaped preemption under the saving clause, ERISA § 514(b)(2)(A). *Id.* at 367. The Supreme Court held that California's notice-prejudice rule applied as it regulated insurance and was, therefore, *not* preempted by ERISA. *Id.* at 379.

The effect of the Court's decision in *UNUM*, then, was to incorporate California's notice-prejudice rule into the terms of the plan. In *Amara*, the Court again confirmed that § 502(a)(1)(B), "allows a court to look outside the plan's written language in deciding what those terms are, *i.e.*, what the language means." *Amara*, 563 U.S. at 436. In support of this proposition, the *Amara* Court relied on *UNUM* and described *UNUM* (parenthetically) as "permitting the insurance terms of an ERISA-governed plan to be *interpreted* in light of state insurance rules." *Id.* (emphasis added).

Plaintiffs here rely on the *Amara* Court's discussion of *UNUM* to argue "that § 502(a)(1)(B) remains the proper path for enforcement of claims like the one here that are more 'like the simple enforcement of a contract as written.'" (Dkt. No. 212 at 16 (quoting *Amara*, 563 U.S. at 436).) Plaintiffs thus argue that this Court should conceptualize the striking and replacing of the 30-year Treasury rate with a rate determined by an algorithm as a "straightforward contract interpretative exercise." (Dkt. No. 212 at 12.)

Thus, this Court must determine whether the relief sought by Plaintiffs amounts to

"interpret[ation]" of plan terms, as in *UNUM* (as described in *Amara*) —which is allowed under ERISA § 502(a)(1)(B)—or reformation—which, the *Amara* Court held, is not. *See Amara*, 563 U.S. at 436.

A "request for reformation is . . . a request that the court alter the words of the document. [A] party who seeks interpretation asks the court not to change the actual words of the document but to determine the meaning of those words." 5 Corbin on Contracts § 24.18. Here, Plaintiffs' requested relief—the striking out of the 30-year Treasury rate and its replacement with a different rate—amounts to a "change[] akin to the reform of a contract" rather than "the simple enforcement of a contract as written." *Amara*, 563 U.S. at 436. This relief goes further than the reading of a state-law notice requirement into a plan, as in *UNUM*, and would require the Court to fully replace a term of the plan. Plaintiffs would require the Court to *reform* the plan by changing its actual words, rather than determining the meaning of those words.

After *Amara*, courts have consistently refused to allow similar relief under ERISA § 502(a)(1)(B), at least when the issue is presented. In *Pender v. Bank of America Corp.*, 788 F.3d 354 (4th Cir. 2015), for example, the Fourth Circuit applied *Amara* to reject an ERISA § 502(a)(1)(B) claim where "the plaintiffs sought to enforce the plan not as written, but as it should properly be enforced under ERISA." *Id.* at 362. The plaintiffs in *Pender* argued that a bank violated ERISA when it "misapplied [a] formula" by failing to modify that formula with ERISA-mandated terms. *Id.* at 361 (citation omitted) (internal quotation marks omitted). The Fourth Circuit held that *Amara* "explicitly precludes" plaintiffs from using § 502(a)(1)(B) because the remedy required more than enforcement of plan terms—it required the court to reform the terms of the plan. *Id.* at 362-63. Though the Second Circuit has not addressed the issue, several other Courts of Appeals have reached conclusions similar to that reached by the Fourth Circuit in *Pender*. *See Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 583 n.2 (6th

11

Cir. 2016) ("By arguing that the terms of the Plan do not comply with the law, Plaintiffs tacitly concede that the relief they seek exists outside the scope of their plan.  And an action attempting to re-write the terms of a plan is unavailable under § [502](a)(1)(B)."); *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 349 (5th Cir. 2016) (applying the Eighth Circuit's distinction between claims for benefits under a plan as written and claims for equitable relief, where only the latter authorizes a plaintiff to "seek[] to reform the Plan by obtaining a declaration that the purported [Plan provisions] are void") (second alteration in original) (quoting *Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 740 (8th Cir. 2002)).

To be sure, the Seventh Circuit has affirmed an award of relief under § 502(a)(1)(B), post-*Amara*, in a whipsaw case, thus effectively allowing exactly the type of reliefs sought by Plaintiffs here.  *Ruppert*, 726 F.3d 936.  However, the issue of whether *Amara* allows such relief under that provision was not raised in the case, and the court did not address it.  It therefore does not serve as precedent for Plaintiffs' position on the issue.

Plaintiffs also argue, with some force, that the Supreme Court's decision in *Amara* should not be viewed as having so easily discarded a long line of cases, including whipsaw cases, that authorized claims for reformation-type relief under § 502(a)(1)(B).  This is akin to the argument in the context of statutory interpretation that Congress "does not . . . hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)—the point being that such a major change should not be lightly inferred without evidence of a concomitant awareness of its gravity on the part of the Congress (or, here, the Court).  It is not at all clear, however, that the elephants-in-mouseholes principle should apply at all to opinions of the Supreme Court, which elucidate the meaning of the law through their own language.  In any event, this argument does not carry the day here for two reasons.  First, the Supreme Court's holding in *Amara* was not offhand dicta; it was a carefully reasoned, unequivocal holding in the case.  And second, its

holding was based on statutory language that the Court concluded was itself clear and unambiguous.

Finally, at oral argument, Plaintiffs argued that, under *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), the Court should view the illegal plan term as void and look outside the Plan to fill the resulting gap. However, while the words of a plan may leave gaps, they also "may speak clearly." *Id.* at 1549. The Supreme Court in *McCutchen* endorsed "'look[ing] outside the plan's written language' to decide what an agreement means" so as not to "frustrate the parties' intent and produce perverse consequences." *Id.* (quoting *Amara*, 563 U.S. at 436). Here, the intent of the parties is not in question and the terms of the Plan speak clearly. The relief requested by Plaintiffs is reformation—not interpretation and not gap-filling—and requires more than the simple enforcement of the terms of the Plan as written.

Accordingly, Section 502(a)(1)(B) provides no avenue for relief.

### 3. ERISA § 502(a)(3)

Plaintiffs contend that ERISA § 502(a)(3) provides an alternative path to the relief they seek. (Dkt. No. 212 at 18-20.) ERISA § 502(a)(3) provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3).

ERISA § 502(a)(3) is a "'catchall' provision[] [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). However, "[t]he provision authorizes solely *equitable* relief, and under the Supreme Court's decision in *Great-West*, [534 U.S. 204 (2002)], this means that money awards are available in suits brought under

§ 502(a)(3) 'only in very limited circumstances.'" *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578-79 (2d Cir. 2006) (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003)); *see also Coan v. Kaufman*, 457 F.3d 250, 262 (2d Cir. 2006) ("Unlike section 502(a)(2), section 502(a)(3) permits ERISA plan participants to bring suit for individual remedies; but relief under section 502(a)(3) must be 'equitable.'" (quoting 29 U.S.C. § 1132(a)(3))).

PWC initially argues that it would be improper to allow Plaintiffs to invoke ERISA § 502(a)(3) because Plaintiffs have based their claims for class relief on ERISA § 502(a)(1)(B). (Dkt. No. 211 at 20–21 (citing *Singletary*, 828 F.3d at 349).) However, the Court is persuaded that Plaintiffs may rely on § 502(a)(3) in the alternative, for two reasons. First, in the SAC, Plaintiffs broadly invoke ERISA § 502(a) as the provision under which all relief may be granted. (SAC at 41.) Second, courts have not been overly strict about allowing an alternative theory of relief under ERISA § 502(a)(3). *See Amara*, 563 U.S. at 438–43.

Plaintiffs first argue that the Court may provide equitable relief where a plan administrator has breached its fiduciary duty—and that failure to calculate benefits in accordance with ERISA amounts to breach of fiduciary duty. (Dkt. No. 212 at 18-19.) *See Varity,* 516 U.S. at 511 ("[A] plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents."). But as PWC points out, it was not making a discretionary determination about whether class members are entitled to benefits—it was merely adhering to the terms of the Plan and distributing benefits "calculated ministerially according to the Plan's terms." (Dkt. No. 213 at 9.) Moreover, PWC correctly observes that, when designing the complained-of plan term, PWC was acting in its settlor capacity, not as a fiduciary. (Dkt. No. 211 at 21; Dkt. No. 213 at 9.) Where "plan sponsors acts to adopt, modify, or terminate an ERISA plan, they act as settlors

14

of a trust and do not fall into the category of fiduciaries." *In re Am. Express. Co. ERISA Litig.*, 762 F. Supp. 2d 614, 625 (S.D.N.Y. 2010) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)).

Next, Plaintiffs argue that reformation is appropriate under ERISA § 502(a)(3). Cases in the Second Circuit and other circuits have held that the equitable remedy of reformation is available in cases of fraud and mutual mistake—neither of which is at issue here. Plaintiffs note that the Second Circuit has suggested that reformation is available where there is "fraud, mutual mistake or *terms violative of ERISA*." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (emphasis added) (Cudahy, J.) (citing *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F. Supp. 258, 267 (S.D.N.Y. 1997)). But this reference to ERISA-violative plan terms as an alternative basis for reformation (in the absence of fraud or mistake) is dicta. Plaintiffs cite no other cases that endorse this approach, and the court in *Nechis* did not itself provide relief under ERISA § 502(a)(3) based on a finding that the plan terms violated ERISA. *See id.* (denying both injunctive relief and restitution under ERISA § 502(a)(3) where the claims were legal and not equitable in nature). Indeed, while *DeVito*, the case cited by the *Nechis* court, indicates that a court may order a *defendant* to reform its plan if it is found in violation of ERISA, 975 F. Supp. at 267, the court did "not[] reach the issue of whether *it* has the authority to reform a pension plan under ERISA." 975 F. Supp. at 267 n.13 (emphasis added).

Moreover, the Second Circuit has more recently explained (on remand from the Supreme Court in the *Amara* case) that, under federal common law, "[a] contract may be reformed due to the mutual mistake of both parties, or where one party is mistaken and the other commits fraud or engages in inequitable conduct," where "such fraud reasonably cause[s] [a] plaintiff[] to be mistaken about the terms of [a] pension plan." *Amara v. CIGNA Corp.*, 775 F.3d 510, 525-26 (2d Cir. 2014); *see also Amara,* 563 U.S. at 440 ("The power to reform contracts (as contrasted

15

with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud."); Restatement (Second) of Contracts § 166 (1981) (justifying reformation of a contract in light of a "party's fraudulent misrepresentation"). The Second Circuit did not mention other circumstances under which reformation might be justified. And Plaintiffs do not allege mistake, fraud, or inequitable conduct here. *See Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) ("The power to reform contracts is available only in the event of mistake or fraud."). Plaintiffs are therefore not entitled to relief in the form of judicial reformation under ERISA § 502(a)(3).

Moreover, PWC emphasizes that Plaintiffs seek legal, not equitable, relief. (Dkt. No. 211 at 22-24.) The Supreme Court has held that ERISA § 502(a)(3) authorizes only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens*, 508 U.S. at 256. PWC argues that the relief sought by Plaintiffs in pursuing their whipsaw claims—money damages for the Plan's implementation of the 30-year Treasury rate—is a legal remedy that does not align with any of the forms of equitable relief available under ERISA § 502(a)(3). (Dkt. No. 211 at 22-24.)

Indeed, judicial reformation under ERISA § 502(a)(3) is not available where a plaintiff seeks "to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity." *Great-West*, 534 U.S. at 210. "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* (alteration in original) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)). Here, the requested declarations, if granted, will result in the award of money damages for benefits that were

16

allegedly underpaid by PWC.

Plaintiffs attempt to restyle their requested relief as equitable—characterizing it as an accounting for profit, surcharge, unjust enrichment, or a constructive trust.  (Dkt. No. 212 at 18-20.)  But, at bottom, they are pursuing a legal claim for money damages.  Of course, "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's *breach of duty*, or to prevent the trustee's *unjust enrichment*."  *Amara*, 563 U.S. at 441-42 (emphasis added) (quoting Restatement (Third) of Trusts § 95 & cmt. a (Tent. Draft No. 5, Mar. 2, 2009)).  But Plaintiffs fail to demonstrate the breach of any duty and have not shown any unjust enrichment.  As the Second Circuit did in *Nechis*, the Court here "decline[s] this invitation to perceive equitable clothing where the requested relief is nakedly contractual."  *Nechis*, 421 F.3d at 104.

Finally, Plaintiffs argue that it would be "nonsensical" to find that the plan term at issue is in violation of ERISA and yet preclude Plaintiffs from recovering.  (Dkt. No. 212 at 8.)  They argue that supplying a remedy serves the purposes of ERISA as understood through its preamble, which calls for the protection of "the interests of participants in employee benefit plans" by "providing for appropriate remedies."  ERISA § 2(b).  However, the Second Circuit has required close adherence to ERISA's text over reliance on its broadly stated purposes.  In *Central States*, the Second Circuit asserted that "vague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text."  *Central States*, 771 F.3d at 159 (quoting *Great-West*, 534 U.S. at 220).  The court expressly recognized that, "although [plaintiff] might well be left without an appropriate remedy as a result of this decision . . . the claims raised by [plaintiff] are legal, not equitable, and therefore may not be brought under § 502(a)(3)."  *Id.* at 159-60.

Accordingly, the Court concludes that Plaintiffs are not entitled to relief pursuant to ERISA § 502(a)(3).

**II.     Motion for Summary Judgment**

Plaintiffs seek summary judgment as to liability and relief under Counts One and Five of the SAC.  (Dkt. No. 216.)  For the reasons stated above, Plaintiffs' fail to establish they are entitled to relief under ERISA for their whipsaw claims.  Plaintiffs' motion for summary judgment is therefore denied.

**III.    Conclusion**

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 209 and 216.

The parties are directed to provide a status update or proposed judgment to the Court by August 14, 2017.


        SO ORDERED.

Dated:  July 24, 2017
        New York, New York

_____
          J. PAUL OETKEN
    United States District Judge