**MANDATE**

N.Y.S.D. Case #
06-cv-2280(JPO)

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of December, two thousand nineteen.

Before:     Robert A. Katzmann,
               *Chief Judge,*
            Denny Chin,
            Christopher F. Droney,
               *Circuit Judges.*

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb 27 2020

Timothy D. Laurent and Smeeta Sharon, on behalf of themselves and all others similarly situated,

                    Plaintiffs - Appellants,

v.

PricewaterhouseCoopers LLP, The Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, The Administrative Committee to the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP,

                    Defendants - Appellees.

_____

**JUDGMENT**

Docket No. 18-487

The appeal in the above captioned case from a judgment of the United States District Court for the Southern District of New York was heard on the district court's record and the parties' briefs.  Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this Court's opinion.

                              For the Court:
                              Catherine O'Hagan Wolfe,
                              Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe*

*Catherine O'Hagan Wolfe*

**MANDATE ISSUED ON 02/27/2020**

18-487-cv
*Laurent v. PricewaterhouseCoopers LLP*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

August Term 2019

(Submitted: October 23, 2019          Decided: December 23, 2019)

Docket No. 18-487-cv

---

TIMOTHY D. LAURENT AND SMEETA SHARON, on behalf of themselves and all
others similarly situated,

*Plaintiffs-Appellants,*

*v.*

PRICEWATERHOUSECOOPERS LLP,
THE RETIREMENT BENEFIT ACCUMULATION
PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP,
THE ADMINISTRATIVE COMMITTEE TO THE RETIREMENT BENEFIT
ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP,

*Defendants-Appellees.* \*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

\*          The Clerk of the Court is respectfully directed to amend the official caption to
conform to the above.

————————————

Before:

        KATZMANN, *Chief Judge*, and CHIN and DRONEY, *Circuit Judges*.

————————————

        Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, *J.*) dismissing plaintiffs-appellants' claims alleging that the terms of their employee retirement benefits plan violated the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*  In a prior appeal, we affirmed the district court's holding that the plan violated the statute, and we remanded for the district court to consider the appropriate relief. On remand, however, defendants-appellees moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), contending that the relief requested by plaintiffs-appellants -- reformation of the plan and the recalculation of benefits in accordance with the reformed plan -- was unavailable as a matter of law.  The district court agreed.

        VACATED AND REMANDED.

————————————

        JULIA PENNY CLARK, Bredhoff & Kaiser, PLLC,
            Washington, DC (Eli Gottesdiener, Gottesdiener
            Law Firm, PLLC, Brooklyn, New York, *on the*
            *brief*), *for Plaintiffs-Appellants.*

DANIEL J. THOMASCH (Richard W. Mark, Amer S.
Ahmed, and Alejandro A. Herrera, *on the brief*),
Gibson, Dunn & Crutcher LLP, New York, New
York, *for Defendants-Appellees.*

BRENDAN BALLARD, Trial Attorney (Kate O'Scannlain,
Solicitor of Labor, G. William Scott, Assistant
Solicitor for Plan Benefits Security, and Thomas
Tso, Counsel for Appellate and Special Litigation,
*on the brief*), U.S. Department of Labor,
Washington, D.C., *for Amicus Curiae U.S. Secretary
of Labor.*

Brian T. Burgess, William M. Jay, Jaime A. Santos, James
O. Fleckner, and Alison V. Douglass, Goodwin
Procter LLP, Washington, D.C. and Boston,
Massachusetts, *and* Steven P. Lehotsky, U.S.
Chamber Litigation Center, Washington, D.C., *for
Amicus Curiae Chamber of Commerce of the United
States of America, the American Benefits Council, the
Business Roundtable, and the ERISA Industry
Committee.*

---

CHIN, *Circuit Judge*:

Plaintiffs-appellants Timothy D. Laurent and Smeeta Sharon

("Plaintiffs"), on behalf of themselves and similarly situated former employees of

defendant-appellee PricewaterhouseCoopers LLP ("PwC"), brought this action in

2006 alleging that their retirement plan -- the "Retirement Benefit Accumulation

Plan for Employees of PricewaterhouseCoopers LLP" (the "Plan") -- violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  In a series of decisions, three different district judges (Mukasey, Daniels, and Oetken, *JJ.*) held that the Plan violated ERISA.  *See Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 278 (2d Cir. 2015) ("*Laurent V*").  In 2015, on PwC's interlocutory appeal, we agreed, holding that "the [P]lan's definition of 'normal retirement age' as five years of service violates [ERISA] . . . because it bears no plausible relation to 'normal retirement.'"  *Id.* at 273.  Because the district court had not addressed "the appropriate relief," we remanded for "the district court to consider that question in the first instance."  *Id.* at 289.

On remand, however, PwC moved for judgment on the pleadings, arguing that ERISA did not authorize the relief sought by Plaintiffs -- reformation of the Plan to bring it into compliance with ERISA and the recalculation of benefits in accordance with the reformed Plan.  The district court agreed, holding that ERISA did not authorize the recalculation of benefits in the circumstances here, and dismissed the Second Amended Complaint (the "SAC") with prejudice on that basis, notwithstanding the violation of ERISA.

Plaintiffs appeal, contending that the district court erred in granting PwC's motion because ERISA does in fact authorize the relief they sought. We agree, and for the reasons detailed below, we VACATE the judgment and REMAND for further proceedings consistent with this Opinion.[1]

## BACKGROUND

### I.    *The Plan*

The Plan is a cash balance plan subject to regulation under both ERISA and the Internal Revenue Code. In 1996, the Internal Revenue Service announced its position that where a cash balance plan permits participants to take benefits before normal retirement age ("NRA") in the form of a lump-sum and promises future credits, the plan must: (1) project the participant's account balance out to the participant's NRA and add an amount reflecting the value of the future interest credits that would have accrued had the account balance remained in the plan until that future date; and (2) discount that projected total back to the distribution date using the plan's discount rate, as limited by a statutory maximum. I.R.S. Notice 96-8, 1996-1 C.B. 359. This calculation is

---

[1]    Plaintiffs also argue on appeal that the district court exceeded the scope of this Court's mandate in reaching PwC's argument that no relief was available under ERISA. Because we hold that Plaintiffs prevail on the merits, we do not reach the issue of the scope of the mandate.

known as the whipsaw calculation. *See Esden v. Bank of Bos.*, 229 F.3d 154, 159 (2d Cir. 2000); *see also Laurent v. PricewaterhouseCoopers LLP*, 448 F. Supp. 2d 537, 544 (S.D.N.Y. 2006) ("*Laurent I*") ("It is the forward projecting and discounting back that accounts for the whipsaw terminology.").[2] "'[W]hipsaw payments' . . . guarantee that plan participants who take distributions in the form of a lump sum when they terminate employment will receive the actuarial equivalent of the value of their accounts at retirement." *Laurent V*, 794 F.3d at 273.

The Plan provides that when a vested employee leaves employment, she has the option of receiving (1) an annuity commencing at NRA or (2) an immediate lump-sum payment. *Id.* at 275. The present value of the lump-sum payment must be worth at least as much as the value of the stream of income from the annuity commencing at normal retirement age. *Id.*; *see Esden*, 229 F.3d at 163. In other words, if a plan offers participants a lump-sum distribution, it "cannot deprive the participants of the value that would accrue if the participants waited and took their distributions as an annuity at normal retirement age."

---

[2]     ERISA was amended in 2006 by the Pension Protection Act of 2006, Pub. L. No. 109-280, § 701(a)(2), 120 Stat. 780 (2006) (the "PPA"), which eliminated the whipsaw calculation requirement for participants in cash balance benefit plans who elect lump-sum distributions. The parties agree, however, that the PPA does not apply to this case because the conduct at issue pre-dates the PPA.

*Laurent V*, 794 F.3d at 275.  The whipsaw calculation is used to determine the difference between the "value of a cash balance plan account at any given time and the value of the account as an annuity payable at [NRA]."  *Id*.

Here, as the district court and this Court have held, the Plan violates ERISA in at least one respect.  It defines "Normal Retirement Age" as "[t]he *earlier of the date a Participant attains age 65 or completes five (5) Years of Service*."  J. App'x at 1028 (emphasis added).  As we concluded in *Laurent V*, ERISA does not give an employer "boundless discretion" to set any period of time as the NRA; rather, a plan's NRA "must have some reasonable relationship to the age at which participants would normally retire."  794 F.3d at 281.  We held that five years of service was not a "normal retirement age."  *Id*. at 289.

Moreover, as PwC does not dispute for the purposes of this appeal, the Plan's use of the 30-year Treasury rate as the projection rate is improper because it understates future interest credits.  *See Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280 (JPO), 2017 WL 3142067, at *4 & n.5 (S.D.N.Y. July 24, 2017) ("*Laurent VI*"); ERISA § 204(c)(3).  Indeed, the Internal Revenue Service concluded that the Plan "credits the accounts using one interest

rate structure" -- based on equity rates of return -- "and projects them to Normal

Retirement Age using another" -- the 30-year Treasury rate.  J. App'x at 1195.

## II.    *Procedural History*

This case has a long procedural history dating back to 2006.

Relevant here is that in 2013, PwC moved to dismiss the SAC, arguing, *inter alia*,

that the Plan's "five years of service" NRA was valid as a matter of law.  In a

decision issued August 8, 2013, the district court rejected PwC's argument and

held that the Plan's NRA violated ERISA because "five years of service" is not an

"age" under ERISA.  *See Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d

310, 321 (S.D.N.Y. 2013) ("*Laurent IV*").

Following *Laurent IV*, PwC petitioned for interlocutory appeal and

plaintiffs moved to certify the class.  On January 22, 2014, the district court

certified *Laurent IV* for interlocutory appeal and on April 22, 2014, this Court

granted the petition.  On June 26, 2014, while the interlocutory appeal was

pending, the district court granted Plaintiffs' motion for class certification on the

counts asserting "whipsaw" claims seeking lump-sum distributions equal to the

annuity payable at NRA.

- 8 -

In an opinion issued on July 23, 2015, this Court affirmed the district

court's order denying PwC's motion to dismiss.  *See Laurent V*, 794 F.3d at 273.

Although we disagreed with the district court's reasoning, we agreed that the

Plan's method of calculating the NRA was unlawful because it "bears no

plausible relation to 'normal retirement,' and is therefore inconsistent with the

plain meaning of the statute," *id.*, and affirmed on that ground alone.  We then

remanded for the district court to determine the proper remedy.  *Id.* at 289.  In a

footnote, we also noted:

> Since ERISA grants a private cause of action to enforce,
> *inter alia*, the terms of the plan, 29 U.S.C. § 1132(a)(3),
> PwC may be compelled to 'act in accordance with the
> documents and instruments governing the plan insofar
> as they accord with the statute.'

*Id.* at 289 n.19 (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013)).

On remand, following seven months of additional discovery, PwC

moved for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c), arguing that Plaintiffs were not entitled to relief for their ERISA

claims.  Plaintiffs opposed the motion as untimely and a violation of the mandate

rule, *see, e.g., United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001), and cross-

moved for summary judgment pursuant to Rule 56.

The district court granted PwC's motion and denied Plaintiffs' motion. *Laurent VI*, 2017 WL 3142067 at *1. The district court held that PwC's motion was not untimely and that its arguments had not been waived, and it held further that the Supreme Court's holding in *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) ("*Amara III*"), precluded it from reforming the Plan under ERISA § 502(a)(1)(B). *Laurent VI*, 2017 WL 3142067 at *4-7. The district court also rejected Plaintiffs' argument that they could obtain an equitable remedy under § 502(a)(3). *Laurent VI*, 2017 WL 3142067 at *7-9.

First, the district court concluded that there was no breach of fiduciary duty because the Plan administrator was not acting in his fiduciary capacity when he distributed benefits in accordance with the Plan. *Id.* at *8. Second, the district court held that equitable reformation of the Plan was not available here because there was no allegation of fraud or mutual mistake. Finally, the district court found unpersuasive Plaintiffs' "attempt to restyle" the requested relief as seeking "an accounting for profit, surcharge, or unjust enrichment, or a constructive trust." *Id.* at *8-9. Because Plaintiffs' requested remedy, in its view, was "at bottom . . . a legal claim for money damages," *id.* at

*9, the district court concluded that it was precluded under *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (2002).

Plaintiffs subsequently moved for reconsideration, and then for clarification of the district court's order pursuant to Federal Rules of Civil Procedure 60(a) and (b). The district court denied both motions.

This appeal followed.

### DISCUSSION

Plaintiffs argue on appeal that the following two-step procedure is a remedy authorized by ERISA:

> 1.    An order . . . compelling Defendants to bring the terms and administration of the Plan into compliance with ERISA . . . ;
>
> 2.    An order requiring Defendants to re-calculate the benefits accrued and/or due under the terms of the Plan in accordance with the requirements of ERISA, and for the Plan to pay these amounts, plus interest, to or on behalf of all Class . . . members who received less in benefits or benefit accruals than the amount to which they are entitled.

Appellant's Br. at 9 (quoting Compl., Prayer for Relief ¶¶ E & F). Plaintiffs and the Secretary of Labor (the "Secretary"), as *amicus curiae*, contend that both Steps 1 and 2 are authorized by § 502(a)(1)(B) of ERISA. In the alternative, they

- 11 -

contend that Step 1 is authorized under § 502(a)(3) and that Step 2 is authorized under § 502(a)(1)(B).[3]

## I.    *Standard of Review*

"We review a judgment under Federal Rule of Civil Procedure 12(c) *de novo*," accepting as true the allegations of the nonmovant and drawing all reasonable inferences in its favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). Where a judgment is premised on a question of statutory interpretation, we similarly review that interpretation *de novo*. *City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 310 (2d Cir. 2006).

## II.   *ERISA's Remedial Provisions*

The civil enforcement provision of ERISA at issue in this case provides, in relevant part:

> (a) Persons empowered to bring a civil action
>     A civil action may be brought--

---

[3]      PwC also contends that Plaintiffs forfeited this "two-step" argument by failing to raise it below. But Plaintiffs did ask for their two-step remedy, albeit in their reply in support of their motion for summary judgment. The district court never reached the argument not because it deemed it forfeited -- indeed it had discretion to consider it, *see Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) -- but because it determined PwC was entitled to judgment on the pleadings and consequently did not reach Plaintiffs' request on the merits. In any event, we are "not limited to the particular legal theories advanced by the parties but rather retain[] the independent power to identify and apply the proper construction of governing law." *McDonald v. Pension Plan of NYSA-ILA Pension Tr. Fund*, 320 F.3d 151, 160 (2d Cir. 2003) (quoting *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991)).

(1) by a participant or beneficiary--

(A) for the relief provided for in subsection (c) of this section, or

*(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;*

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

*(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan* [] . . . .

29 U.S.C. § 1132(a) (emphasis added).

**A.** *Section 502(a)(1)(B)*

The Supreme Court considered the limits of ERISA § 502(a)(1)(B) in

*Amara III*. *Amara III* involved a pension plan for CIGNA employees that,

although compliant with ERISA, differed from the summary plan description

previously provided to the plan's participants. 563 U.S. at 428. After holding

that the discrepancy violated ERISA's notice requirements, the district court,

relying on § 502(a)(1)(B), reformed CIGNA's existing pension plan to match the

terms stated in the summary plan description. *Id.* at 434. CIGNA appealed and

the Supreme Court vacated, holding that § 502(a)(1)(B) did not authorize plan

- 13 -

reformation in this context. *Id.* at 435-36. In reaching its holding, the Supreme

Court observed:

> Where does § 502(a)(1)(B) grant a court the power to
> change the terms of the plan as they previously existed?
> The statutory language speaks of 'enforc[ing]' the 'terms
> of the plan,' not of changing them. The provision
> allows a court to look outside the plan's written
> language in deciding what those terms are, *i.e.*, what the
> language means. But we have found nothing
> suggesting that the provision authorizes a court to alter
> those terms, at least not in present circumstances, where
> that change, akin to the reform of a contract, seems less
> like the simple enforcement of a contract as written and
> more like an equitable remedy.

*Id.* (citations and emphases omitted). Because modifying the CIGNA plan's

terms to match the summary plan description went beyond "simple

enforcement," the Court held it was not authorized by § 502(a)(1)(B). *Id.* at 436.

Following *Amara III*, courts of appeals have construed § 502(a)(1)(B)

as limited to authorizing the enforcement of pension plans as written. *See*

*Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 583 n.2 (6th Cir. 2016); *Singletary*

*v. United Parcel Serv., Inc.*, 828 F.3d 342, 349 (5th Cir. 2016); *Pender v. Bank of*

*America Corp.*, 788 F.3d 354, 362 (4th Cir. 2015). This Court has done so as well in

a non-precedential summary order. *See Gill v. Bausch & Lomb Supplemental Ret.*

*Income Plan I*, 594 F. App'x 696, 699 (2d Cir. 2014) (summary order) ("*Amara* [*III*]

- 14 -

instructs a district court to limit itself to 'the simple enforcement of a contract as written.'").

The Seventh Circuit, by contrast, has affirmed two awards of whipsaw benefits under § 502(a) following *Amara III*. *See Ruppert v. Alliant Energy Cash Balance Pension Plan*, 2010 WL 5464196 (W.D. Wis. Dec. 29, 2010), *aff'd*, 726 F.3d 936 (7th Cir. 2013); *Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc.*, 716 F. Supp. 2d 752 (E.D. Wis. 2010), *aff'd in relevant part*, 651 F.3d 600 (7th Cir. 2011). Neither affirmance, however, cites to *Amara III* and in both cases, judgment had been entered in the plaintiffs' favor in the district court before issuance of the *Amara III* decision.

**B.    *Section 502(a)(3)***

ERISA § 502(a)(3) allows plan participants, beneficiaries, or fiduciaries to bring civil actions to enjoin any act or practice that violates ERISA or to obtain other "appropriate equitable relief" to redress the violation. 29 U.S.C. § 1132(a)(3); *see Mertens*, 508 U.S. at 255. The Supreme Court has interpreted the term "appropriate equitable relief" as referring to "categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity." *Amara III*, 563 U.S. at 439 (internal quotation marks omitted). Because "[a] claim for money due and owing under a contract is

- 15 -

quintessentially an action at law," *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (internal quotation marks omitted), money damage awards are not available under § 502(a)(3).  *See id.*; *Mertens*, 508 U.S. at 255.

The Supreme Court also discussed § 502(a)(3) in *Amara III*.  After concluding that the relevant pension plan could not be reformed under § 502(a)(1)(B), the Supreme Court considered whether a remedy for the *Amara* plaintiffs could instead be found in § 502(a)(3).  563 U.S. at 438.  There, the plaintiffs had argued that reformation was available as an equitable remedy for fraud.  The issue was whether this remedy required a showing of detrimental reliance.  In holding it did not, the Court hinted that courts should construe remedies in equity available under § 502(a)(3) broadly, stating:

> we conclude that the standard of prejudice must be borrowed from equitable principles, *as modified by the obligations and injuries identified by ERISA itself*. Information-related circumstances, violations, and injuries are potentially too various in nature to insist that harm must always meet that more vigorous "detrimental harm" standard when equity imposed no such strict requirement.

*Id.* at 444-45 (emphasis added).

## C.     *Application*

Although we have previously affirmed the entry of a two-step

reformation and enforcement remedy under ERISA, *see Amara v. CIGNA Corp.*,

775 F.3d 510, 532 (2d Cir. 2014) ("*Amara V*"), we have not yet had occasion to

consider the availability of reformation to plaintiffs in circumstances such as

these, where the written terms of a pension plan indisputably violate ERISA, but

there is no allegation that the violation stems from traditional fraud, mistake, or

otherwise inequitable conduct.  We nonetheless conclude that reformation of the

Plan was available here under ERISA § 502(a)(3), and that, consistent with our

precedent, the district court was then authorized to enforce the reformed Plan as

a second step under § 502(a)(1)(B).

### 1.     *Reformation under § 502(a)(3)*

ERISA authorizes reformation of the Plan because, by its plain

language, § 502(a)(3) authorizes participants and beneficiaries to "obtain . . .

equitable relief (i) to redress such violations or (ii) to enforce any provisions of

this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  Here, because

reformation is an equitable remedy and the Plan violated a "provision[] of [the]

- 17 -

subchapter" -- specifically, ERISA § 3(24) -- we conclude that § 502(a)(3)

authorizes the district court to reform the Plan. *Id.*

       The district court reached a contrary conclusion because it

interpreted *Mertens* and its progeny as limiting the availability of equitable

remedies under § 502(a)(3) to the specific circumstances under which those

remedies were typically available in equity courts. *Laurent VI*, 2017 WL 3142067,

at *8 ("Plaintiffs do not allege mistake, fraud, or inequitable conduct here. . . .

Plaintiffs are therefore not entitled to relief in the form of judicial reformation

under ERISA § 502(a)(3).").[4] But neither the statute nor *Mertens* imposes this

added requirement. Instead, § 502(a)(3) tells us that equitable remedies are

available to "redress violations of" or "to enforce any provisions of" ERISA

subchapter I. And *Mertens* holds only that remedies under § 502(a)(3) are limited

to "those categories of relief that were *typically* available in equity (such as

injunction, mandamus, and restitution, but not compensatory damages)." 508

U.S. at 256. Reformation is indisputably a typical and traditional form of

---

[4]    In finding that violations of subchapter I of ERISA themselves form the basis for a district court to enter equitable remedies under § 502(a)(3), we do not hold that the violation here could not, in itself, be construed as a form of fraud or mistake sufficient to warrant reformation. Moreover, while we do not need to reach the issue, here PwC arguably engaged in inequitable conduct -- deciding to use an unreasonable definition of NRA and applying two different interest rates in an unfair manner.

equitable relief, *see Simmons Creek Coal Co. v. Doran*, 142 U.S. 417, 435 (1892); *see also Amara III*, 563 U.S. at 440 ("The power to reform contracts . . . is a traditional power of an equity court"), and is thus categorically available to a participant or beneficiary to enforce violated provisions of ERISA.

Even were we to find ambiguity in the statute, our holding finds further support in the body of law that has developed around ERISA in this context. The Supreme Court has instructed that when construing a remedy in equity under ERISA § 502(a)(3), courts are to be guided by "equitable principles, as modified by the obligations and injuries identified by ERISA itself." *Amara III*, 563 U.S. at 445. Admittedly, the *Amara III* Court's discussion of § 502(a)(3) is arguably dicta, *see id.* at 442 (noting that the Court "need not decide which remedies [were] appropriate . . . to resolve the parties' dispute"). But our own precedent too has identified "fraud, mutual mistake, or *terms violative of ERISA*" as independent bases that justify the equitable remedy of reformation under § 502(a)(3). *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (emphasis added).

Moreover, the outcome advocated by PwC (and the Chamber of Commerce and other *amici curiae*) -- that even where employees prove an ERISA

violation, they have no remedy -- is inconsistent with the "maxim of equity . . . that '[e]quity suffers not a right to be without a remedy.'" *Amara III*, 563 U.S. at 440 (quoting R. Francis, Maxims of Equity 29 (1st Am. ed. 1823)).  And the Supreme Court has expressly identified § 502(a)(3) as occupying a special "catchall" remedial role in ERISA's statutory scheme, *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996), particularly in instances where other remedies for violations of the statute may be unavailable.  *See id.* at 515 ("[Plaintiffs] must rely on the *third* subsection or they have no remedy at all.  We are not aware of any ERISA-related purpose that denial of a remedy would serve.  Rather, we believe that granting a remedy is consistent with the literal language of the statute, the Act's purposes, and pre-existing trust law.").

We hold that § 502(a)(3) authorizes district courts to grant equitable relief -- including reformation -- to remedy violations of subsection I of ERISA, even in the absence of mistake, fraud, or other conduct traditionally considered to be inequitable.

### 2.  *Enforcement under § 502(a)(1)(B)*

After concluding that reformation of the Plan is available to Plaintiffs under § 502(a)(3), we have little trouble holding that the district court's

authority to grant Step 2 of Plaintiffs' proposed remedy -- enforcement of the

reformed Plan under § 502(a)(1)(B) -- follows.  As the Supreme Court noted in

*Amara III*, "equity often considered reformation a 'preparatory step' that

'establishes the real contract.'"  563 U.S. at 441 (quoting 4 Pomery, Equity

Jurisprudence § 1375, at 999).  And indeed, we have already expressly affirmed a

two-step remedy of reformation-and-enforcement in the post-*Amara III*, ERISA

context.  *See Amara V*, 775 F.3d at 532.

 PwC does not quarrel with our view that § 502(a)(3) is the proper

vehicle for enforcing violations of ERISA subsection I, or that enforcement of a

pension plan is authorized by § 502(a)(1)(B).[5]  But PwC does dispute our

authority under ERISA to enter Plaintiffs' two-step remedy more generally,

arguing that at least one circuit has rejected this approach.  *See Eichorn v. AT&T*

*Corp.*, 484 F.3d 644, 654-57 (3d Cir. 2007).  To the extent that it is so, however,

*Eichorn* pre-dates *Amara III* and contradicts our own precedent.  And while PwC

points to controlling cases that limit the remedies available under both § 502(a)(3)

---

[5] To the contrary, PwC has explicitly pointed to § 502(a)(3) as the provision upon which current Plan participants may properly rely to sue for violations of the statute.  *See* Appellee's Br. at 26; *see also* Tr. Oral Arg., J. App'x at 613 ("Can you sue to seek an injunction or reform it if you were in the plan and you said I don't like the way this plan is set up, I don't think it's legal. I want to go in.  [Section] 502(a)(3) gives you a vehicle to do that.").

and § 502(a)(1)(B) independently, it is notable that none of those cases considers the two provisions simultaneously. *See, e.g., Mertens*, 508 U.S. at 256-58; *Great-West*, 534 U.S. at 209-19. In the absence of controlling authority otherwise, we are inclined to follow the Supreme Court's express preference that violations of ERISA should be remedied. *See Varity Corp.*, 516 U.S. at 515; *accord Esden*, 229 F.3d at 177 ("Under ERISA, to correct this lack of safeguards, Congress created substantive rights for pension plan participants and expressly created private causes of action in federal court to vindicate those rights.").

As we have concluded that ERISA authorizes, in the circumstances here, the two-step remedy of reformation under § 502(a)(3) and enforcement under § 502(a)(1)(B), we do not address Plaintiffs' alternative arguments for relief. Nor do we address the nature of any reformation and consequent relief to which Plaintiffs may be entitled, whether on their motion for summary judgment or otherwise, leaving those questions to be resolved by the district court in the first instance.

## *CONCLUSION*

For the reasons set forth above, the judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this Opinion.