# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TIMOTHY D. LAURENT,** *et al.,* : | |
| : | |
| **On behalf of themselves and all** : | |
| **others similarly situated,** : | |
| : | |
| **Plaintiffs,** : | **06 CV 2280 (JPO)** |
| **v.** : | |
| : | |
| **PRICEWATERHOUSECOOPERS LLP,** *et al.,* : | |
| : | |
| **Defendants.** : | |

**CLASS ACTION SETTLEMENT AGREEMENT**

Subject to approval by the United States District Court for the Southern District of New York, this Class Action Settlement Agreement (the "Agreement") is entered into by and between Timothy D. Laurent and Smeeta Sharon (collectively, "Class Representatives"), for themselves and on behalf of Class Members as defined in **Section 1** below, and Defendants, PricewaterhouseCoopers LLP ("PwC") and the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "Plan") (collectively, "Defendants").

**RECITALS**

1.      On March 23, 2006, Timothy D. Laurent filed suit on behalf of himself and other similarly situated persons against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that the Plan projected benefits to normal retirement age using a formula that understated the value of future interest credits.  Specifically, Laurent asserted so-called "whipsaw" claims, in which he alleged that he received a lump sum distribution that was less than the legally required actuarial equivalent of the benefit he would have received had he left his benefit in the Plan until age 65.

2.      The case has been actively litigated since 2006.  From 2006 until 2015, the bulk of the litigation concerned the validity of the Plan's definition of Normal Retirement Age—a Plan term that, if found lawful under ERISA § 3(24), would have disposed of Plaintiffs' claims because whipsaw projections are only required when lump sums were distributed before the attainment of Normal Retirement Age.  In response to Plaintiffs' filing of the Second Amended Complaint in 2012, PwC filed a Rule 12(b)(6) motion on the grounds that the Plan's "five years of service" Normal Retirement Age was valid as a matter of law.  The District Court denied that motion, but certified its Order for interlocutory review.

3.      While the interlocutory appeal was pending, in June 2014 the District Court certified a class consisting of Participants and their Beneficiaries who elected to take a lump-sum distribution of their benefits under the Plan between March 23, 2000, and August 17, 2006.

4.      In July 2015, the Second Circuit affirmed the District Court's determination that the Plan's "five years of service" Normal Retirement Age was unlawful.  After a period of discovery, PwC moved for judgment on the pleadings on the grounds that the whipsaw relief Plaintiffs seek is not authorized by ERISA § 502(a).  Shortly thereafter, Plaintiffs moved for summary judgment seeking judicial imposition of a replacement projection rate for the Plan and recalculation of Plaintiffs' lump-sum benefits using that rate.

5.      In July 2017, the District Court denied Plaintiffs' motion for summary judgment and granted PwC's motion for judgment on the pleadings, dismissing the case with prejudice.  In December 2019, the Second Circuit concluded that the Second Amended Complaint stated a claim for relief.  The Second Circuit vacated the District Court Judgment and remanded the case for further proceedings consistent with its Opinion.  The Second Circuit stated that "the nature of any reformation and consequent relief to which Plaintiffs may be entitled, whether on their

motion for summary judgment or otherwise, [are] questions to be resolved by the district court in the first instance."

6.    When PwC petitioned for certiorari, the Supreme Court asked the U.S. Solicitor General's office for its view.  After the Solicitor General recommended that the Court deny review because, among other reasons, the case was not yet ripe for review, the Supreme Court denied certiorari in June 2021.

7.    Following issuance of the Supreme Court's and Second Circuit's mandates, in September 2021 the District Court granted Plaintiffs partial summary judgment that the Plan's stated projection rate was unlawful under ERISA, but the Court declined to grant judgment regarding the appropriate remedy, if any.  PwC filed a timely motion for reconsideration and proposed that if Defendants' motion were denied, the case should proceed to trial.  That motion remained sub judice until such time as the parties notified the Court of an agreement in principle to resolve the case.

8.    The Parties have engaged in substantial fact discovery and the Parties were prepared to vigorously litigate their positions to the Court, the Second Circuit and, if necessary, the United States Supreme Court.  In November 2021, however, after previous unsuccessful attempts over the years to negotiate a resolution of their dispute, the Parties began communicating again about a possible settlement.  These communications continued through numerous discussions between the Parties until the Parties entered into this Agreement.

9.    The Parties continue to believe in the merits of their respective positions. However, they enter into this Agreement in order to avoid the risk and expense of continued litigation while getting the benefits contemplated by this Agreement, including a final resolution of all claims, known and unknown, that have been or might be asserted by Class Representatives

or Class Members against Defendants and the other Released Parties that are in any way related to, or arise out of, the Plan.

10.     Defendants believe that settling the Litigation in accordance with the terms and conditions of this Agreement is in the best interests of the Plan and all Plan participants. Likewise, Class Representatives and Class Counsel have fully investigated and evaluated their claims and Defendants' available defenses.  After extensive arm's-length negotiations over the terms of this Agreement, and considering the benefits promised by this Agreement and the costs and uncertainty of establishing a right to recovery beyond what is contemplated in this Agreement, Class Representatives and Class Counsel have concluded that this Agreement is fair, reasonable, adequate, and in the best interests of Class Representatives and other Class Members.

NOW THEREFORE, in consideration of the promises, covenants and releases contained in this Agreement, as well as the good and valuable consideration provided for in this Agreement, the receipt and sufficiency of which the Parties acknowledge, the Parties agree as follows:

<b><u>TERMS OF SETTLEMENT</u></b>

**1.     DEFINITIONS**

As used in this Agreement, capitalized words, terms and phrases not otherwise defined in this Agreement have the meaning provided below.

A.     <u>"Agreement"</u> means this Class Action Settlement Agreement entered into between Defendants and Class Representatives, for themselves and on behalf of Class Members.

B.      <u>"Appeal"</u> means an appeal to the Second Circuit.

C.     <u>"Applicable 417(e) Interest Rate"</u> means the listed interest rate below for the Plan Year applicable to a Payment Date.  The applicable Plan Year for a Class Member's Payment Date is the Plan Year in which the Class Member's first Payment Date occurs even if the Class

Member has one or more subsequent Payment Dates in a subsequent Plan Year.  The Applicable

417(e) Interest Rates for each Plan Year are as follows:

| Plan Year that contained the Payment Date | Applicable 417(e) Interest Rate |
|---|---|
| July 1, 1999 – June 30, 2000 | 5.81% |
| July 1, 2000 – June 30, 2001 | 6.15% |
| July 1, 2001 – June 30, 2002 | 5.45% |
| July 1, 2002 – June 30, 2003 | 5.40% |
| July 1, 2003 – June 30, 2004 | 4.81% |
| July 1, 2004 – June 30, 2005 | 4.93% |
| July 1, 2005 – June 30, 2006 | 4.55% |
| July 1, 2006 – June 30, 2007 | 4.58% |

D.      "Approval Date" is defined in **Section 11(D)**.

E.      "Beneficiaries" collectively, or "Beneficiary" in the singular, mean any individual

or individuals described in Section 5.8 of the Plan, and any alternative payee, who between

March 23, 2000 and August 17, 2006 received a pre-retirement death benefit from the Plan in the

form of a lump sum distribution from the Plan attributable to the amount of a deceased Plan

participant's Cash Balance Account before the Plan participant's 65th birthday.

F.      "Cash Balance Account" means that portion of a Participant's Deemed Account

Balance as defined in Section 2.13 of the Plan that was subject to self-direction by a Participant

among the investment experience election choices offered by the Plan, regardless of whether

such Participant affirmatively directed his or her Deemed Investment Experience.

G.      "Class" means a non-opt-out class consisting of:

> All persons ("participants") who accrued benefits after June 30,
> 1994 under the Retirement Benefit Accumulation Plan for
> Employees of Price Waterhouse LLP or the Retirement Benefit
> Accumulation Plan for Employees of PricewaterhouseCoopers
> LLP, who held a Cash Balance Account and received (and/or
> whose alternate payees or whose beneficiaries or estates received)
> a lump sum payment under the Plan between March 23, 2000 and
> August 17, 2006 prior to such participants attaining age 65.

H.     "Class Counsel" means the following attorney, whom the Court appointed as Class Counsel under Fed. R. Civ. P. 23(g) pursuant to an order in the Litigation dated June 26, 2014:

> Eli Gottesdiener
> Gottesdiener Law Firm, PLLC
> 498 7th Street
> Brooklyn, NY 11215

I.     "Class Counsel's Fees" means Class Representatives' and Class Counsel's attorneys' fees, costs, and expenses in connection with this Litigation that Class Counsel will submit for consideration and approval by the Court pursuant to Fed. R. Civ. P. 23(h). Class Counsel's Fees shall be paid by PwC to Class Counsel as provided in **Section 10(A)**. Class Counsel's Fees will count toward the Total Settlement Amount as explained in Section 3. Class Counsel's Fees consist of two components:  (1) attorneys' fees; and (2) litigation costs and expenses.  The attorneys' fees component of Class Counsel's Fees shall not exceed one-third of the Total Settlement Amount. The litigation costs and expenses component of Class Counsel's Fees shall not exceed $500,000.  (Settlement Administration Costs are not part of the costs or expenses components of Class Counsel's Fees. PwC shall reimburse Class Counsel for Settlement Administration Costs as described in **Section 1(GGG)**).

J.     "Class Members" collectively, or "Class Member" in the singular, mean the members of the Class.

K.     "Class Members List" means the names and personal identification numbers of the Listed Class Members listed in Attachment A to this Agreement (the "Estimate Spreadsheet").

L.     "Class Representatives" means collectively Timothy D. Laurent and Smeeta Sharon.

M.     "Class Representatives' Service Awards" means amounts, as determined by the Court, that will not exceed: (i) $50,000 for Timothy D. Laurent; and (ii) $40,000 for Smeeta Sharon, which will be paid as an additional Plan benefit along with each Class Representative's Final Individual Net Settlement Benefit.   Class Representatives' Service Awards will count toward the Total Settlement Amount, and Defendants otherwise will have no liability or responsibility for such awards. Should the Court not approve Class Representatives' Service Awards or not approve such awards in the amount requested, the Court's decision shall have no impact on the validity of the remainder of this Agreement, as long as such modification does not impose any obligation to pay any amount in excess of the Total Settlement Amount.

N.     "Code" means the Internal Revenue Code of 1986, as amended, and the regulations thereunder.

O.     "Complaints" refers to the Complaint, the First Amended Complaint and the Second Amended Complaint filed in this Litigation in the Southern District of New York.

P.     "Confidential Data" is defined in **Section 21**.

Q.     "Court" means the United States District Court for the Southern District of New York.

R.     "Defendants' Counsel" means:

Daniel J. Thomasch
Amer S. Ahmed
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
DThomasch@gibsondunn.com
AAhmed@gibsondunn.com

S.     "Effective Date" means the date that the Agreement becomes effective, which shall be the first date after all of the following events and conditions have been met or have occurred:

7

1.      Class Representatives, Class Counsel, Defendants, and Defendants' Counsel have all executed this Agreement;

2.      The Court has entered the Preliminary Approval Order in the form attached as **Exhibit 1**;

3.      Notice has been disseminated as provided in **Section 6** of this Agreement;

4.      The Court has entered the Final Order and Judgment approving this Agreement and dismissing this action with prejudice in the form attached as **Exhibit 2** or the Court has entered an alternate form of a final order and judgment that the Parties have agreed in writing will constitute the Final Order and Judgment;

5.      The time for any motions for reconsideration, motions for rehearing, appeals and/or petitions for certiorari in the Litigation has expired without the filing of any such motions, appeals and/or petitions for review; and

6.      If a motion for reconsideration, motion for rehearing, appeal and/or petition for certiorari is filed, the date upon which all proceedings based on such motions, appeals and/or petitions for certiorari have been finally terminated in such a manner as to permit no further judicial action and with the Final Order and Judgment having been affirmed in the form entered by the Court.  (Affirmance on appeal of a final order and judgment that is otherwise in the form entered by the Court shall constitute an affirmance of the Final Order and Judgment, even if the order on appeal modifies Class Counsel's Fees, Class Representatives' Service Awards or Settlement Administration Costs, as long as such modification does not impose any obligations on Defendants to pay any sums in excess of the Total Settlement Amount).

T.      "Enrolled Actuary" means the actuary described in **Section 3(A)**.

U.      "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the regulations thereunder.

V.      "Estimate Spreadsheet" is defined in **Section 4** and is attached as **Attachment A**. The Estimate Spreadsheet will be an Excel spreadsheet with the following columns:  a personal identification number assigned to the Listed Class Member; the Listed Class Member's social security number; the Listed Class Member's name; the Listed Class Member's Individual Gross Settlement Benefit; the Listed Class Member's Individual Net Settlement Benefit; the Listed Class Member's last known address; and the Listed Class Member's date of birth.

W.      "Fairness Hearing" means the hearing at which the Court will consider whether to give final approval to the Settlement, consider an award of Class Counsel's Fees, Class Representatives' Service Awards and Settlement Administration Costs, enter the Final Order and Judgment, and make such other final rulings as are contemplated by this Agreement.  The Parties will seek to set the Fairness Hearing for a date promptly after the filing of the motion for a Preliminary Approval Order, but in no event shall the Fairness Hearing be set less than 90 days after the last date on which the notice under the Class Action Fairness Act ("CAFA") is provided as described in **Section 43**.

X.      "Final Individual Net Settlement Benefit" means the single amount payable, as set forth in the Payment Spreadsheet, to a Final Individual Net Settlement Benefit Recipient; provided, however, that in no event will the amount of a Final Individual Net Settlement Benefit be less than the Minimum Settlement Benefit for such Final Individual Net Settlement Benefit Recipient and in no event will a Final Individual Net Settlement Benefit be paid to, or for the benefit of, a Class Member who is not a Final Individual Net Settlement Benefit Recipient on the Payment Spreadsheet.

Y.      "Final Individual Net Settlement Benefit Recipient" means the Listed Class Member (or, in the event the Listed Class Member is deceased, the Listed Class Member's Successor), to whom a Final Individual Net Settlement Benefit described in **Section 13** of this

Agreement is payable.  Within five (5) business days after the Effective Date, Defendants will provide Class Counsel, Defendants' Counsel, and the Enrolled Actuary with an updated list of Final Individual Net Settlement Benefit Recipients based on information received from the Notice Administrator, Class Counsel, or directly to the Plan from a Listed Class Member's Successor, including received information relevant to **Sections 11(E)** and **(F)**; and any changes from the Class Member List shall be clearly indicated.

Z.     "Final Order and Judgment" means the final order and judgment by which the Court, at or after the Fairness Hearing, approves this Agreement, determines any award of Class Counsel's Fees, Class Representatives' Service Awards and Settlement Administration Costs, dismisses all of the claims of Class Members with prejudice, enters a final judgment in accordance with this Agreement, and makes such other final rulings as are contemplated by this Agreement.   The Final Order and Judgment shall be in the form attached as **Exhibit 2.** Notwithstanding the foregoing, the entry of a final order and judgment that is other than in the form attached as **Exhibit 2** (or a mutually agreed alternative) shall constitute entry of a Final Order and Judgment if the Parties so agree in writing. In addition, the entry of a final order and judgment that is otherwise in the form attached as **Exhibit 2** shall constitute entry of a Final Order and Judgment even if the Court denies or modifies a request for Class Counsel's Fees, Class Representatives' Service Awards or Settlement Administration Costs, as long as such modification does not impose any obligations on Defendants to pay any sum in excess of the Total Settlement Amount.

AA.     "Final Spreadsheet" means the updated schedule prepared by the Enrolled Actuary that reflects the Final Individual Net Settlement Benefit of each Final Individual Net Settlement Benefit Recipient pursuant to the Plan of Allocation's methodology described in **Section 3**, using the final Individual Gross Settlement Benefits, the final Reduction Factor, and

the final value of the Net Settlement Fund.  The Final Spreadsheet shall also indicate for each Final Individual Net Settlement Benefit Recipient, based on the information reflected on his or her returned benefit election form, the form of distribution, i.e., direct payment or rollover payment, and shall include the name, date of birth, Social Security Number, mailing address, and contact telephone number of the payment recipient, and for those electing a rollover the name of the financial institution and the account number.

BB.     "Individual Gross Settlement Benefit" means the amount determined for each Payment Amount paid to a Listed Class Member under **Section 3**.  A Listed Class Member's Individual Gross Settlement Benefit is determined only for estimating payments under this Settlement and is not necessarily the amount to be paid to any Listed Class Member or Successor.

CC.     "Individual Net Settlement Benefit" means the amount determined for each Listed Class Member under **Section 3**, as set forth in the Estimate Spreadsheet; provided, however, that in no event will the amount of an Individual Net Settlement Benefit be less than the amount of the Minimum Settlement Benefit.  A Listed Class Member's Individual Net Settlement Benefit is determined only for estimating payments under this Settlement and is not necessarily the amount to be paid to any Listed Class Member.

DD.     "IRA" means an individual retirement account as defined by section 408 of the Code.

EE.     "Listed Class Member" means a Class Member who is specifically identified in Attachment A to this Agreement (the "Estimate Spreadsheet").

FF.     "Litigation" means the above-captioned litigation filed in the United States District Court for the Southern District of New York, Case No. 06-2280.

GG.    "Mailed Notice" means the Court-approved notice which will be mailed to all Listed Class Members informing them of this Agreement in the form attached as **Exhibit 3**. Defendants' Counsel and Class Counsel shall cooperate fully with the Notice Administrator to ensure the best practicable Mailed Notice is mailed in a timely and accurate manner.

HH.    "Minimum Settlement Benefit" means a fixed Final Individual Net Settlement Benefit of $100.  To the extent the Plan determines that the law and/or the terms of the Plan prohibit it from paying the Minimum Settlement Benefit, or any portion of the appropriate Minimum Settlement Benefit, to a Final Individual Net Settlement Benefit Recipient, the amount the Plan cannot pay shall be paid to the Final Individual Net Settlement Benefit Recipient by PwC from the Net Settlement Fund.  The Parties recognize and agree that such payments, if any, made by PwC will not be paid as tax-qualified plan benefits and will reduce the Net Settlement Fund.  The election process and payment form options described in **Section 13** of this Agreement do not apply to Minimum Settlement Benefits paid by PwC to Final Individual Net Settlement Benefit Recipients.

II.    "Net Settlement Fund" means the Total Settlement Amount less (1) the amount of Class Counsel's Fees approved by the Court; (2) the sum of Class Representatives' Service Awards approved by the Court; and (3) the total amount of the Settlement Administration Costs approved by the Court.

JJ.    "Notice Administrator" means the person or entity whom the Court shall appoint in the Preliminary Approval Order to be responsible for providing Mailed Notice to Class Members and publishing the Publication Notice.  Class Representatives shall be responsible for selecting the Notice Administrator to propose to the Court for approval, subject to approval of Defendants, which approval shall not be unreasonably withheld.

KK.    "Notice Costs" means collectively all costs associated with the Mailed Notice and the Publication Notice, including all costs incurred by the Notice Administrator to identify current mailing addresses and other contact information of any of Class Member or of a Class Member's successor.

LL.    "Notices" means collectively the Mailed Notice and the Publication Notice.

MM.    "Participants" collectively, or "Participant" in the singular, mean an individual who is or was a Plan participant as defined in Section 2.34 of the Plan.

NN.    "Parties" means Class Representatives and Defendants.

OO.    "Payment Amount" means the lump sum distribution of a Listed Class Member that was paid to a Listed Class Member (or on behalf of a Listed Class Member) by the Plan between March 23, 2000 and August 17, 2006.

PP.    "Payment Date" means the date the Plan distributed to a Listed Class Member a Payment Amount.

QQ.    "Payment Spreadsheet" means the Final Spreadsheet with any changes that are required as a result of either the mutual agreement of the Parties pursuant to **Section 11** or the dispute resolution procedures of **Section 12**.

RR.    "Plan" means the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, as has been or may be amended from time to time, and any successor thereto.  Plan shall also be read as referring, where applicable, to the Trust established in Article 11 of the Plan.

SS.    "Plan Administration Costs" means the costs incurred by the Plan in connection with carrying out its obligations under the terms of this Agreement, including the processing of election forms or default elections as the case may be, printing and distributing settlement distribution checks and implementing rollover requests.  Plan Administration Costs include costs

incurred by the Defendants in verifying or providing the data needed in order to implement this Agreement or confirming the data assumptions the Enrolled Actuary will or may use to perform the required calculations and include costs of verification by the Plan of the Enrolled Actuary's calculations of Individual Net Settlement Benefits.  Plan Administration Costs shall be the sole responsibility of the Plan and shall not be deducted from the Total Settlement Amount.  Plan Administration Costs shall not include any attorneys' fees, expenses or costs incurred by Class Counsel, Class Representatives or the Enrolled Actuary and shall not include Settlement Administration Costs.

TT.     "Plan of Allocation" means the procedures set forth in **Section 3** that will be used to determine the Individual Net Settlement Benefit and Final Individual Net Settlement Benefit for each Listed Class Member or Final Individual Net Settlement Benefit Recipient on the Estimate Spreadsheet, Final Spreadsheet, and Payment Spreadsheet.

UU.     "Plan participant" has the same meaning as "Participant" (Definition MM).

VV.     "Plan Year" means the twelve (12) consecutive month period commencing each July 1 and ending the immediately following June 30.

WW.     "Pre-Judgment Interest Rate" means the "Bank prime loan rate" as published by the Federal Reserve, for each month during the relevant compounding period for each Listed Class Member described in **Section 3(B)(2)**, as determined by the Enrolled Actuary (using the rate for July 2022 for all months after July 2022).

XX.     "Preliminary Approval Order" means an order in the form attached as **Exhibit 1**.

YY.     "Projection Rate " is defined in **Section 3**.

ZZ.     "Publication Notice" means the Court-approved notice for publication to Class Members in the form attached as **Exhibit 4**.

AAA.   "Reduction Factor" equals the percentage, which when applied in determining each Individual Net Settlement Benefit for a Listed Class Member or Final Individual Net Settlement Benefit for a Final Individual Net Settlement Benefit Recipient, other than a Minimum Settlement Benefit, reduces (or, if necessary, increases) all Individual Net Settlement Benefits and Final Individual Net Settlement Benefits until the sum of all estimated Individual Net Settlement Benefits under **Section 4** (and later, all Final Individual Net Settlement Benefits under **Section 11**) equals the amount of the Net Settlement Fund.

BBB.   "Released Claims" is defined in **Sections 14(C)** through **14(G)**.

CCC.   "Released Parties" is defined in **Section 14(A)**.

DDD.   "Releasors" is defined in **Section 14(B)**.

EEE.   "Revised Lump Sum Cash Balance Benefit" means the amount determined for each Listed Class Member's Cash Balance Account by applying the Projection Rate to each Cash Balance Account for the period from the Payment Date(s) to the Listed Class Member's 65th birthday and then discounting that projected amount back to the Payment Date using the Applicable 417(e) Interest Rate, subject to the limitations imposed by Code § 415, with the calculation done separately for the portion of the Cash Balance Account attributable to employment as a partner or principal and employment other than as a partner or principal.

FFF.   "Settlement" means the settlement embodied in this Agreement.

GGG.   "Settlement Administration Costs" means the costs and fees incurred by Class Counsel on behalf of Class Representatives and Class Members in connection with carrying out the terms of this Agreement, including, but not limited to, the costs of the Notice Administrator, the Notice Costs, the fees and costs incurred in designing and implementing the Plan of Allocation, and the costs of hiring and paying the Enrolled Actuary to perform all calculations regarding estimated and final Individual Net Settlement Benefits (but excluding Plan

Administration Costs).  All Settlement Administration Costs will count toward the Total Settlement Amount.  Settlement Administration Costs shall be paid by PwC to Class Counsel. Defendants otherwise have no liability or responsibility for Settlement Administration Costs. Settlement Administration Costs shall not exceed $125,000.

HHH.  "Second Circuit" means the United States Court of Appeals for the Second Circuit.

III.  "Successor" means the Listed Class Member's spouse, if alive, or the estate of the Listed Class Member or spouse, if open, at the time of distribution of the Final Individual Net Settlement Benefit.

JJJ.  "Total Settlement Amount" is defined in **Section 2**.

## 2. TOTAL SETTLEMENT AMOUNT

A.  The Total Settlement Amount is Two Hundred Sixty-Seven Million Dollars ($267,000,000).  This is the total amount to be paid in settlement.  Class Counsel's Fees, Settlement Administration Costs, Class Representatives' Service Awards and the Net Settlement Fund will constitute the Total Settlement Amount. Pursuant to this Agreement, there shall be no obligation for Defendants to pay anything in excess of the Total Settlement Amount, except for Plan Administration Costs.  The Total Settlement Amount is in consideration for the dismissal with prejudice of the Litigation and the release of Released Claims by Class Representatives, Class Members, and other Releasors as set forth in **Section 14** below and in full and complete satisfaction of all of Class Representatives', Class Members' and the other Releasors' Released Claims against the Plan and any of the other Released Parties.  PwC will pay the Class Counsel's Fees and Settlement Administration Costs to Class Counsel.  The Plan will pay the Class Representatives' Service Awards and the Final Individual Net Settlement Benefits. The Plan is independently responsible for Plan Administration Costs, which shall not increase or be deducted

from the Total Settlement Amount.  PwC, at its sole discretion, may elect to pay part of the Plan
Administration Costs, but any such payments made by PwC will not increase or be deducted
from the Total Settlement Amount.

B.     The Parties intend and agree that the Plan's payment of Final Individual Net
Settlement Benefits shall constitute payment of Plan benefits.  The Parties intend and agree that
all payments made by the Plan from the Total Settlement Amount, if any, other than Final
Individual Net Settlement Benefits, shall constitute payment of reasonable expenses of the Plan.
No Final Individual Net Settlement Benefit (or other Plan payment) under this Agreement shall
be due to any Class Member (or Successor of such a Class Member) who is not a Final
Individual Net Settlement Benefit Recipient on the Payment Spreadsheet or, in the circumstance
described in the second sentence of **Section 11(A)**, a Successor of a Final Individual Net
Settlement Benefit Recipient on the Payment Spreadsheet.

3.          **PLAN OF ALLOCATION**

A.     **Overview.**  The Individual Gross Settlement Benefit, Individual Net Settlement
Benefit, and Final Individual Net Settlement Benefit for each Listed Class Member or Final
Individual Net Settlement Benefit Recipient in the Estimate Spreadsheet, Final Spreadsheet, or
Payment Spreadsheet (as applicable) shall be calculated pursuant to this Agreement's Plan of
Allocation by an enrolled actuary engaged by Class Counsel (the "Enrolled Actuary"), which
Plan of Allocation is to be implemented uniformly, consistently and reasonably by Class
Counsel, Class Representatives and the Enrolled Actuary.  The Enrolled Actuary shall rely upon
data for Class Members provided by the Plan.

B.     **Calculation of Individual Gross Settlement Benefits.**

1.     The calculation of the Listed Class Member's Revised Lump Sum Cash
Balance Benefits is a calculation done by the Parties (solely for the purpose of settling this

Litigation) in order to determine the Individual Gross Settlement Benefit for a Listed Class Member for the Estimate Spreadsheet, Final Spreadsheet, or Payment Spreadsheet, as applicable.

2.      Each Individual Gross Settlement Benefit of a Listed Class Member (or a Successor, when applicable) for the Estimate Spreadsheet, Final Spreadsheet, or Payment Spreadsheet, as applicable, shall be calculated as follows:

(a) First, determine the greater of

(i) the sum of the Listed Class Member's Revised Lump Sum Cash Balance Benefit (for each of the Listed Class Member's Payment Amounts, for the portion attributable to employment not as a partner or principal), plus the frozen fund balance (as previously calculated by Defendants for legacy Coopers and Lybrand LLP Participants), if any, and the "Present Value Frozen 7/1/98 Career Average Benefit" (as previously calculated by Defendants), if any,

or

(ii) the "Grandfather Benefit = Present Value of Career Average Benefit" (as previously calculated by Defendants for legacy Coopers and Lybrand LLP Participants), if any.

(b) Second, the greater amount from subparagraph (a) above shall be increased by the Listed Class Member's Revised Lump Sum Cash Balance Benefit for the portion attributable to employment as a partner or principal, if any (for each of the Listed Class Member's Payment Amounts), with the total subjected to the limitations imposed by Code § 415.

(c) Third, the excess of the amount determined in subparagraph (b) over that Listed Class Member's Payment Amount(s), if any, shall be carried forward from

the Payment Date(s) to January 1, 2023 at the Pre-Judgment Interest Rate, as
calculated by the Enrolled Actuary.

3.    The Projection Rate ("Projection Rate") to be used only for purposes of
this Agreement is the Applicable 417(e) Interest Rate plus one percentage point (1%).

C.    **Calculation of Individual Net Settlement Benefits**.    Subject to the limits
imposed by **Section 2**, each Individual Net Settlement Benefit of a Listed Class Member for the
Estimate Spreadsheet shall equal the greater of (i) the product of the Listed Class Member's
Individual Gross Settlement Benefit determined under **Section 3(B)(2)**, multiplied by the
Reduction Factor, or (ii) the Listed Class Member's Minimum Settlement Benefit, which is not
multiplied by a Reduction Factor.    For Listed Class Members with more than one Payment
Amount, a partial Individual Net Settlement Benefit will be calculated separately (but without
the Minimum Settlement Benefit) for each Payment Amount paid to the Listed Class Member,
and the Individual Net Settlement Benefit will then be the sum of the individually calculated
partial amounts, with the total not less than the Minimum Settlement Benefit.

D.    **Plan Section References.**    References in this Agreement to sections of the Plan
are to the version of the Plan as amended and restated effective July 1, 1995, or, if applicable, to
the latest of any later versions of such Plan section as it has been subsequently amended.

**4.    CALCULATION OF LISTED CLASS MEMBERS' ESTIMATED SETTLEMENT
BENEFITS**

A.    **Calculations by Enrolled Actuary**.    Based on data supplied by the Plan, the
Enrolled Actuary has prepared the Estimate Spreadsheet, which lists each Listed Class Member's
Individual Gross Settlement Benefits and Individual Net Settlement Benefits that the Enrolled
Actuary has calculated for each Listed Class Member as provided in **Section 3**, based on the
assumption that the Court will award the maximum possible Class Counsel's Fees, Class
Representatives' Service Awards and Settlement Administration Costs allowed by this

Agreement.  The Parties will file a motion with the Court requesting that the portion of this Estimate Spreadsheet that contains individual Class Member data be filed under seal with the Court to protect the privacy of Class Members.  The Estimate Spreadsheet is the result of negotiations among the Parties and constitutes an integral part of the Agreement.  The Parties agree that the calculations reflected on the Estimate Spreadsheet are the result of the application of a reasonable methodology to determine estimated Settlement benefits.  No changes may be made to the Estimate Spreadsheet except pursuant to **Section 11**.

      **B.**    **Special Considerations**. Estimates of Settlement benefits for Listed Class Members shall be prepared taking into account **Sections 11(E)** and **(F)**.

**5.**    **SUPPORT FOR APPROVAL OF SETTLEMENT**

      A.    The Parties agree to seek approval of this Agreement by the Court.  Class Counsel and Class Representatives agree to recommend approval of the Settlement to all Class Members. The Parties agree to undertake their best efforts, including all steps that may become necessary by order of the Court or otherwise, to effectuate the terms and purposes of this Agreement, to secure the Court's approval, and to oppose any objections to, appeals from, or challenges to the Preliminary Approval Order and Final Order and Judgment contemplated by this Agreement.

      B.    As soon as reasonably practicable after the signing of this Agreement, but only after affording Defendants the opportunity for a good faith review, Class Representatives shall submit this Agreement, including all attached Exhibits and Attachment A, to the Court along with a Motion and Memorandum in Support of Preliminary Approval of Proposed Settlement, and Approval and Direction of Notice Plan ("Motion for Preliminary Approval"), that would, for settlement purposes only:

            1.    Preliminarily approve this Agreement under Federal Rule of Civil Procedure 23(e);

2.      Approve the proposed notice plan and forms of Notices for Class

Members and the CAFA Notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.

§1715; and

3.      Schedule a final Fairness Hearing.

The Parties will seek to obtain a Preliminary Approval Order in the form attached as **Exhibit 1**.

Defendants expressly reserve their right to oppose the motion described in this **Section 5(B)** in

the event their input, provided in good faith and not contrary to the letter or intent of this

Agreement, is not incorporated or reflected into the motion described in this **Section 5(B)**.  The

motion to seal referenced in **Section 4(A)** of this Agreement will be filed by the Parties at the

same time as this motion.

## 6.      NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

The Parties will recommend to the Court that Notice to Class Members of this Settlement

be provided and funded as follows, which the Parties agree is sufficient under applicable law,

including the Federal Rules of Civil Procedure and the Due Process Clause of the United States

Constitution:

A.      Within five (5) business days of entry of the Preliminary Approval Order, the

Enrolled Actuary and/or Class Counsel will provide the Notice Administrator with a copy of the

Estimate Spreadsheet in Excel format.   Before mailing the Mailed Notice, the Notice

Administrator will update the addresses of the Listed Class Members by performing a search of

the U.S. Postal Services National Change of Address database.  Both before and after mailing the

Mailed Notice, to the extent practicable, the Notice Administrator will determine whether any

Listed Class Member is deceased and, if so, whether (1) the individual's spouse is living or

(2) the estate of the individual or the spouse remains open.  The Plan shall have the right to

review this information and raise any questions it may have with the Notice Administrator, but

ultimately the Plan is authorized to rely on the information provided by the Notice Administrator.

B.      The Notice Administrator, in consultation with Defendants' Counsel and Class Counsel, will be responsible for providing a Court-approved Mailed Notice to each Listed Class Member on the Estimate Spreadsheet in the form attached as **Exhibit 3**.

C.      Each such Mailed Notice shall contain for each Listed Class Member the estimated Settlement benefit from the Estimate Spreadsheet, based on the assumption that the Court will award the maximum possible Class Counsel's Fees, Class Representatives' Service Awards and Settlement Administration Costs.  The Mailed Notice will also include a benefit election form described in **Section 13** and request that each Listed Class Member (or Successor, if applicable) return to the Notice Administrator a copy of the Listed Class Member's (or Successor's) completed election form; or if the Listed Class Member or Successor is deceased, a notification to the Notice Administrator of that fact.  The Parties acknowledge that no other, new benefit election shall be required or made.  The Notice Administrator shall provide copies of the returned election forms and death notices (and the associated database maintained by the Notice Administrator) to Defendants' Counsel and Class Counsel within one hundred and twenty (120) days after entry of the Preliminary Approval Order.

D.      All estimates set forth in each Mailed Notice shall be for informational purposes only and shall be subject to change as provided in this Agreement.

E.      The Notice Administrator will begin mailing the Mailed Notice no later than twenty-one (21) days after the entry of the Preliminary Approval Order, and the Notice Administrator will complete such mailing no later than thirty (30) days after the entry of the Preliminary Approval Order.  Any Mailed Notice returned to the Notice Administrator by the United States Postal Service ("USPS") as undeliverable with a forwarding address will be re-

mailed by the Notice Administrator.  Any Mailed Notice returned to the Notice Administrator by the USPS as undeliverable without a forwarding address will be submitted to an address search firm utilized by the Notice Administrator.  If an updated address is received from the address search firm, the Notice Administrator will re-mail the Mailed Notice.  If an updated address is not available, the Plan agrees to reasonably cooperate with the Notice Administrator with respect to providing a Class Member's missing social security number that it has, if allowed by law.  If the Notice Administrator becomes aware that the Class Member's information has changed, or might have changed, the Notice Administrator will immediately provide that information to Class Counsel and Defendants' Counsel, including, but not limited to, updated name or address information and information that a Class Member is deceased or cannot be located.

F.     The Notice Administrator will publish a Court-approved Publication Notice, in the form of **Exhibit 4**, on one occasion in *USA Today*, within twenty (20) days of the entry of the Court's Preliminary Approval Order, or as soon thereafter as possible.

G.     All inquiries by or on behalf of Class Members relating to the Notices will be handled by Class Counsel.

**7.     OBJECTIONS TO THE SETTLEMENT**

Any Class Member who desires to file an objection to final approval of the Settlement, or who wishes to be heard at the Fairness Hearing, must file a written notice of objection with the Court, and serve it on Class Counsel and Defendants' Counsel on or before thirty (30) days prior to the Fairness Hearing, and include with any objection:

A.     the objector's full name and address and an appearance on behalf of any counsel representing the objector;

B.     a notice of intention to appear in Court if the objector desires to appear and be heard;

C.      a detailed statement of each objection asserted;

D.      any documents and writings which such Class Member desires the Court to consider; and

E.      a list of witnesses the person may call by live testimony.

The Parties may file written responses to any objection to the Settlement not later than seven (7) days before the scheduled Fairness Hearing.

## 8.      FINAL COURT APPROVAL OF THE SETTLEMENT

A.      No later than fourteen (14) days before the scheduled Fairness Hearing, Class Representatives shall move for the Court's final approval of this Settlement and entry of a Final Order and Judgment dismissing the Litigation with prejudice and without leave to amend.  Class Representatives and Defendants agree to use their best efforts to obtain such approval and Final Order and Judgment.  Defendants will not oppose Class Representatives' requests for any approvals or modifications concerning: (1) Class Counsel's Fees; (2) Class Representatives' Service Awards; and/or (3) Settlement Administration Costs, provided such requests do not exceed the maximums specified in **Sections 1(I), (M)** and **(GGG)**, respectively, above and do not seek to impose any obligations on Defendants to pay any sum in excess of the Total Settlement Amount.

B.      The terms of this Agreement are subject to the Court's approval and entry of the Final Order and Judgment in the form attached as **Exhibit 2** and, in the event such approval is appealed from, the approval of all applicable appellate courts. If any person appeals from the Final Order and Judgment approving the Settlement, the Parties will use their best efforts to defeat the appeal (without prejudice to Class Representatives' right to appeal from any ruling reducing or modifying the amounts requested by Class Representatives for: (1) Class Counsel's Fees; (2) Class Representatives' Service Awards; and/or (3) Settlement Administration Costs,

which appeal Defendants will not oppose as long as Class Representatives' appeal does not request amounts that exceed the maximums specified in **Sections 1(I), (M)** and **(GGG)**, respectively, above and does not seek to impose any obligations on Defendants to pay any sum in excess of the Total Settlement Amount).

**9.      EFFECT OF FAILURE TO OBTAIN FINAL APPROVAL OF SETTLEMENT**

A.      Unless the Court enters the Preliminary Approval Order in the form attached as **Exhibit 1** or the Court enters an alternate form of an order preliminarily approving the Settlement that the Parties have agreed in writing will constitute the Preliminary Approval Order, this Agreement shall become null and void *ab initio*.

B.      Unless the Court enters the Final Order and Judgment in the form attached as **Exhibit 2** or the Court enters an alternate form of a final order and judgment that the Parties have agreed in writing will constitute the Final Order and Judgment, this Agreement shall become null and void *ab initio*.

C.      If the Final Order and Judgment, or an alternate form of a final order and judgment has been entered that the Parties have agreed in writing will constitute the Final Order and Judgment, is reversed or vacated in any part on appeal, and the Parties have not agreed in writing to proceed with all or part of the Agreement as modified by an order of such appellate court, this Agreement shall become null and void *ab initio*.

D.      The Court's failure to approve any of Class Counsel's Fees, Class Representatives' Service Awards and/or Settlement Administration Costs shall not disturb the other terms of this Agreement, including the Total Settlement Amount.  In such event, Class Representatives shall modify Class Counsel's Fees, Class Representatives' Service Awards and/or Settlement Administration Costs to the Court's satisfaction (without prejudice to Class Representatives' right to appeal from any such denial of approval), provided such modifications

do not impose any obligation on Defendants to pay any amount in excess of the Total Settlement Amount and such modifications do not exceed the maximums specified in **Sections 1(I), (M)** and **(GGG)**, respectively.

E.      If this Agreement becomes null and void, it shall have no force or effect and shall impose no obligations on the Parties, except that the Parties (i) will be prohibited from using this Settlement as evidence in the Litigation and (ii) agree to cooperate in asking the Court to set a reasonable schedule for the Litigation.  The intent of the previous sentence is that, in the event this Agreement becomes null and void, the Parties will revert to their positions immediately before the execution of this Agreement, and the Litigation will resume without prejudice to any Party.

**10.     INITIAL PAYMENTS**

A.      Within seven (7) business days of the Effective Date, but no earlier than January 2, 2023, PwC will (i) disburse to Class Counsel amounts to (1) reimburse Class Counsel for Settlement Administration Costs in the amount approved by the Court (up to the maximum identified in **Section 1 (GGG)** above), and (2) pay Class Counsel's Fees in the amount approved by the Court (up to the maximum identified in **Section 1(I)** above).  The amounts referenced in this **Section 10(A)** will be paid pursuant to wire transfer instructions from Class Counsel.  Class Counsel shall provide those instructions to Defendants' Counsel within two (2) business days after the Effective Date, and at the same time Class Counsel shall also provide to Defendants' Counsel fully completed Form W-9s for such payments.   Class Counsel shall provide Defendants' Counsel with any information that Defendants' Counsel may reasonably request, on behalf of PwC, in order to process each wire transfer.

B.      After PwC disburses the amounts referenced in **Section 10(A)** to Class Counsel, the Plan will disburse the remaining balance of the Total Settlement Amount to Final Individual

Net Settlement Benefit Recipients on the Payment Spreadsheet as provided in, and in accordance with, the terms of this Agreement and (where necessary) the Plan.

11.    **CALCULATION OF FINAL SETTLEMENT BENEFITS**

A.    **Amount Owed**.  Subject to the limitations imposed by this Agreement and by law, each Final Individual Net Settlement Benefit Recipient on the Payment Spreadsheet will be paid, as a result of this Settlement, his or her Final Individual Net Settlement Benefit on the Payment Spreadsheet, as described in **Section 11(C)**.  Notwithstanding anything in this Agreement to the contrary, if the Plan is notified before the deadline described in **Section 13(G)** ("Finality") that the Final Individual Net Settlement Benefit Recipient on the Payment Spreadsheet is deceased, his or her Successor, if any, will be paid the Final Individual Net Settlement Benefit of the Final Individual Net Settlement Benefit Recipient on the Payment Spreadsheet for whom he or she is a Successor.

B.    **Final Calculation Process**.  Within fifteen (15) business days after the Effective Date, the Enrolled Actuary will calculate the Final Individual Net Settlement Benefit of each Final Individual Net Settlement Benefit Recipient on an updated Final Spreadsheet pursuant to the Plan of Allocation's methodology described in **Section 3**, using the final Individual Gross Settlement Benefits, the final Reduction Factor, and the final value of the Net Settlement Fund, and provide to Defendants' Counsel and Class Counsel the Final Spreadsheet, reflecting any change in information or data provided after the Estimate Spreadsheet was prepared.  Subject to this **Section 11**, the Enrolled Actuary may adjust Individual Net Settlement Benefits to take into account limitations in Class Member data or missing Class Member data.

C.    **Description of Final Calculations**.  The Enrolled Actuary will provide to Defendants' Counsel and Class Counsel the Final Spreadsheet containing a single Final Individual Net Settlement Benefit for each Final Individual Net Settlement Benefit Recipient,

and indicating the form of payment.   No changes may be made to the formulae and methodologies used in the Estimate Spreadsheet described in **Section 4(A)** when the Final Spreadsheet is prepared (except to the extent required by law), but the Final Spreadsheet may reflect new inputs (including, but not limited to, changes to Final Individual Net Settlement Benefit Recipients reflecting application of the rules set forth in **Sections 11(E) and (F)**) and resultant changes to Individual Net Settlement Benefits contained in the Final Spreadsheet necessary to satisfy the requirement (*see* **Section 1(AAA)**) that the sum of all Final Individual Net Settlement Benefits equals the final value of the Net Settlement Fund.   The Enrolled Actuary will notify the Plan in advance of any such new inputs and resulting changes.   The Enrolled Actuary will provide to the Plan information underlying the calculations of the Individual Net Settlement Benefits, and respond to reasonable inquiries from the Plan, such that the Plan may understand and confirm the calculations.   The Plan will have fifteen (15) business days after Defendants' Counsel's physical receipt of the Final Spreadsheet to question, approve or request revisions to the Final Spreadsheet.   In the event the Parties cannot resolve any disputes regarding these calculations, **Section 12** will apply.

   D.   **Approval of Final Calculations**.   The Enrolled Actuary will make any changes that are required as a result of either the mutual agreement of the Parties pursuant to this **Section 11** or pursuant to **Section 12**.   The date on which all disparities and disagreements among the Parties regarding the amounts of the Final Individual Net Settlement Benefits have been resolved, either by mutual agreement or pursuant to **Section 12**, will be the "Approval Date" for the Payment Spreadsheet.   The Parties will file the Payment Spreadsheet with the Court to replace the Estimate Spreadsheet filed pursuant to **Section 4(A)**, and the Payment Spreadsheet will be an integral, negotiated part of the Agreement.   To the extent that the Court ordered portions of the original Estimate Spreadsheet to be filed under seal pursuant to the motion to seal

referenced in **Section 4(A)** of this Agreement, the comparable portions of the Payment Spreadsheet shall also be filed under seal by the Parties.

E.     **Listed Class Members Who Were Estates**.  Where a lump sum distribution of a Plan cash balance benefit owed to a Participant would have been payable to the Participant between March 23, 2000 and August 17, 2006 but for the fact that he or she had died and was instead paid during that time period to his or her estate, any Final Individual Net Settlement Benefit attributable to that Payment Amount will be paid to that estate only if the administration of that estate is open on the Effective Date.  If a Listed Class Member that is an estate is closed on the Effective Date, no Final Individual Net Settlement Benefit will be payable to, or on behalf of, such Listed Class Member; the Listed Class Member will be removed from the Payment Spreadsheet; and an accompanying change shall be made to the Reduction Factor to satisfy the requirement that the sum of all Final Individual Net Settlement Benefits equals the final value of the Net Settlement Fund.

F.     **Deceased Participants And Beneficiaries Who Were Listed Class Members**. Where a Participant or Beneficiary who was a Listed Class Member on the Estimate Spreadsheet and who would have otherwise received all or a portion of a Final Individual Net Settlement Benefit is deceased on the Effective Date, the Final Individual Net Settlement Benefit that would have been paid to him or her shall be paid instead to his or her Successor, if any.  If that deceased Participant or Beneficiary does not have a Successor on the Effective Date, no Final Individual Net Settlement Benefit will be payable to such Listed Class Member; the Listed Class Member will be removed from the Payment Spreadsheet; and an accompanying change shall be made to the Reduction Factor to satisfy the requirement that the sum of all Final Individual Net Settlement Benefits equals the final value of the Net Settlement Fund.

G.      **Final Determinations**.   All determinations that may be made under this Agreement concerning Listed Class Members, Successors, Final Individual Net Settlement Benefit Recipients, settlement benefits, and the form of payment of settlement benefits including without limitation, Final Individual Net Settlement Benefits, will be final, conclusive and not subject to challenge.  No Class Member who is not listed on the Payment Spreadsheet will be entitled to a benefit from this Settlement, and no Listed Class Member or Successor will be entitled to a benefit under this Settlement other than his or her Final Individual Net Settlement Benefit, if any.  Once the Payment Spreadsheet has been approved by the Court as provided in **Section 11(D)**, no Class Member who is not a Listed Class Member can become a Listed Class Member.

H.      **Non-Duplication of Settlement Benefits.**  Notwithstanding any other provision of this Agreement, no payment will be made to a Listed Class Member (or a Successor) pursuant to this Agreement that has the effect of duplicating any payment due (or paid) to any other Listed Class Member (or Successor) under this Agreement.  Thus, for example, no payment will be made to a Listed Class Member to the extent the payment otherwise due the Listed Class Member is required to be paid instead to another who is his or her Successor.

I.      **Adequate Consideration**.  The assumptions and adjustments used for purposes of calculating the Final Individual Net Settlement Benefits are only a procedure designed by Class Counsel to apportion the Net Settlement Fund among Listed Class Members pursuant to this Agreement.  Notwithstanding these references and apportionment procedures, it is stipulated and agreed that the aggregate amounts paid pursuant to this Agreement constitute adequate consideration for the releases set forth in this Agreement.

12.    **DISPUTE RESOLUTION**

The Parties will work in good faith to resolve any disputes or disagreements concerning who should be a Listed Class Member or Final Individual Net Settlement Benefit Recipient and the amount and form of payment of any Individual Gross Settlement Benefit or Final Individual Net Settlement Benefit.   The Plan and Defendants' Counsel will consult with the Enrolled Actuary and Class Counsel in good faith regarding any calculations and determinations required by this Agreement.   However, if agreement cannot be reached, the Plan's determination with respect to such disputes and disagreements will control and will be final and binding.

13.    **FINAL PAYMENTS TO LISTED CLASS MEMBERS AND SUCCESSORS**

A.    **Payment Date**.  The Plan shall use its best efforts to make payments under this Agreement within ninety (90) days of the Approval Date.

B.    **Form of Payment.**  As indicated in **Section 6(C)** above, the Mailed Notice shall include a benefit election form that requests that (i) each Listed Class Member (or Successor, if applicable) return to the Notice Administrator a copy of the Listed Class Member's (or Successor's) completed election form; or (ii) if the Listed Class Member or Successor is deceased, that the recipient of the Mailed Notice notify the Notice Administrator of that fact.  If the Listed Class Member is deceased, and the Notice Administrator provides notice of a Successor or open estate to the Plan, the Plan shall promptly send a revised election form to the identified Successor or open estate.  Each Final Individual Net Settlement Benefit Recipient's Final Individual Net Settlement Benefit will be provided to, or on behalf of, that Final Individual Net Settlement Benefit Recipient in a single lump sum payment without regard to the required minimum distribution rules, via a check, as follows:

(i)    **Option 1 – Rollover:** A direct rollover of 100% of the Final Individual Net Settlement Benefit Recipient's Final Individual Net Settlement Benefit to an

IRA or to another qualified plan that accepts rollovers properly designated by the Final Individual Net Settlement Benefit Recipient using the forms and procedures provided by the Notice Administrator or the Plan, provided such rollover is permitted by applicable law at the date of payment.  If a Final Individual Net Settlement Benefit Recipient is not eligible to receive a tax-qualified rollover, that Final Individual Net Settlement Benefit Recipient shall receive a Direct Payment as described herein.  This option shall not be available to any Listed Class Member whose Final Individual Net Settlement Benefit is in an amount less than $1,000.

(ii)    **Option 2 – Direct Payment:** A direct payment in the form of a check drawn on a U.S. bank to, or on behalf of, the Final Individual Net Settlement Benefit Recipient of 100% of his or her Final Individual Net Settlement Benefit, less any applicable withholding required by law.

(iii)    **Default Elections**:  If a Listed Class Member (or his or her Successor, if applicable) does not affirmatively and timely elect either of the two options above within one-hundred-ten (110) days after entry of the Preliminary Approval Order, he or she will be deemed to have elected option 2 ("Direct Payment") for purposes of the Final Individual Net Settlement Benefit. However, nothing prevents the Plan from exercising its discretion to honor election forms received or perfected on an untimely basis, although the Plan has no obligation to do so.

Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement should be construed as restricting the Plan from making lump sum payments directly to Listed Class Members or their Successors without consent pursuant to the applicable provisions of the Plan and the law.

      **C.**    **Payment Delays**.  To the extent that payment of a Final Individual Net Settlement Benefit cannot be paid within the time frames established by this Agreement because as determined by the Plan, in its sole discretion, the Final Individual Net Settlement Benefit Recipient on the Payment Spreadsheet, among other objective reasons: cannot, after diligent efforts, be located; is the subject of a dispute concerning whether he or she is the proper recipient; disputes his or her Settlement benefit; or is subject to a lien or garnishment on his or her Settlement benefit, the Plan is excused from complying with this Agreement's deadlines in such an instance, shall retain the portion of the Net Settlement Fund attributable to that Final Individual Net Settlement Benefit Recipient's Final Individual Net Settlement Benefit for a period that will end no later than the last day of the Plan Year beginning immediately after the Plan Year in which the determination is made under this **Section 13(C)**.

      **D.**    **Making a Payment**. Mailing a check to the address of a Final Individual Net Settlement Benefit Recipient on the Payment Spreadsheet or to a Successor's address (as modified by any information provided to the Plan or Defendants' Counsel by the Notice Administrator or by a subsequent timely election form) shall constitute the making of the required payment.

      **E.**    **Interest on Late Payments.**  To the extent that payment is not timely made, the Plan will pay each affected Final Individual Net Settlement Benefit Recipient, in addition to his or her Final Individual Net Settlement Benefit, interest from the date ninety (90) days after the Approval Date until the date of payment.  Such interest shall be calculated at the Federal post-judgment interest rate in effect on the Effective Date.  Notwithstanding anything in the preceding sentence to the contrary, however, if interest due under this **Section 13(E)** does not exceed $50, no interest will be owed or payable to any Listed Class Member or Final Individual Net Settlement Benefit Recipient.

**F.     Proof of Payment**. The Plan shall make its proofs of mailings and transfers available to Class Counsel upon reasonable demand within fourteen (14) days of Class Counsel's written demand for same.

**G.     Finality.** If, for any reason, notwithstanding Defendants' compliance with all terms of this **Section 13**, a Final Individual Net Settlement Benefit Recipient or, in the circumstance described in the second sentence of **Section 11(A)**, his or her Successor fails to cash his or her Final Individual Net Settlement Benefit check within 180 days of mailing, and does not thereafter request a replacement check on or before the last day of the Plan Year beginning immediately after the Plan Year in which the check is mailed, that Final Individual Net Settlement Benefit Recipient shall be deemed to have forfeited any rights under this Agreement, and Defendants shall have no further obligation to such Final Individual Net Settlement Benefit Recipient or Successor.

**14.     RELEASE**

A.     "Released Parties" means the Plan, PwC, the Plan Sponsor, any committee of the Plan, and their respective affiliates, parents, subsidiaries, predecessors, successors, assigns, and each of their respective current and former fiduciaries, trustees, partners, principals, employees, members, directors, officers, agents, advisors, consultants, attorneys, actuaries, recordkeepers, insurers, representatives of any kind or persons acting or purporting to act on their behalf.

B.     "Releasors" means Class Representatives, all Class Members, all Successors and anyone acting on their behalf or interest, together with their respective successors, assigns, beneficiaries, dependents, heirs, administrators, executors, estates, personal trustees, custodians, personal agents, advisors and representatives of any kind.

C.     Upon the Effective Date, all Releasors each forever releases and discharges with prejudice the Released Parties from any and all past, present and future claims, causes of action,

demands, liability, obligations and rights whatsoever that were asserted or could have been asserted in this Litigation or that, directly or indirectly, arise out of, or relate to, or concern in any way, the Plan, including but not limited to, its terms, administration, implementation or amendment ("Released Claims"). The Released Claims include, but are not limited to:

1.      any and all claims that were asserted or could have been asserted in this Litigation;

2.      any and all claims relating in any way to the sufficiency or accuracy of lump sum payments or other Plan distributions, and any and all claims relating in any way to, or arising out of, lump sum or other Plan distributions;

3.      any and all "whipsaw" claims, any and all claims pursuant to, or arising out of, section 204 of ERISA, any and all claims regarding benefit accruals or benefit accrual rates, any and all claims that the Plan violated ERISA's age discrimination rules, and any and all claims of age discrimination relating in any way to, or arising out of, the Plan's calculation of benefits;

4.      any and all claims that the Plan, by its terms, implementation, administration or amendment, violates or violated ERISA, the Code or any other source of law;

5.      any and all claims relating in any way to, or arising out of, the amendment of the Plan to become a cash balance plan and/or the administration, interpretation or application of the Plan as a result of that amendment, including, but not limited to, how lump sum payments or other Plan distributions were calculated or paid;

6.      any and all claims that participants received less than legally required benefits under the RBAP, any and all claims relating to, or arising out of, the Plan's interest crediting rates, any and all claims alleging that the term "Deemed Account Balance" as used in the Plan means something other than a participant's account balance, any and all claims

challenging the calculation or application of the Plan's Plan Deemed Payroll Period Allocations (as defined in Section 2.15 of the Plan or its predecessors) or Deemed Investment Experience (as determined under Section 2.14 of the Plan or its predecessors), and any and all claims relating in any way to or arising out of the sufficiency or accuracy of Allocations or Deemed Investment Experience annual credits credited to participant's accounts;

       7.    any and all claims seeking additional retirement or pension benefits of any kind;

       8.    any and all claims relating in any way to or arising out of disclosures or communications relating in any way to the Plan that Class Members or the other Releasors did or did not receive, and any and all claims relating in any way to or arising out of any summary plan descriptions issued by or on behalf of the Plan;

       9.    any and all claims that any fiduciary of the Plan breached his, her or its fiduciary obligations in any way, including but not limited to, in connection with how lump sum payments were calculated, communicated, paid or administered, or in connection with, or in any way arising out of, the terms of this Agreement or its implementation;

       10.    any and all claims arising out of or relating in any way to the prosecution or defense of this Litigation, including, but not limited to, any claims that this Agreement or any aspect of its structure, terms or implementation violates any applicable law or rights of any Class Representative, Class Member, Successor or other Releasor;

       11.    any and all claims arising out of, or relating in any way to, the Settlement of this Litigation, including, but not limited to, any claims regarding (i) the preparation, design, adoption or implementation of the Plan of Allocation; (ii) the determination of who is a Listed Class Member or Final Individual Net Settlement Benefit Recipient; (iii) the preparation of the Spreadsheet, the Final Spreadsheet, and the Payment Spreadsheet; (iv) the preparation,

structuring and/or implementation of the methodology for calculating estimated and final Settlement benefits and for paying final Settlement benefits pursuant to this Agreement; (v) the calculation of estimated and final Settlement benefits, the payment of final Settlement benefits, and/or action taken to implement or comply with the terms of this Agreement or any orders of the Court regarding this Agreement; (vi) the content of any Mailed Notice, Publication Notice, benefit notices, election forms and consents and/or other disclosures distributed in connection with this Agreement; and (vii) the tax withholding or tax reporting in connection with any payments made pursuant to this Agreement; and

      12.    any and all claims for recovery of attorneys' fees, costs or expenses of any kind.

    D.    The Released Claims include, but are not limited to, any and all claims arising out of law or equity under federal, state, local or foreign law. The Released Claims also include, but are not limited to, known or unknown claims, foreseen or unforeseen claims, actual or contingent claims, and liquidated or unliquidated claims. The Released Claims also include, but are not limited to, any and all claims arising out of a statute, ordinance, regulation, constitutional provision, common law, contract, the terms of the Plan, or any other source. The Released Claims also include, but are not limited to, claims that have been or could have been brought in court or before any administrative agency or in any other forum whatsoever including, but not limited to, any forum provided for in the administrative claims procedures under the Plan. The Released Claims also include, but are not limited to, any claim for damages or other remedies, including, but not limited to, additional benefits from the Plan, interest, equitable relief, injunctive relief, or compensatory, punitive or exemplary damages.

    E.    The Releasors agree that, to the extent that the Plan Sponsor amends or modifies the Plan in any way after the date that Class Representatives, Class Counsel, the Plan, and

Defendants' Counsel execute this Agreement, such an amendment or modification shall have no effect on the Released Claims or in any way limit or modify the scope of the release set forth in this Agreement. Releasors shall not be entitled to, and waive, any rights or benefits provided by such amendments or modifications, and Releasors shall not be entitled to any benefits provided by the Plan other than those provided by this Agreement.

F.      Releasors acknowledge that the Released Claims include both known and unknown and suspected and unsuspected claims and they are aware that they may hereafter discover legal or equitable claims or remedies presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, including, but not limited to, those with respect to the allegations and subject matters in this Litigation, or that concern or relate in any way to the Plan, including, but not limited to, the sufficiency or accuracy of lump sum or other distributions from the Plan.  It is the intention of Releasors to fully, finally, and forever settle all Released Claims which exist, hereafter may exist, or might have existed, whether or not previously or currently asserted in this Litigation and whether or not arising from new facts or facts found hereafter to be other than, or different from, the facts now believed to be true.

G.      Releasors expressly acknowledge certain principles of law applicable in some states, such as Section 1542 of the Civil Code of the State of California, which limit the effect of a release to those claims or matters actually known or suspected to exist at the time of executing the release.  Released Claims include any rights under Section 1542 of the Civil Code of the State of California, and any federal law, any law of any state or territory of the United States, or any principle of common law, which is similar, comparable, or equivalent to California Civil Code Section 1542, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Releasors expressly waive all rights under Section 1542 of the Civil Code of the State of California or any similar, comparable or equivalent laws.  Releasors acknowledge that they may have Released Claims that are covered by the terms of this Agreement that they have not yet discovered.  Releasors acknowledge that they intend to release any and all such unknown or unsuspected Released Claims.  To the extent that California or other law may be applicable and enforceable, Releasors hereby agree that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable here, are hereby knowingly and voluntarily waived and relinquished by Releasors, and Releasors agree and acknowledge that this provision is an essential term of this Agreement and release.  By including this paragraph in this Agreement, the Parties do not admit or agree that California or any other state law referred to in this paragraph applies to this Agreement.

H.      Each Released Party who is not the Plan or PwC is an intended beneficiary of this Agreement and is entitled to enforce the release contained in this Agreement.

I.      Releasors are precluded and estopped from bringing in the future any Released Claims, and they expressly agree that they, acting either individually or in combination with others, will not threaten, initiate, maintain, prosecute, sue or assert any Released Claims in any action or proceeding of any kind.

J.      Releasors further agree that no third parties shall bring any Released Claims on behalf of any Releasor against any Released Party.  Should any third party do so, Releasors shall take all necessary action to secure the dismissal with prejudice of any such claim.

K.     This release may be raised as a complete defense to, and will preclude, any claims, actions and/or proceedings that are encompassed by this release.  The Parties intend that the terms of the release provided by this Agreement are to be broadly construed in favor of the Released Parties and in favor of the complete resolution of all Released Claims.

L.     Upon the Effective Date, the Parties agree that the Releasors and all other persons and entities claiming by, through, or on behalf of them will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any judicial, arbitral, or regulatory action against the Released Parties with respect to the Released Claims.

M.     Upon or after the Effective Date, if any Releasor commences, files, initiates, or institutes any new action or other proceeding for any Released Claims against the Released Parties in any federal or state court, arbitration tribunal, or administrative or other forum, such action or other proceeding shall be dismissed with prejudice and at the cost (including, but not limited to, attorneys' fees, costs and expenses) of the Releasor bringing the action or proceeding. Furthermore, if any Released Party brings any legal action before any court or arbitration, regulatory agency, or other tribunal to enforce its rights under this Agreement, such Released Party shall be entitled to recover any and all related costs (including, but not limited to, attorneys' fees, costs and expenses) from any Releasor who violates or breaches its obligation under this **Section 14**.

N.     The provisions of this release constitute an essential and material term of the Agreement and shall be incorporated into the Final Order and Judgment.

O.     This release extends to all Releasors, including, but not limited to, those Class Members whose Mailed Notice was returned as undeliverable for any reason and for whom the

Notice Administrator cannot locate a forwarding address using the procedures for the Mailed Notice described in this Agreement.

P.      This release is in addition to, and without limitation of, the preclusive effect of the Final Order and Judgment.

Q.      Nothing in this release shall preclude any action to enforce the terms of this Agreement.

## 15.   TAX QUALIFICATION OF PAYMENTS

The Parties recognize that the payments made by the Plan pursuant to this Agreement will be made from a tax-qualified defined benefit pension plan to the extent allowed by the terms of the Plan, this Settlement and the law.  This Agreement is not intended to, and does not, require any Party to perform an unlawful act or an act that would violate the tax-qualification requirements of the Code applicable to the Plan.  To the extent that the Agreement purports to require such an act, the Parties agree to amend the Agreement so as to bring it into conformity with the law and/or tax-qualification requirements of the Code applicable to the Plan in the manner that best effectuates, to the extent possible under applicable law, the intent of the Agreement as expressed in its written terms.  Any amendment of the Agreement cannot result in any obligation on Defendants to pay any sum in excess of the Total Settlement Amount.

## 16.   LIMITATION OF PARTICIPANT STATUS

A Listed Class Member's entitlement to a Final Individual Net Settlement Benefit or any other consideration under this Agreement makes that individual a Plan participant only for the purpose of the settlement of the Litigation and not for any other purpose (including but not limited to for the purpose of PBGC premiums).

**17.     NO ADMISSION OF LIABILITY**

A.     The Settlement reached in this Agreement is made only to compromise and settle this Litigation among Class Representatives, Class Members, the Plan and PwC without further litigation and should in no way be construed as an admission of liability or wrongdoing of any kind by the Plan, its fiduciaries, the Plan Sponsor or PwC.

B.     None of Class Representatives, Class Members, and Class Counsel, and no one in privity with any such person, may argue before any court, agency or other forum that this Agreement or any of its terms shows or evidences in any way that the Plan or PwC violated any law or legal obligation.   Neither this Agreement nor any of the negotiations or proceedings connected with this Settlement and the Litigation may be offered or received in evidence for any purpose other than with respect to proceedings to approve the Settlement, to obtain dismissal of the Litigation, or otherwise to enforce this Agreement.

**18.     PLAN AMENDMENT**

Nothing in this Agreement or the Settlement supersedes, or limits in any way, the right of the Plan Sponsor to amend the Plan if, and to the extent that, it determines, in its sole discretion, that an amendment to the Plan is preferable or necessary to implement the terms of this Agreement.  Nothing in this Agreement requires the Plan Sponsor to amend the Plan in any way.

**19.     NO RESTRICTION ON THE PLAN SPONSOR'S BUSINESS OR PLAN ADMINISTRATION COMMUNICATIONS**

Nothing in this Agreement precludes the Plan, its fiduciaries, or PwC from making any reasonable disclosures that refer to, or might relate to, the Agreement that the Plan, its fiduciaries or PwC believe, in each of their sole discretion, are reasonable, appropriate, or necessary to conduct the business operations of the Plan or PwC.  Such disclosures would include, but not be limited to, disclosures to auditors, regulators, shareholders, investors, attorneys, Plan participants and beneficiaries and Class Members.  Nor does this Agreement preclude the Plan, its fiduciaries

or PwC from making any disclosures regarding the Agreement that any of them determines, in each of their sole discretion, may be required by law.  In addition, upon the mutual execution of this Agreement, Class Counsel consents to the Plan, its fiduciaries, PwC, and their counsel having communications with Plan participants or Class Members, that the Plan, its fiduciaries or PwC determine, in each of their sole discretion, to be necessary or appropriate to administer the Plan or this Agreement.

**20.    COSTS**

Apart from an award of Class Counsel's Fees, Class Representatives' Service Awards and Settlement Administration Costs that count toward the Total Settlement Amount as specified and delineated in **Section 2** of the Agreement, the Parties each agree to bear their own costs and expenses incurred in connection with this Litigation and proceedings to approve the Settlement, including in the event that this Agreement shall become void.

**21.    MEDIA COMMUNICATIONS**

Unless otherwise agreed to in writing by the Parties, up to one day prior to the date the submission referenced in **Section 5(B)** is filed in the Court, none of the Parties, nor any of their counsel, shall do any of the following:

A.    Initiate any communications with Class Members (other than Class Representatives) regarding this Litigation or this Agreement;

B.    Initiate any communications with the news media regarding this Litigation or this Agreement;

C.    Issue a press release or media statement regarding this Litigation or this Agreement; or

D.    Respond to, or comment on, any inquiries from the news media regarding this Litigation or this Agreement.

## 22.   CONFIDENTIALITY

"Confidential Data" means the names, addresses, and other personal data concerning any of the Class Members or any current or former Plan participants, any nonpublic Plan terms, nonpublic information or data of any kind, information or data related to any other plan sponsored by PwC, and any nonpublic information or data related to any current or former participant of the Plan or of any other plans sponsored by PwC.  "Confidential Data" specifically includes the Class Members List, Settlement benefit calculations, and individual Class Member data contained in the Estimate Spreadsheet, Final Spreadsheet, and Payment Spreadsheet.  The Enrolled Actuary, Class Counsel or anyone acting on behalf of Class Counsel (including, but not limited to, the Notice Administrator and any other actuaries or experts retained by Class Counsel) shall keep strictly confidential any Confidential Data received from the Plan, Defendants' Counsel or anyone acting on behalf of the Plan (including, but not limited to, one or more service providers administering this Settlement) and promise to use it for no purpose other than the implementation of this Agreement.  The Confidential Data shall be used solely for the purposes of the administration and implementation of this Agreement, shall not be used for any other purpose, and shall not be disclosed to any third party.  If any Confidential Data is filed with the Court or any other court, it shall be filed under seal.  The Notice Administrator shall return to Defendants' Counsel all Confidential Data in the Notice Administrator's possession within thirty (30) days after the notice process described in **Section 6** is completed.

## 23.   WAIVERS

The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous to this Agreement.

**24.    EXTENSIONS OF TIME**

The Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Agreement, subject to approval by the Court.

**25.    DEADLINES FALLING ON WEEKENDS OR HOLIDAYS**

To the extent any deadline set forth in this Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

**26.    FORCE MAJEURE**

The failure of any Party to perform any of its obligations hereunder shall not subject any Party to any liability or remedy for damages, or otherwise, where such failure is occasioned, in whole or in part, by acts of God, fires, accidents, other natural disasters, interruptions or delays in communication or transportation, labor disputes or temporary emergency shortages, governmental laws, acts or failures to act of any third parties, or any other circumstances or causes beyond the reasonable control of such Party.

**27.    SEVERABILITY**

The provisions of this Agreement are not severable.  In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision only if the Parties mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.  Nothing in this paragraph shall affect the provisions of **Section 9(D)** relating to Class Counsel's Fees, Class Representatives' Service Awards and/or Settlement Administration Costs.

**28.    NOTICES**

Whenever this Agreement requires or contemplates that one Party shall give notice to another, notice shall be provided by email and by next-day express delivery as follows:

If to Class Representatives and/or Class Members:

Eli Gottesdiener
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215
eli@gottesdienerlaw.com

If to Defendants:

Daniel J. Thomasch
Amer S. Ahmed
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
DThomasch@gibsondunn.com
AAhmed@gibsondunn.com

and

ATTN:  Laurent Settlement
General Counsel
Deputy General Counsel
Office of General Counsel
PricewaterhouseCoopers LLP
300 Madison Avenue, New York, NY 10017
zach.stern@pwc.com
michael.q.english@pwc.com

## 29.    TAX CONSEQUENCES

A.    The Plan and PwC, if applicable, will be solely responsible for satisfying their own tax reporting obligations to pertinent government authorities with respect to all payments made pursuant to this Agreement.  The Plan and PwC, if applicable, will also be solely responsible for determining, in each of their sole discretion, the amount of federal, state and/or local income tax withholding from all such payments, and for making and processing such withholdings from such payments.  Neither the Plan, nor PwC, nor any of the other Released Parties will be liable for any tax that is assessed on any payment made pursuant to this Agreement and will, under no circumstances, be required to gross up any payment made pursuant to this Agreement based on any tax liability assessed or any withholdings made with respect thereto.

B.      No opinion concerning the tax consequences of the Settlement to Class Representatives, individual Class Members, Successors or Class Counsel is being given or will be given by the Plan, PwC, Defendants' Counsel (including for these purposes counsel employed by, associated with, or who are members or partners of Gibson Dunn & Crutcher LLP) or Class Counsel, nor is any representation or warranty in this regard made by any of these by virtue of this Agreement. Class Representatives', Class Members' and Successors' federal, state and/or local tax obligations, if any, and the determination thereof, are the sole responsibility of Class Representatives, Class Members and Successors, and it is understood that the tax consequences may vary depending upon the particular circumstances of each individual Class Representatives, Class Member and Successor.

**30.      ENTIRE AGREEMENT**

This Agreement (along with any amendment to the Plan prepared under **Section 17** to implement this Agreement) is the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings.  To the extent there is any inconsistency between this Agreement and any Notice, this Agreement shall govern and operate to define the rights and obligations of the Parties.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of this Agreement has been made or relied on, except to the extent expressly set forth in this Agreement.

**31.      NO THIRD-PARTY BENEFICIARIES**

This Agreement will not be construed to create rights in, grant remedies to, or delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary to this Agreement, except as otherwise provided in **Section 14(H)** above.

**32.   BINDING EFFECT OF THE AGREEMENT**

The terms and provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties and each of their respective predecessors, successors, heirs, and assigns.

**33.   MODIFICATIONS**

The Parties may jointly agree by written amendment to modify the provisions of this Agreement as they, in concert, deem necessary to effectuate the intent of this Agreement, subject to Court approval where necessary.

**34.   ENFORCEMENT OF AGREEMENT**

Only Class Counsel shall have standing to seek enforcement of this Agreement on behalf of Class Members.  Any individual concerned with Defendants' compliance with this Agreement may so notify Class Counsel and direct any requests for enforcement to him. Class Counsel shall have full and sole discretion to take whatever action or refrain from taking such action he deems appropriate in response to such request.

**35.   MULTIPLE ORIGINALS/COUNTERPARTS**

This Agreement, including its Exhibits, may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed to be an original, but all of which taken together shall constitute but one instrument.

**36.   AUTHORITY OF PERSONS SIGNING AGREEMENT**

The individuals executing this Agreement for the Parties represent and warrant that they do so with full authority to bind each such party to the terms and provisions in this Agreement.

**37.   SECTION TITLES**

The headings in this Agreement are inserted as a matter of convenience only, and do not define, limit, or describe the scope of this Agreement or the intent of the provisions.

**38.   NO PRESUMPTION AGAINST DRAFTER**

None of the Parties shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.  Each Party represents that, through their counsel, they were fully involved in the drafting of this Agreement.

**39.   ARM'S LENGTH TRANSACTION**

The Parties have negotiated all the terms and conditions of this Agreement at arm's length.

**40.   ALL TERMS ARE MATERIAL IN THEIR EXACT FORM**

All terms and conditions in this Agreement in their exact form are material to this Agreement and have been relied on by the Parties in entering into this Agreement.

**41.   VOLUNTARY ENTRY INTO AGREEMENT**

The Parties represent that they are voluntarily entering into this Agreement. In executing this Agreement, the Parties rely on their own judgment, beliefs, and knowledge, and the advice and recommendations of their own independent counsel.  Each party to this Agreement represents that they have consulted with, and obtained the advice of, counsel prior to executing this Agreement and that this Agreement has been explained to that Party by his or its counsel.

**42.   CHOICE OF LAW**

This Agreement, and any disputes arising out of this Agreement, are governed by ERISA and/or the federal common law of ERISA, except to the extent federal law does not govern.  In that event, New York law will apply.  Any lawsuit or other proceeding to enforce this Agreement shall be filed in the United States District Court for the Southern District of New York. In any action to enforce this Agreement, the court may award reasonable attorneys' fees and costs to the prevailing party.

**43.    COURT'S CONTINUING JURISDICTION**

Without affecting the finality of the Court's actions and orders hereunder, the Court shall retain exclusive jurisdiction over Class Representatives, Defendants, Class Members and this Litigation with respect to matters arising out of, or connected with, this Agreement.

**44.    CLASS ACTION FAIRNESS ACT**

Notice under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, will be timely served on the appropriate officials in the form attached hereto as **Exhibit 5**.

***[Signature Page Follows]***

*CLASS REPRESENTATIVES:*

By: _____        Dated: 15 September 2022
    Timothy D. Laurent

By: _____        Dated: _____
    Smeeta Sharon


*FOR CLASS REPRESENTATIVES AND CLASS MEMBERS:*

By: _____        Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215


*DEFENDANTS:*

*PRICEWATERHOUSECOOPERS LLP*

By: _____        Dated: _____

    Name:  Zachary D. Stern

    Title: General Counsel

*THE RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF
PRICEWATERHOUSECOOPERS LLP:*

By: _____        Dated: _____

    Name:  James McHale

    Title: National Benefits Leader


*APPROVED AS TO FORM FOR DEFENDANTS:*

By: _____        Dated: _____
    Daniel J. Thomasch
    Gibson, Dunn & Crutcher LLP
    200 Park Avenue, New York, NY 10166-0193

*CLASS REPRESENTATIVES:*

By: _____     Dated: _____
    Timothy D. Laurent


By: _____     Dated: _____9/15/22_____
    Smeeta Sharon


*FOR CLASS REPRESENTATIVES AND CLASS MEMBERS:*

By: _____     Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215


*DEFENDANTS:*

*PRICEWATERHOUSECOOPERS LLP*

By: _____     Dated: _____

    Name:  Zachary D. Stern

    Title: General Counsel

*THE RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP:*

By: _____     Dated: _____

    Name:  James McHale

    Title: National Benefits Leader


*APPROVED AS TO FORM FOR DEFENDANTS:*

By: _____     Dated: _____
    Daniel J. Thomasch
    Gibson, Dunn & Crutcher LLP
    200 Park Avenue, New York, NY 10166-0193

*CLASS REPRESENTATIVES:*

By: _____     Dated: _____
    Timothy D. Laurent


By: _____     Dated: _____
    Smeeta Sharon


*FOR CLASS REPRESENTATIVES AND CLASS MEMBERS:*

By: _____     Dated: 9/15/22
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215


*DEFENDANTS:*

*PRICEWATERHOUSECOOPERS LLP*

By: _____     Dated: _____

    Name:  Zachary D. Stern

    Title: General Counsel

*THE RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP:*

By: _____     Dated: _____

    Name:  James McHale

    Title: National Benefits Leader

*APPROVED AS TO FORM FOR DEFENDANTS:*

By: _____     Dated: _____
    Daniel J. Thomasch
    Gibson, Dunn & Crutcher LLP
    200 Park Avenue, New York, NY 10166-0193

*CLASS REPRESENTATIVES:*

By: _____       Dated: _____
    Timothy D. Laurent


By: _____       Dated: _____
    Smeeta Sharon


*FOR CLASS REPRESENTATIVES AND CLASS MEMBERS:*

By: _____       Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215


*DEFENDANTS:*

*PRICEWATERHOUSECOOPERS LLP*

By: _____       Dated: 9/15/22

    Name:  Zachary D. Stern

    Title: General Counsel

*THE RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP:*

By: _____       Dated: _____

    Name:  James McHale

    Title: National Benefits Leader


*APPROVED AS TO FORM FOR DEFENDANTS:*

By: _____       Dated: 9/15/2022
    Daniel J. Thomasch
    Gibson, Dunn & Crutcher LLP
    200 Park Avenue, New York, NY 10166-0193

*CLASS REPRESENTATIVES:*

By: _____        Dated: _____
    Timothy D. Laurent


By: _____        Dated: _____
    Smeeta Sharon


*FOR CLASS REPRESENTATIVES AND CLASS MEMBERS:*

By: _____        Dated: _____
    Eli Gottesdiener
    Gottesdiener Law Firm, PLLC
    498 7th Street
    Brooklyn, NY 11215


*DEFENDANTS:*

*PRICEWATERHOUSECOOPERS LLP*

By: _____        Dated: _____

    Name:  Zachary D. Stern

    Title: General Counsel

*THE RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP:*

By: _____        Dated: ___September 15, 2022___

    Name:  James McHale

    Title: National Benefits Leader


*APPROVED AS TO FORM FOR DEFENDANTS:*

By: _____        Dated: _____
    Daniel J. Thomasch
    Gibson, Dunn & Crutcher LLP
    200 Park Avenue, New York, NY 10166-0193

*Laurent v. PwC, et al.*, 06-cv-2280 (JPO) (S.D.N.Y.)

# ATTACHMENT A
# Estimate Spreadsheet
### [Placeholder, pending ruling on letter motion to seal]

*Laurent v. PwC, et al.*, 06-cv-2280 (JPO) (S.D.N.Y.)

# EXHIBIT 1 to
# Class Action Settlement Agreement

## Proposed Preliminary Approval Order

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TIMOTHY D. LAURENT, *et al.*,** | : |
| | : |
| **On behalf of themselves and all** | : |
| **others similarly situated,** | : |
| | : |
| **Plaintiffs,** | : **06 CV 2280 (JPO)** |
| **v.** | : |
| | : |
| **PRICEWATERHOUSECOOPERS LLP, *et al.*,** | : |
| | : |
| **Defendants.** | : |
| | : |

<u>**ORDER GRANTING PRELIMINARY APPROVAL OF THE PARTIES' CLASS
ACTION SETTLEMENT AND APPROVING NOTICE TO THE CLASS**</u>

Pending before the Court is Plaintiffs' Motion for Preliminary Approval of the Settlement and Approving Notice to the Class in the above-captioned matter (the "Litigation").  The Court, having read and considered the Parties' Settlement Agreement ("Agreement") and the Exhibits thereto, and the (i) Motion for Preliminary Approval and Supporting Memorandum of Law; (ii) Mailed Notice; (ii) Publication Notice; and (iv) Proposed Final Order and Judgment, finds that substantial grounds exist for entering this Order for Preliminary Approval.

**IT IS HEREBY ORDERED THAT:**

1.      The Court has jurisdiction over the subject matter of this Litigation, Plaintiff Timothy Laurent and Plaintiff Smeeta Sharon ("Plaintiffs"), Class Members, and Defendants pursuant to 29 U.S.C. § 1132(e).

2.      To the extent not otherwise defined herein, all capitalized words, terms and phrases shall have the same meaning as used in the Agreement.

3.      For purposes of the Settlement, and consistent with its prior certification order, *see* Dkt. 175, *Laurent v. PricewaterhouseCoopers, LLP*, 2014 WL 2893303 (S.D.N.Y. June 26, 2014), and its order granting partial summary judgment, Dkt. 276, *Laurent v. PricewaterhouseCoopers, LLP*, 06-CV-2280 (S.D.N.Y. September 30, 2021), the Court certifies the following non-opt-out Class, which is described as follows in the Agreement:

> All persons ("participants") who accrued benefits after June 30, 1994 under the Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP or the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, who held a Cash Balance Account and received (and/or whose alternate payees or whose beneficiaries or estates received) a lump sum payment under the Plan between March 23, 2000 and August 17, 2006 prior to such participants attaining age 65.

4.      The proposed Settlement is hereby preliminarily approved.  The Court finds the proposed Settlement, supported by counsel previously certified as adequate Class Counsel and achieved through arm's-length negotiations, is sufficiently fair, reasonable and adequate to receive preliminary approval and to proceed to a Fairness Hearing.  Accordingly, notice thereof should be given to the Class Members.

5.      The Court shall consider whether to give final approval to the Settlement at a hearing on _____, 202_ at _____ (the "Fairness Hearing").  At the Fairness Hearing, the Court will consider (a) whether the proposed Settlement is fair, reasonable and adequate and should be given final approval; (b) the amount of Class Representative Service Awards to be paid to Plaintiffs; (c) the amount of attorneys' fees, costs, and expenses that should be awarded to Class Counsel pursuant to Rule 23(h) of the Federal Rules of Civil Procedure; (d) the amount of Settlement Administration Costs to be paid to Class Counsel; (e) any timely and proper objections to the Settlement or objections to Class Counsel's request for attorneys' fees, costs and

FINAL 9/15/22 4pm

expenses, Class Representative Service Awards and Settlement Administration Costs; and (f) any other matters necessary or appropriate for the Court's consideration.

6.      The Court finds that the forms of Mailed Notice and Publication Notice (collectively, the "Notices"), which are attached to the Agreement as Exhibits 3 and 4, and the plan for dissemination and publication of the Notices, are the best practicable, comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure and with all requirements of due process, and are reasonably calculated under the facts of this Litigation to apprise Class Members of the proposed Settlement and of their right to object to and be heard regarding the Settlement and the request for Named Plaintiffs' Service Awards, attorneys' fees, costs and expenses for Class Counsel, and Settlement Administration Costs.

7.      The Court appoints Continental DataLogix LLC as Notice Administrator.  The Notice Administrator is directed to provide the Notices of the Settlement to Class Members in accordance with the provisions of the Agreement and this Order.

A.      A Mailed Notice in the form of Exhibit 3 to the Agreement shall be mailed within thirty (30) days of the entry of this Order to the last known addresses of all Class Members, which addresses shall be updated by the Notice Administrator as set forth in the Agreement.  The Notice Administrator shall engage in reasonable efforts as set forth in the Agreement to locate any Class Member whose Mailed Notice is returned and undeliverable and to make a second mailing to such Class Member.

B.      The Publication Notice in the form found in Exhibit 4 to the Agreement shall be published in *USA Today* once within twenty (20) days of the entry of this Order, or as soon thereafter as possible.

FINAL 9/15/22 4pm

      C.    The Notice Administrator shall file an Affidavit attesting to the satisfaction of the Notice requirements described in Paragraphs 6 and 7 of this Order on or before at least fourteen (14) days prior to the Fairness Hearing.

8.    The Defendants presented this Court with Exhibit 5 to the Agreement, a form of notice under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, as well as a list of the state officers to be served.  The Defendants shall serve the CAFA Notice on those individuals by mailing the CAFA Notice on or before ten (10) days of the entry of this Order. The Court finds that the Defendants, upon mailing of the CAFA Notice, will have complied with the notice requirements of CAFA.

9.    By no later than forty-five (45) days prior to the Fairness Hearing, Class Counsel shall file an application for Named Plaintiffs' Service Awards, Class Counsel's attorneys' fees, costs and expenses, and Settlement Administration Costs (collectively referred to here as "the fee petition"), which application may be combined with Plaintiffs' motion for final approval of the Settlement.  In the event the fee petition and final approval motion are filed simultaneously, any combined memorandum filed in support of both may be up to twice the length of a memorandum otherwise filed in accordance with the Court's Individual Rules and Practices in Civil Cases.

10.    Class Counsel shall publish copies of the Agreement, the Mailed Notice, the Publication Notice, the application for Class Counsel's attorneys' fees, costs and expenses, Class Representative Service Awards, and Settlement Administration Costs on a website, www.laurentpensionclassaction.com, to be established by Class Counsel.

11.    Any Class Member may appear at the Fairness Hearing, in person or through counsel, and be heard to the extent permitted by this Court in opposition to the fairness, reasonableness and adequacy of the Settlement, the Plan of Allocation, the application for an award of Class Counsel's fees, costs and expenses, Class Representative Service Awards and

FINAL 9/15/22 4pm

Settlement Administration Costs.  However, unless excused by this Court, no Class Member shall be heard on any of these matters unless, on or before thirty (30) days prior to the Fairness Hearing such person files a written notice of objection, which shall include:  (a) the objector's full name and address and an appearance on behalf of any counsel representing the objector; (b) a notice of intention to appear in Court if the objector desires to appear and be heard; (c) a detailed statement of each objection asserted; (d) any documents and writings which such Class Member desires the Court to consider; and (e) a list of witnesses the person may call by live testimony.  Copies of such notice, statement, and documentation, together with any copies of any other papers or briefs filed with the Court, must be simultaneously delivered to the Class Counsel and Defense Counsel, received no later than thirty (30) days prior to the Fairness Hearing.  Any Class Member who does not object in the foregoing manner shall be deemed to have waived all objections and shall be foreclosed from making any objections to the Settlement as described above.

12.    Class Counsel shall file memoranda in support of final approval of the Settlement no later than fourteen (14) days prior to the Fairness Hearing, and the Parties shall file responses to any objections, no later than seven (7) days prior to the Fairness Hearing.  Copies of all papers shall be served upon all persons or their counsel who file a valid and timely objection to the Settlement.

13.    If the Parties agree in writing to any modifications of the Agreement before Court approval of the Agreement, the Court may approve the Agreement with such modifications and without further notice to the Class other than by announcement in open court or by order on the Court's docket.  The Court may adjourn and/or reschedule the Fairness Hearing without further notice to the Class other than by announcement at the Fairness Hearing.

FINAL 9/15/22 4pm

14.     If the Court grants final approval to the Settlement, Class Members shall be bound by all the provisions of the Agreement and all determinations and judgments made pursuant to the Agreement, including the Final Order and Judgment dismissing the Litigation with prejudice. No Class Member may request exclusion from the Settlement.

15.     Pending the final determination of whether the Settlement should be approved, Plaintiffs and each Class Member shall be enjoined from commencing or prosecuting, either directly or indirectly, any action in any other court concerning or relating to any of the Released Claims described in the Agreement.  Such injunction shall remain in force until such time as the Agreement has become null and void or the Court enters a Final Order and Judgment.

16.     In the event that the Settlement does not become final in accordance with the terms of the Agreement, then this Preliminary Approval Order shall be rendered null and void and shall be vacated *nunc pro tunc* and the Litigation shall proceed, in those circumstances, as described in the Agreement.

17.     If the Settlement is finally approved by the Court, the Court shall retain exclusive jurisdiction over Plaintiffs, Class Members, Defendants and the Litigation with respect to matters arising out of, or connected with, the Settlement, and may issue such orders as necessary to implement the terms of the Agreement.

SO ORDERED this ___ day of _____, 2022.

FINAL 9/15/22 4pm

*Laurent v. PwC, et al.*, 06-cv-2280 (JPO) (S.D.N.Y.)

# EXHIBIT 2 to
# Class Action Settlement Agreement

## Proposed Final Approval Order

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TIMOTHY D. LAURENT, *et al.,*** | : |
| | : |
| **On behalf of themselves and all** | : |
| **others similarly situated,** | : |
| | : |
| **Plaintiffs,** | : **06 CV 2280 (JPO)** |
| **v.** | : |
| | : |
| **PRICEWATERHOUSECOOPERS LLP, *et al.,*** | : |
| | : |
| **Defendants.** | : |
| | : |

**[PROPOSED] FINAL ORDER AND JUDGMENT**

On _____, this Court entered an order that, *inter alia*, granted preliminary

approval of the Settlement and approved the form and manner of the Mailed Notice and

Publication Notice (the "Preliminary Approval Order") to be provided to the Class.

On _____, 202_, the Court held a Fairness Hearing (the "Fairness Hearing"), for

which the Class had been given appropriate notice.  A full and fair opportunity to be heard was

given to all persons who requested to be heard in accordance with the Preliminary Approval

Order, the Mailed Notice, and the Publication Notice.  Having considered the Parties' moving

papers, the Settlement Agreement ("Agreement"), and all other evidence concerning the Motion

for Final Approval of the Settlement, and this Court having been duly advised in the premises,

**IT IS HEREBY ORDERED AND ADJUDGED:**

1.     The Court has jurisdiction over the subject matter of this Litigation, Plaintiffs, the

Class Members, and Defendants pursuant to 29 U.S.C. § 1132(e).

2.      The Agreement, together with all of its exhibits (as filed with the Court), is

incorporated in this Judgment, and to the extent not otherwise defined herein, all capitalized

words, terms and phrases used in this Judgment shall have the same meaning as used in the

Agreement.  The terms of the Agreement, including all exhibits to the Agreement, shall be

forever binding on the Class Members.

3.      In the Preliminary Approval Order, and consistent with its prior certification, *see*

Dkt. 175, *Laurent v. PricewaterhouseCoopers, LLP*, 2014 WL 2893303 (S.D.N.Y. June 26,

2014), and its order granting partial summary judgment, Dkt. 276, *Laurent v.*

*PricewaterhouseCoopers, LLP*, 06-CV-2280 (S.D.N.Y. September 30, 2021), the Court certified

the Class as a non-opt-out class action pursuant to Fed. R. Civ. P. 23 consisting of, as described

in the Agreement:

> All persons ("participants") who accrued benefits after June 30,
> 1994 under the Retirement Benefit Accumulation Plan for
> Employees of Price Waterhouse LLP or the Retirement Benefit
> Accumulation Plan for Employees of PricewaterhouseCoopers
> LLP, who held a Cash Balance Account and received (and/or
> whose alternate payees or whose beneficiaries or estates received)
> a lump sum payment under the Plan between March 23, 2000 and
> August 17, 2006 prior to such participants attaining age 65.

4.      The Court determines that the Mailed Notice and Publication Notice (collectively,

the "Notices"), that were provided to the Class Members as required by the Preliminary

Approval Order constituted the best notice practicable under the circumstances and provided

adequate notice to all Class Members.  The Notices complied with Rule 23 of the Federal Rules

of Civil Procedure and the United States Constitution (including the Due Process clause).  The

Notices were calculated under the facts of this Litigation to apprise Class Members of the

proposed Settlement and of their right to object to and be heard regarding the Settlement and the

application for Class Counsel's attorneys' fees, costs and expenses, Named Plaintiffs' Service Awards, and Settlement Administration Costs.

5.      The form and manner of the CAFA Notice provided by the Plan pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA") fully complied with CAFA.

6.      In response to the Notices, ____ Class Members submitted timely objections to the Settlement.  ____ objection(s) was/were presented at the Fairness Hearing.  The Court has duly considered any objections to the Settlement that were filed and ____.

7.      After considering (i) whether the Agreement was a product of fraud or collusion; (ii) the complexity, expense, and likely duration of the Litigation; (iii) the stage of the proceedings and discovery conducted; (iv) the possible range of recovery and the difficulties of calculating damages; and (v) the respective opinions of the Plaintiffs, Class Counsel, Defendants and Defense Counsel, the Court finally approves the Agreement including, but not limited to, the Plan of Allocation, in all respects as fair, reasonable, adequate, and in the best interests of the Class Members pursuant to Fed. R. Civ. P. 23(e).  No Class Member may opt-out of the Settlement.

8.      The Court finds that the requested Settlement Administration Costs in the amount of $_____ is reasonable to carry out the terms of the Agreement, and the Court approves payment of these Settlement Administration Costs pursuant to the terms of the Agreement.

9.      Class Counsel, previously appointed by this Court pursuant to Fed. R. Civ. P. 23(g), has sought an award of attorney's fees, exclusive of costs and expenses, in an amount not to exceed one-third of the Total Settlement Amount.

10.     Under *Goldberger v. Integrated Resources Inc.*, 209 F.3d 43 (2d Cir. 2000), "the traditional criteria in determining a reasonable common fund fee, includ[e]: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of

the litigation; (4) the quality of representation; (5) the requested fee in relation to the [recovery]; and (6) public policy considerations." *Id*. at 50. The Court finds, consistent with "'a jealous regard to the rights of those who are interested in the fund,'" *id.* at 53, that all six *Goldberger* factors weigh in favor of a one-third award and Class Counsel's requested fee award is hereby approved.

11.     The Court finds that the requested one-third fee is fair and reasonable in light of the following facts and circumstances:

(a)     **Quality of Representation**. After lengthy, successful proceedings in the District Court including two partial summary judgments in the Class's favor, and two successful appeals in the Court of Appeals, Counsel achieved an exceptional recovery of the benefits that the Class could have reasonably expected to receive had the litigation continued and the Class prevailed through final judgment and appeal, against a formidable opponent represented by first-rate legal counsel;

(b)     **Risk**. Counsel faced very high risks of non-recovery from the inception of the case through today, including very high merits risk, very high damage recovery risk, and high class certification risk that could have easily resulted in zero recovery for the Class and Class Counsel—as is confirmed by the fact that this Court dismissed this case in its entirety with prejudice in 2017;

(c)     **Scope and Magnitude**. The case was exceedingly difficult and complex and of considerable scope and extraordinarily long duration;

(d)     **Time and Effort**. Class Counsel expended very significant time and resources in prosecuting this action, all with no guarantee of payment;

4

(e)     **Awards in Other Cases**.  The requested award compares favorably with awards in large ERISA and other class action cases where courts, including many within this Circuit, have awarded attorneys' fees that equal or exceed the one-third fee sought here, in circumstances that do not approach the efficacy and value that Class Counsel's tenacity and commitment—at great risk—created for the Class here;

(f)     **Public Policy**.  As a matter of public policy, the requested one-third fee will help ensure that counsel in future meritorious cases will not hesitate to be equally persistent and press forward as Class Counsel did here to achieve maximum recovery for their clients despite the complications, difficulties, and risk.

12.     When a percentage-of-the-fund approach is used, the Court may also use a lodestar "cross-check" based on a summary of hours to test the reasonableness of the percentage. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 123 (2d Cir. 2005).  Applying the lodestar method as a cross check, this Court finds that the fee Class Counsel seeks is reasonable. Based on Class Counsel's reported lodestar, the requested one-third award equates to an implied multiplier of ____ which is in line with implied multipliers approved in other comparable cases in this Circuit and elsewhere.

13.     The Court finds that the $_____ in requested out-of-pocket litigation expenses and costs incurred have been adequately documented, were reasonably incurred in connection with the prosecution of the action, and are reasonable for a case of this complexity, scope, and duration.  Reimbursement of the requested amount is also hereby approved.

14.     Plaintiffs Timothy Laurent and Smeeta Sharon, both of whom were deposed in this action, are awarded Class Representative Service Awards of $50,000 and $40,000 respectively to be paid by Defendants pursuant to the terms of the Agreement.  Based on the

representations and submission by Plaintiffs' counsel, the Court finds that the prospect of such awards were reasonably necessary to encourage Plaintiffs to serve, are well-deserved and are within the range of previous awards of this kind.

15.     The Released Claims, as defined in the Agreement, are released and discharged as of the Effective Date of the Settlement.  Further, Releasors are enjoined and barred from commencing or prosecuting, either directly or indirectly, any action in any other court concerning or relating to any of the Released Claims against any Released Party directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located.

16.     The Court recognizes that Defendants have denied and continue to deny Plaintiffs' and Class Members' claims.  Neither the Agreement, this Judgment, the Preliminary Approval Order, drafts of such orders, any papers related to the Settlement, nor the fact of Settlement shall be used as a finding or conclusion of the Court, or an admission of the Plan, or any other person, of any fault, omission, mistake, or liability, nor as evidence of Plaintiffs' lack of conviction in the validity or strength of their claims, and shall not be offered as evidence of any claimed liability in this or any other proceeding.  Evidence of the Agreement and the orders of this Court approving the same shall be admissible only in proceedings to enforce the Agreement or this Judgment, but not as an admission of liability in the underlying Litigation. The Final Order and Judgment is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Litigation.

17.     Except as otherwise provided in the Agreement and in this Final Order and Judgment, Plaintiffs and Class Members shall take nothing in this Litigation, and the Court

hereby dismisses the claims of Plaintiffs and Class Members against the Plan with prejudice and without costs.

18.     Without affecting the finality of this Final Order and Judgment, the Court retains jurisdiction to implement, interpret, or enforce this Final Order and Judgment, the Preliminary Approval Order, and the Agreement.

19.     In the event that the Settlement does not become final in accordance with the terms of the Agreement, then this Final Order and Judgment shall be rendered null and void and shall be vacated *nunc pro tunc* and the Litigation shall proceed, in those circumstances, as described in the Agreement.

20.     This is a final and appealable judgment.

SO ORDERED.

Dated: New York, New York
_____, 202_.

_____
J. PAUL OETKEN
United States District Judge

*Laurent v. PwC, et al.*, 06-cv-2280 (JPO) (S.D.N.Y.)

# EXHIBIT 3 to
# Class Action Settlement Agreement

## Proposed Mailed Notice

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **TIMOTHY D. LAURENT,** *et al.,* | : | |
| | : | |
| **On behalf of themselves and all** | : | |
| **others similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | **06 CV 2280 (JPO)** |
| **v.** | : | |
| | : | |
| **PRICEWATERHOUSECOOPERS LLP,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**<u>NOTICE OF CLASS ACTION SETTLEMENT AND FAIRNESS HEARING</u>**

**PLEASE READ THIS NOTICE CAREFULLY**

To:     **[Name]**

     **[Address ]**

     **Your Settlement ID Number: [ID]**

     **Your Estimated Individual Net Settlement Amount:  $\_\_\_\_**  (See Item 4 below[1])

     A settlement has been reached by parties to this lawsuit that, if approved by the Court, will award you monetary benefits.  This Court-approved notice explains the lawsuit, the proposed settlement, and your rights (including your right to object to this settlement) and your obligations if the Court grants final approval of the proposed settlement.

**PLEASE READ THIS NOTICE CAREFULLY**

WHEN IT APPROVED THIS NOTICE, THE COURT DID NOT AND DOES NOT EXPRESS ANY OPINION ABOUT THE TRUTH OR FALSITY OF THE ALLEGATIONS IN THE LAWSUIT OR THE MERITS OF THE CLAIMS OR DEFENSES ASSERTED BY EITHER SIDE.

---

[1] As explained more fully in Item 4, this amount is an estimate only, based on currently available data, of the amount you would receive under the proposed plan of allocation.  That amount is not a guaranteed amount and is provided solely for informational purposes.

The Court has certified a mandatory, non-opt-out class (the "Class") of certain persons who received lump sum pension payments from the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "Plan") between March 23, 2000 and August 17, 2006.  Under the proposed settlement, members of the Class (or in some cases, a Class member's Successor, as defined in the Settlement Agreement and described below) would receive an additional lump sum due to an alleged failure to calculate benefits in accordance with the federal pension law known as the Employee Retirement Income Security Act ("ERISA") and the terms of the Plan.

**THE CLASS IS DEFINED AS**:

All persons ("participants") who accrued benefits after June 30, 1994 under the Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP or the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, who held a Cash Balance Account and received (and/or whose alternate payees or whose beneficiaries or estates received) a lump sum payment under the Plan between March 23, 2000 and August 17, 2006 prior to such participants attaining age 65.  In addition, to be a member of the Class, you must be identified on the spreadsheet maintained by the parties for purposes of administering the settlement.

Note, however:  if the Class member whose name appears on the first page of this notice is deceased, the settlement benefit that the Class member would have received under this Settlement will instead be paid to the Class member's Successor, which is either the Class member's **spouse** (if surviving), the Class member's **estate** (if still open), or the deceased **spouse's estate** (if still open), determined in that order.  See Item 5 below.

**THE BASIC FACTS ARE:**

• This is a class action lawsuit called *Laurent v. PricewaterhouseCoopers LLP,* Case No. 06-CV-2280, filed in 2006 in the U.S. District Court for the Southern District of New York (the "Court").  Judge J. Paul Oetken is presiding over the case.

• The persons who brought this lawsuit against the Plan and its sponsor, PricewaterhouseCoopers LLP ("PwC"), are Timothy Laurent and Smeeta Sharon, who are former employees of PwC who were also participants in the Plan.  Mr. Laurent and Ms. Sharon are the Class representative and are referred to in this notice as "Plaintiffs."  The Plan and PwC are the "Defendants."  Plaintiffs' attorney, Eli Gottesdiener, is the lawyer for the Class and was appointed by the Court for that purpose ("Class Counsel").  Further information regarding contacting Class Counsel appears in Items 8 and 10 below.

• On September _, 2022, the Court granted preliminary approval to the proposed settlement between Plaintiffs and Defendants and authorized issuing this notice to you.  A hearing on the parties' request for final approval of the settlement, as well as on Class Counsel's motion for service awards to Plaintiffs, settlement administration costs, and Class Counsel attorneys' fees, costs, and expenses will take place on _____, 202_ at ____ _.m. before Judge Oetken in courtroom _, United States District Court for the Southern District of New York, 40 Foley Square, New York, NY 10007-1312.  You may appear at the hearing, but you are not required to do so.  If you object to the settlement, you must

do so in writing no later than _____.  Instructions for making written objections are included at Item 10 in this notice.

•      See Item 15 to learn how to obtain further information regarding the settlement, including a copy of the complete Settlement Agreement, Class Counsel's motion for Class Representative service awards, settlement administration costs, and Class Counsel attorneys' fees, costs and expenses, the parties' filings in the case, and all orders of the Court regarding the lawsuit and the settlement.

| **1.** | **Why Did I Receive This Notice?** |
|---|---|

The Court ordered this notice to be sent to you because you have been identified as a member of the Class defined above.  As a result, you have a right to know about the proposed settlement, know about your rights and obligations under it (if it is approved) and know about your right to object to it or aspects of it before it is submitted to the Court for its final approval. You are also entitled to know, if the Court gives final approval to the settlement, how you would receive your settlement benefit, including the options available to select the form of your settlement benefit.

| **2.** | **What Is The Class Action About?** |
|---|---|

Plaintiffs are former PwC employees who participated in the Plan during their employment and earned pension benefits under the Plan's terms and who elected a lump sum distribution of their retirement benefits before attaining age 65 (normal retirement age). Plaintiffs have alleged that the Plan failed to calculate lump sum distributions from the Plan in accordance with ERISA and the terms of the Plan.  This claim brought by Plaintiffs is sometimes called a "whipsaw" claim.  This claim alleged that the Plan projected benefits to normal retirement age using a rate ("projection rate") that understated the value of future investment experience when it was calculating accrued benefits under the Plan.

| **3.** | **Why Is There A Settlement?** |
|---|---|

Plaintiffs filed suit in the Southern District of New York in 2006 and later amended their claims.  Defendants have denied that they incorrectly calculated lump sum payments due under the Plan and disputed that any miscalculations occurred or that any additional payments were required.  The case was actively litigated in the Court, as well as in the applicable court of appeals, known as the United States Court of Appeals for the Second Circuit, from 2006 through 2022.  The Class was certified by the Court in 2014.

The Parties have engaged in substantial fact discovery and extensive motion practice. The Parties disagree on all the critical issues, including whether Defendants have any liability to Plaintiffs and the Class, whether Plaintiffs and the Class suffered any compensable damage and if so, the extent of that damage.

Both sides continue to believe in the merits of their respective positions.  However, they want to avoid the risk and expense of continued litigation and get the benefits contemplated by

this settlement, including a final resolution of all claims, known and unknown, that have been or might be asserted in this lawsuit or any other claims by the Class members and related parties concerning or arising out of the Plan.  After extensive study and a period of intensive negotiations with Defendants, Plaintiffs concluded that settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate and in the best interests of the Class members.  Defendants also believe that settling this lawsuit in accordance with the terms and conditions of the Settlement Agreement is in the best interests of Defendants and all affected Plan participants.

---

**4.     What Does The Proposed Settlement Provide?**

---

### A.  What is the Total Settlement Amount and Net Settlement Fund?

The proposed settlement would create a total settlement fund of $267 million, also known as the Total Settlement Amount.

If the Court approves the settlement, certain expenses connected to the lawsuit and settlement will be deducted from the Total Settlement Amount, leaving the Net Settlement Fund, which is the amount that will be available for distribution to the Class.  These expenses, each of which must be specifically approved by the Court, are:  (1) service awards to Plaintiffs for their role in this litigation; (2) settlement administration costs (excluding Plan administration costs, which are the responsibility of the Plan); and (3) Class Counsel's attorneys' fees, costs and expenses.  If the maximum amount requested by Plaintiffs and Class Counsel for these expenses are approved by the Court, the Net Settlement Fund is estimated to be approximately $177.3 million.

Class Counsel will, no later than 45 days prior to the final approval hearing, file a motion for approval of Plaintiffs' service awards, settlement administration costs, and Class Counsel's attorneys' fees, costs and expenses.  Plaintiffs have agreed to seek service awards not in excess of $50,000 for Mr. Laurent and $40,000 for Ms. Sharon.  Class Counsel has agreed to seek an award of attorneys' fees not in excess of one-third of the Total Settlement Amount and to seek reimbursement of out-of-pocket litigation costs and expenses incurred through the end of the lawsuit, not to exceed $500,000.  In addition, Plaintiffs and Class Counsel have agreed to seek settlement administration costs not in excess of $125,000.  The Court will not award more than these amounts and, if the Court awards less, the Net Settlement Fund available for distribution to Class members will be increased proportionally.  However, an increase in the Net Settlement Fund will not necessarily mean that your settlement payment will increase.  The effect of any such potential increase in the Net Settlement Fund on each Class member will vary depending on the Class member's particular circumstances.

As described in Item 10, the Court will consider all objections from Class members before awarding any amounts for Plaintiffs' service awards, settlement administration costs, and Class Counsel's attorneys' fees, costs and expenses.

**B.  What do Class Members Get in the Settlement?**

As indicated above, it is currently estimated that the Net Settlement Fund will be approximately $177.3 million.  There are approximately 16,000 members of the Class.  Your individual settlement payment, as well as the settlement payments to each Class member, will not be an average.  Instead, if the settlement is approved by the Court, the amount of each Class member's settlement payment from the Net Settlement Fund will be based on the relative alleged underpayments Class members experienced, which is a function of several factors including the amount of the Class member's lump sum distribution(s) and the year in which such distribution(s) were made.  For purposes of the determining Estimated Individual Net Settlement Amount, Class members distributions have been recalculated using an assumed projection rate equal to the applicable 30-year Treasury rate plus 1 percentage point to determine what participants should have been originally paid, brought forward with interest.

Remember that settlement payment amounts on the first page are *estimates* only.  They are provided for informational purposes only and shall be subject to change to reflect, without limitation, (a) correction of any errors; (b) discovery of additional data; (c) the amount actually approved by the Court for Plaintiffs' service awards, settlement administration costs and Class Counsel's attorneys' fees, costs and expenses; and (d) any changes in information available or discovered between the time of the estimate and the time of final settlement payment calculations.

**C.  What Do Class Members Give Up in the Settlement?**

Every Releasor, including you, will release, acquit and forever discharge the Plan, its sponsor PwC and related parties from legal claims that they brought or could have brought in this lawsuit or that in any way relate to or arise out of the Plan.  The "Releasors," as defined in the Settlement Agreement, include Plaintiffs, Class members, Class members' successors, and their respective successors, assigns, beneficiaries, dependents, heirs, administrators, executors, estates, personal trustees, personal agents, advisors and representatives of any kind.  The persons and entities released in the Settlement Agreement (the "Released Parties") include the Plan, PwC, the Plan Sponsor, any committee of the Plan, and their respective affiliates, parents, subsidiaries, predecessors, successors, assigns, and each of their respective current and former fiduciaries, trustees, partners, principals, employees, members, directors, officers, agents, advisors, consultants, attorneys, actuaries, recordkeepers, insurers, representatives of any kind or any persons acting or purporting to act on their behalf.

This release also means that you will not be able to challenge the amount you receive in the settlement, other than by objecting in writing as described in Item 10 below.

This is only a general summary of the release contained in the Settlement Agreement.  See Item 15 to learn how to obtain a copy of the entire Settlement Agreement (which includes the release) and other related filings with the Court.  See Items 8 and 10 for information on how to contact Class Counsel to find out more information or have your questions about the settlement answered.

| 5. | How Will I Receive My Share Of The Settlement? |
|---|---|

If the Court approves the settlement and it becomes final, each individual net settlement benefit will be paid in the form of an additional lump sum and, to the greatest extent possible, as a tax-qualified plan benefit.  Attached to your copy of this notice is a form providing you with the option of (i) receiving a check for rolling the payment over to an IRA (with no tax withholding) or (ii) receiving a check payable directly to you net of the Plan's withholding of federal income taxes (the "Election of Rollover/Direct Payment Form").

<u>If you are the Class member named on the first page of this notice</u>, you should elect, by completing Election of Rollover/Direct Payment Form and returning it to the Notice Administrator (at the address below), one of the following rollover/distribution options:

**Option 1 – Rollover**: A direct rollover of 100% of your settlement benefit to an individual retirement account ("IRA") that you designate in response to this notice. If you select this option (which is available only if your *final* settlement benefit is at least $1,000), a check will be made payable to the qualified plan or IRA that you identify on the attached election form, on your behalf, and sent directly to you. You must then forward the check to the appropriate financial institution holding the IRA.

**Option 2 – Direct Payment**: A direct payment to you of 100% of your settlement benefit. If you elect this distribution option, the funds, net of the Plan's withholding for income taxes, will be distributed and sent directly to you.

The Plan will automatically withhold applicable federal, state and local income taxes (including 20% for federal tax purposes) from the payment to each class member unless you elect the rollover option discussed above.  No opinion concerning tax consequences to individual Class members of the settlement payment each will receive is being given or will be given by the Plan, Plan counsel or Class Counsel.  In addition, no representation or warranty regarding such tax consequences are made to you by virtue of the settlement.  Each Class member's tax obligations are the sole responsibility of the Class member, and you understand that your tax consequences may vary depending upon your particular circumstances.

**ATTENTION—DEADLINE FOR MAKING ELECTION: To make a timely election, you must complete the information requested on the Election of Rollover/Direct Payment Form attached to this notice and return that page to the Notice Administrator by _____ [110 days after entry of the Preliminary Approval Order].  IF YOU DO NOT MAKE A TIMELY ELECTION, you will be deemed to have elected option two ("Direct Payment") and your settlement benefit (net of the Plan's withholding for income taxes) will be sent directly to you.**

The form should be completed and mailed to the Notice Administrator at the following address:

Laurent v. PwC Settlement Notice Administrator
P.O. Box xxxx
xxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxx

Note:  If the Class member named on the first page of this notice is deceased, and you are that Class member's surviving spouse, you should follow the same election procedure described above, indicating on the Election of Rollover/Direct Payment Form that you are the surviving spouse of the Class member and that the rollover or direct payment that you elect should be paid in your name.

If the Class member named on the first page of this notice is deceased, and you are NOT that Class member's surviving spouse, you should indicate that fact on the Election of Rollover/Direct Payment Form and return it to the Notice Administrator, who will forward the completed form to the Plan for appropriate action consistent with the settlement terms.

If you have any questions about the benefit election procedure, you can contact the Notice Administrator at:

E-mail:  xxxxxxxxxxxxxxx
Telephone:  xxxxxxxxxxxxxx

| 6. | **When Will I Receive My Share Of The Settlement?** |
|---|---|

The timing of the distribution of the net settlement fund to Class members will depend on when, if approved, the Court's approval of the settlement becomes truly final under the law. Should someone file an appeal challenging something about the settlement, a distribution of the settlement proceeds would not occur unless and until such an appeal was resolved and the settlement became final.  If the settlement is approved and becomes final, you should be paid within approximately 90 days after the settlement is final, in the form that you elected in the benefit election form described in Item 5 above, or in check mailed to your address if you do not return a completed election form.

| 7. | **Can I Be Excluded From The Settlement?** |
|---|---|

No.  If the Court approves the settlement, you will be bound by it.  By the same token, you do not need to do anything now to share in the benefits of an approved settlement.

| 8. | **Do I Have A Lawyer In The Case?** |
|---|---|

Yes.  The Court has appointed Plaintiffs' counsel Eli Gottesdiener of the Gottesdiener Law Firm, PLLC as Class Counsel.  Contact information for Mr. Gottesdiener is included in Item 10 below.  If you want to be represented by your own lawyer at this time, you are free to obtain separate counsel at your own expense.

| 9. How Will Class Counsel Be Paid? |
|---|

As explained in Item 4A above, Class Counsel will, no later than 45 days prior to the final approval hearing, file a motion for approval of Class Counsel's attorneys' fees, costs and expenses.  You have a right to review Class Counsel's motion for attorneys' fees, costs and expenses, and to object to the amounts requested in that motion.  You can obtain a copy of that motion and supporting documentation either by contacting Class Counsel directly or visiting www.laurentpensionclassaction.com, where the motion will be posted shortly after it is filed with the Court.

| 10. How Do I Tell The Court If I Don't Like The Proposed Settlement? |
|---|

You can tell the Court you object to the settlement if you do not agree with the proposed settlement, including the method to be used to determine the amount that will be allocated to you under the settlement, the amounts requested for Plaintiffs' service awards, settlement administration costs, and Class Counsel's attorneys' fees, costs and expenses.  To object, you must send the Court a notice of your objection, along with a written statement that indicates all bases for your objection, all documentation in support of your objection, legal authority, if any, supporting your objection, as well as a notice of intention to be heard if you intend to appear at the hearing described in Item 11 and, if you intend to appear, a list of witnesses you may call for live testimony.  Be sure to include your name, address, telephone number, and signature, as well as a full explanation of why you object to the settlement, and all documentation that supports your objection.  **Your written objection must be received by the Court by _____.** Your objection must be sent to the following address:

> U.S. District Court for the Southern District of New York
> Attn:  *Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280
> 40 Foley Square
> New York, NY 10007-1312

**You will not be able to challenge the amount you receive under the settlement with anyone, including the Plan administrator, except by objecting with the Court as described in this notice.**

**Your written objection must also be simultaneously mailed to these lawyers listed below.**

| CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|
| Eli Gottesdiener | Daniel J. Thomasch |
| Gottesdiener Law Firm, PLLC | Gibson, Dunn & Crutcher LLP |
| 498 7th Street | 200 Park Avenue |
| Brooklyn, NY 11215 | New York, NY 10166-0193 |
| eli@gottesdienerlaw.com | DThomasch@gibsondunn.com |

| 11. | When And Where Will The Court Decide Whether To Give Final Approval Of The Settlement? |
|---|---|

The Court will decide whether to give final approval to the settlement at a what is known as a "fairness hearing" to be held at ____ __.m. on _____, 202_ at the United States District Court for the Southern District of New York, 40 Foley Square, New York, NY 10007-1312, in courtroom __.

At the fairness hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections from Class members, the judge will consider all of them. At or after the hearing, the Court will decide whether to approve the settlement and decide the motion for Plaintiffs' service awards, settlement administration costs and Class Counsel's attorneys' fees, costs and expenses.

| 12. | Do I Have To Attend The Fairness Hearing? |
|---|---|

No, but you are invited to attend (at your own expense).

| 13. | May I Speak At The Fairness Hearing? |
|---|---|

Yes, but only if you file a written objection as described in Item 10 above.

| 14. | What Happens If I Do Nothing At All Now? |
|---|---|

If you do nothing at all now and the settlement is finally approved, you will receive your share of the Net Settlement Fund shortly after the approval becomes truly final, as described in Item 6 above.

Note, however: the parties strongly recommend that you fill out the election form attached to your copy of this notice and return it to the Notice Administrator, because if you neglect to fill out the form in a timely manner you will receive a direct payment of your settlement benefit, net of withheld taxes, when you may have wished to roll the proceeds into an IRA with no withholding for taxes.

| 15. | How Do I Get More Information? |
|---|---|

More detailed information about the lawsuit and proposed settlement, including the key pleadings and filings of the parties, the orders and rulings entered by the Court, and the Settlement Agreement, may be obtained (1) at the following website, www.laurentpensionclassaction.com; (2) by requesting them directly from Class Counsel (see Items 8 and 10 above); (3) at the Office of the Clerk, United States District Court for the Southern District of New York, 40 Foley Square, New York, NY 10007-1312, during regular business hours; or (4) by registering and paying a modest fee to the PACER service, www.pacer.psc.uscourts.gov, which permits inspection of the papers filed in the case online.

**ALL INQUIRIES CONCERNING THIS NOTICE SHALL BE DIRECTED TO CLASS COUNSEL, NOT THE COURT.**

Dated:  October __, 2022.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

[This page intentionally blank]

If your name or address listed on the left is
incorrect, please make changes here:

Claim # *XXXX*
*Firstname Lastname*
*Address1*                              _____
*Address2*                              _____
*City, State Zip*                       _____
                                        _____

## ELECTION OF ROLLOVER / DIRECT PAYMENT

This form applies to you if (A) you are a <u>Class member</u> entitled to a settlement benefit as described in the attached notice **or** (B) you are the <u>surviving spouse</u> of the Class member identified above.  If you are the surviving spouse, please provide your name (in the signature area at the bottom of page 2 of this election form) and clearly indicate that you are the surviving spouse, so that payment can be made in your name.  [If the Class member identified above is deceased and you are NOT the Class member's surviving spouse, please provide the information requested at the bottom of page 2 of this election form and return the completed form to the Notice Administrator for appropriate follow-up.]

**Check the appropriate box below to make your election after you read the attached *Special Tax Notice*.   Under either election, a check will be sent to you at the address listed above.**

**If you do not return this form, you will receive a direct payment of your settlement benefit, net of required tax withholding, at the address above.**

☐      **<u>OPTION 1 – ROLLOVER</u>  [available if your *final* settlement benefit is at least $1,000 (see Note below)]**

I elect a direct rollover of 100% of my settlement benefit, payable to the following IRA:

Name of IRA:                    _____       (ex. John Doe IRA)

Account Number:             _____       (ex. 123456789)

Trustee or Institution Holding Your Account:      _____       (ex. Fidelity Investments)

Address of Institution:                    _____

Phone Number of Institution:           _____

The rollover check will be made out to the IRA and sent to you at the address listed above.  You will need to give the check to the financial institution.  NOTE: The amount of the settlement benefit listed in the attached notice is an estimate.  Since your final settlement benefit might be larger, you may check the ROLLOVER box even if the estimate is less than $1,000.  However, if your final settlement amount is less than $1,000, you will receive a direct payment under option 2.

☐   **OPTION 2 – DIRECT PAYMENT**

I elect a direct payment to me of 100% of my settlement benefit.  If you elect this option, a check payable to you for the amount of the settlement benefit, less required tax withholding, will be sent to you at the address listed above.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To make a timely election of either Option 1 or 2, you must sign where indicated below and return this page before _____ [**110 days after entry of the Preliminary Approval Order**] to:

Laurent v. PwC Settlement Notice Administrator
P.O. Box xx
xxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxx

| | |
|---|---|
| _____ | _____ |
| Contact Phone Number | Signature |
| _____ | _____ |
| Date of Birth | Print Name |
| _____ | _____ |
| Social Security Number | Date |

NOTE:  If the Class member listed at the top of this election form is **deceased**, please indicate the following to the extent applicable:

The Class member's date of death was _____

\_\_\_\_\_ I am the Class member's surviving spouse (and have made my election above)

_____ I am NOT the Class member's surviving spouse

_____ The Class member's estate is still open, and the relevant contact information is:

Estate administrator's name:  _____
Estate administrator's address:  _____
Estate administrator's email:  _____
Estate administrator's telephone:  _____

If both the Class member and the Class member's spouse are deceased, and the Class member's estate is **not** still open, if the estate of the deceased spouse of the Class member is still open, please indicate the following:

Spouse's estate administrator's name:  _____

Spouse's estate administrator's address:  _____

Spouse's estate administrator's email:  _____

Spouse's estate administrator's telephone:  _____


If you are unsure and/or have any questions, you should contact the Notice Administrator at:

Email:  xxxxxxxxxxxxx

Telephone:  xxxxxxxxxxxx

13

# SPECIAL TAX NOTICE
## REGARDING SETTLEMENT PAYMENTS RELATED TO THE RETIREMENT BENEFIT ACCUMULATION PLAN FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLC

**IMPORTANT:  This notice only applies to individuals entitled to a lump sum payment of their settlement benefit as noted on the attached Election of Rollover/Direct Payment form.**

## YOUR ROLLOVER OPTIONS

You are receiving this notice because the settlement payment that you may be entitled to receive from the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "Plan") is eligible to be rolled over to an IRA or an employer plan. This notice is intended to help you decide whether to do such a rollover.

## GENERAL INFORMATION ABOUT ROLLOVERS

### How can a rollover affect my taxes?

You will be taxed on a payment from the Plan if you do not roll it over. If you are under age 59 1/2 and do not do a rollover, you will also have to pay a 10% additional income tax on early distributions (unless an exception applies). However, if you do a rollover, you will not have to pay tax until you receive payments later and the 10% additional income tax will not apply if those payments are made after you are age 59 1/2 (or if an exception applies).

### Where may I roll over the payment?

You may roll over the payment to either an IRA (an individual retirement account or individual retirement annuity) or an employer plan (a tax-qualified plan, section 403(b) plan, or governmental section 457(b) plan) that will accept the rollover. The rules of the IRA or employer plan that holds the rollover will determine your investment options, fees, and rights to payment from the IRA or employer plan (for example, no spousal consent rules apply to IRAs and

IRAs may not provide loans). Further, the amount rolled over will become subject to the tax rules that apply to the IRA or employer plan.

### How do I do a rollover?

There are two ways to do a rollover. You can do either a direct rollover or a 60-day rollover.

*If you do a direct rollover*, the Plan will make the check payable directly to your IRA and will send it to you.  You will then need to provide the check to the IRA. You should contact the IRA sponsor or the administrator for information on how to do a direct rollover.

*If you do not do a direct rollover*, you may still do a rollover by making a deposit into an IRA or eligible employer plan that will accept it. You will have 60 days after you receive the payment to make the deposit. If you do not do a direct rollover, the Plan is required to withhold 20% of the payment for federal income taxes and may be required to withhold for state and local taxes as well. This means that, in order to roll over the entire payment in a 60-day rollover, you must use other funds to make up for the taxes withheld. If you do not roll over the entire amount of the payment, the portion not rolled over will be taxed and will be subject to the 10% additional income tax on early distributions if you are under age 59 1/2 (unless an exception applies).

### If I don't do a rollover, will I have to pay the 10% additional income tax on early distributions?

If you are under age 59 1/2, you will have to pay the 10% additional income tax on early distributions for any payment from the Plan (including amounts withheld for income tax) that you do not roll over, unless one of the exceptions listed below applies. This tax is

in addition to the regular income tax on the payment not rolled over.

The 10% additional income tax does not apply to the following payments from the Plan:

- Payments made after you separate from service if you will be at least age 55 in the year of the separation
- Payments after your death
- Payments made under a qualified domestic relations order (QDRO)
- Payments up to the amount of your deductible medical expenses

**If I do a rollover to an IRA, will the 10% additional income tax apply to early distributions from the IRA?**

If you receive a payment from an IRA when you are under age 59 1/2, you will have to pay the 10% additional income tax on early distributions from the IRA, unless an exception applies. In general, the exceptions to the 10% additional income tax for early distributions from an IRA are the same as the exceptions listed above for early distributions from a plan. For more information, see IRS Publication 590, Individual Retirement Arrangements (IRAs).

**Will I owe State income taxes?**

This notice does not describe any State or local income tax rules (including withholding rules).

## SPECIAL RULES AND OPTIONS

**If you miss the 60-day rollover deadline**

Generally, the 60-day rollover deadline cannot be extended. However, the IRS has the limited authority to waive the deadline under certain extraordinary circumstances, such as when external events prevented you from completing the rollover by the 60-day rollover deadline. To apply for a waiver, you must file a private letter ruling request with the IRS. Private letter ruling requests require the payment of a nonrefundable user fee. For

more information, see IRS Publication 590, Individual Retirement Arrangements (IRAs).

**If you were born on or before January 1, 1936**

If you were born on or before January 1, 1936 and receive a lump sum distribution that you do not roll over, special rules for calculating the amount of the tax on the payment might apply to you. For more information, see IRS Publication 575, Pension and Annuity Income.

**If you roll over your payment to a Roth IRA**

If you roll over the payment to a Roth IRA, a special rule applies under which the amount of the payment rolled over will be taxed. However, the 10% additional income tax on early distributions will not apply (unless you take the amount rolled over out of the Roth IRA within 5 years, counting from January 1 of the year of the rollover).

If you roll over the payment to a Roth IRA, later payments from the Roth IRA that are qualified distributions will not be taxed (including earnings after the rollover). A qualified distribution from a Roth IRA is a payment made after you are age 59 1/2 (or after your death or disability, or as a qualified first-time homebuyer distribution of up to $10,000) and after you have had a Roth IRA for at least 5 years. In applying this 5-year rule, you count from January 1 of the year for which your first contribution was made to a Roth IRA. Payments from the Roth IRA that are not qualified distributions will be taxed to the extent of earnings after the rollover, including the 10% additional income tax on early distributions (unless an exception applies). You do not have to take required minimum distributions from a Roth IRA during your lifetime. For more information, see IRS Publication 590, Individual Retirement Arrangements (IRAs).

You cannot roll over a payment from the Plan to a designated Roth account in an employer plan.

**If you are not a plan participant**

***Payments after death of the participant.*** If you receive a distribution after the participant's death that you do not roll over, the distribution will generally be taxed in the same manner described elsewhere in this notice. However, the 10% additional income tax on early distributions does not apply, and the special rule described under the section "If you were born on or before January 1, 1936" applies only if the participant was born on or before January 1, 1936.

- **If you are a surviving spouse.** If you receive a payment from the Plan as the surviving spouse of a deceased participant, you have the same rollover options that the participant would have had, as described elsewhere in this notice. In addition, if you choose to do a rollover to an IRA, you may treat the IRA as your own or as an inherited IRA.

    An IRA you treat as your own is treated like any other IRA of yours, so that payments made to you before you are age 59½ will be subject to the 10% additional income tax on early distributions (unless an exception applies) and required minimum distributions from your IRA do not have to start until after you are age 70½.

    If you treat the IRA as an inherited IRA, payments from the IRA will not be subject to the 10% additional income tax on early distributions. However, if the participant had started taking required minimum distributions, you will have to receive required minimum distributions from the inherited IRA. If the participant had not started taking required minimum distributions from the Plan, you will not have to start receiving required minimum distributions from the inherited IRA until the year the participant would have been age 70½.

- **If you are a surviving beneficiary other than a spouse.** If you receive a payment from the Plan because of the participant's death and you are a designated beneficiary other than a surviving spouse, the only rollover option you have is to do a direct rollover to an inherited IRA. Payments from the inherited IRA will not be subject to the 10% additional income tax on early distributions. You will have to receive required minimum distributions from the inherited IRA.

**If you are a nonresident alien**

If you are a nonresident alien and you do not do a direct rollover to a U.S. IRA or U.S. employer plan, instead of withholding 20%, the Plan is generally required to withhold 30% of the payment for federal income taxes. If the amount withheld exceeds the amount of tax you owe (as may happen if you do a 60-day rollover), you may request an income tax refund by filing Form 1040NR and attaching your Form 1042-S. See Form W-8BEN for claiming that you are entitled to a reduced rate of withholding under an income tax treaty. For more information, see also IRS Publication 519, U.S. Tax Guide for Aliens, and IRS Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.

## FOR MORE INFORMATION

You may wish to consult with the Plan administrator or payor, or a professional tax advisor, before taking a payment from the Plan. Also, you can find more detailed information on the federal tax treatment of payments from employer plans in: IRS Publication 575, Pension and Annuity Income; and IRS Publication 590, Individual Retirement Arrangements (IRAs); These publications are available from a local IRS office, on the web at www.irs.gov, or by calling 1-800-TAX-FORM.

*Laurent v. PwC, et al.*, 06-cv-2280 (JPO) (S.D.N.Y.)

# EXHIBIT 4 to
# Class Action Settlement Agreement

## Proposed Publication Notice

**Notice of Proposed Class Action Settlement**
**This Legal Notice May Affect Your Rights**
**Please Read It Carefully**

A settlement has been proposed in a class action lawsuit regarding the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "Plan") sponsored by PricewaterhouseCoopers LLP ("PwC") that is now pending in the United States District Court of the Southern District of New York (the "Court"). The settlement has been approved preliminarily by the Court.

**Who is Included in the Class?**

The Class is defined as: All persons ("participants") who accrued benefits after June 30, 1994 under the Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP or the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, who held a Cash Balance Account and received (and/or whose alternate payees or whose beneficiaries or estates received) a lump sum payment under the Plan between March 23, 2000 and August 17, 2006, prior to such participants attaining age 65.

In addition, to be a member of the Class, you must be identified on the spreadsheet maintained by the parties for purposes of administering the settlement.

**What is the Case About?**
The lawsuit, brought by former employees who participated in the Plan and elected lump sum distributions of their retirement benefits, alleges that the Plan failed to calculate such benefits in accordance with the Employee Retirement Income Security Act of 1974. The lawsuit alleges that the Plan projected certain benefits using a calculation that understated the value of future investment experience to age 65. The Plan denied that it was required to pay additional benefits. After more than 16 years of litigation, the parties have decided to settle the case.

**What Does the Proposed Settlement Provide?**
The settlement, which must be approved by the Court, creates a total settlement fund of $267 million, from which net settlement proceeds will be distributed to the Class members (or in some cases, a Class's member's Successor) based upon the relative alleged underpayments Class members experienced using an assumed projection rate equal to the applicable 30-year Treasury rate plus 1 percentage point to determine what participants should have been originally paid, brought forward with interest. Individual Class member notices to be provided by mail will identify the estimated net settlement amount for individual Class members.

**What Do You Need To Do?**
To participate in the settlement, you need do nothing if you received a Notice of Class Action Settlement and Fairness Hearing in the mail. If you did not receive such a Notice and believe you are included in the Class, you should inform Class Counsel and Defense Counsel who are listed below. Class members may not opt out of the settlement. If the Court approves the settlement, Class members will have the option of receiving their additional benefit as a direct payment or as a rollover.

**Objections to the Proposed Settlement**

A hearing will be held before the Honorable J. Paul Oetken at the United States District Court for the Southern District of New York, 40 Foley Square, New York, NY 10007-1312, in Courtroom __, on _____ __, 202_ at ___ _.m.  This hearing is known as the "Fairness Hearing."  Class members may appear at the Fairness Hearing, in person or by counsel of his or her own choice at his or her own expense, and oppose the fairness, reasonableness, and adequacy of the settlement, its plan of allocation, the application for an award of attorneys' fees, costs, and expenses to Class Counsel, or the incentive awards to be paid to the named plaintiffs for their role in bringing the lawsuit.  To oppose, the Class member must, on or before _____ __, 2022, file with the Clerk of the Court a notice of intention to appear and a written statement that indicates all bases for objection, all documentation in support of the objection, and legal authority, if any, supporting the objection, and a list of witnesses in support of the objection.  The Class member must provide copies to Class Counsel and Defense Counsel, received no later than _____ __, 2022, who are:

Eli Gottesdiener (Class Counsel)
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY  11215
(718) 788-1500
eli@gottesdienerlaw.com

Daniel J. Thomasch (Defense Counsel)
Amer S. Ahmed
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-3800
DThomasch@gibsondunn.com
AAhmed@gibsondunn.com

**How Do You Obtain More Information?**

More information may be obtained by inspecting the papers concerning this lawsuit at the Office of the Clerk, United States District Court for the Southern District of New York, during regular business hours; or by registering and paying a modest fee to the PACER service, www.pacer.psc.uscourts.gov; or by contacting Class Counsel, noted above, or by visiting www.laurentpensionclassaction.com.

*Laurent v. PwC, et al.*, 06-cv-2280 (JPO) (S.D.N.Y.)

# EXHIBIT 5 to
# Class Action Settlement Agreement

# CAFA Notice

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Daniel J. Thomasch
Direct: +1 212.351.3800
Fax: +1 212.351.6200
DThomasch@gibsondunn.com

September __, 2022

<u>VIA CERTIFIED MAIL</u>

The United States Attorney General
& All State Officials Identified
on the Attached Service List

Re:    *Notice of Proposed Class Action Settlement Under 28 U.S.C. § 1715:*
       *Laurent v. PricewaterhouseCoopers LLP, No. 06-cv-2280-JPO (S.D.N.Y.)*

Dear Sir or Madam:

As counsel for and on behalf of PricewaterhouseCoopers LLP ("PwC") and the Retirement
Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "Plan" and
with PwC "Defendants"), I write to provide notice under the Class Action Fairness Act of 2005
("CAFA"), 28 U.S.C. § 1711 *et seq.*, of a proposed class action settlement between PwC and
Plaintiffs (collectively, the "Parties") in the above referenced matter pending in the United
States District Court for the Southern District of New York before the Honorable J. Paul
Oetken.  A settlement agreement that, if approved, would resolve all pending claims in *Laurent
v. PricewaterhouseCoopers LLP*, No. 06-cv-2280-JPO (S.D.N.Y.) ("*Laurent*") (the
"Settlement Agreement") was filed on September __, 2022.

The *Laurent* class action lawsuit claims that Defendants violated provisions of the Employee
Retirement Income Security Act of 1974 ("ERISA") by projecting benefits to normal
retirement age using a formula that understated the value of future investment experience.
Defendants deny any wrongdoing or liability whatsoever, but have decided to settle this action
solely in order to eliminate the burden, risk and expense of further litigation.

The proposed settlement will resolve the claims of all member of the Class as defined below:

> All persons ("participants") who accrued benefits after June 30, 1994
> under the Retirement Benefit Accumulation Plan for Employees of
> Price Waterhouse LLP or the Retirement Benefit Accumulation Plan for
> Employees of PricewaterhouseCoopers LLP, who held a Cash Balance
> Account and received (and/or whose alternate payees or whose
> beneficiaries or estates received) a lump sum payment under the Plan
> between March 23, 2000 and August 17, 2006 prior to such participants
> attaining age 65.

**GIBSON DUNN**

Page 2

To eliminate doubt, the Class is limited to those participants, beneficiaries, alternate payees and estates listed on Attachment A to the Proposed Settlement Agreement.

Pursuant to 28 U.S.C. § 1715(b), enclosed please find a CD containing the following materials (in Adobe Acrobat (.pdf) format) relating to the proposed settlement:

1.      28 U.S.C. § 1715(b)(1):  A copy of the complaint and any materials filed with the complaint and any amended complaints.

Copies of Plaintiffs' original complaint and amended complaints, including the operative Second Amended Complaint, are provided on the enclosed CD as Exhibits 1 to 3.

2.      28 U.S.C. § 1715(b)(2):  Notice of any scheduled judicial hearing in the class action.

Plaintiffs' Motion for Preliminary Approval, provided on the enclosed CD as Exhibit 4, was filed with the Court on September __, 2022.  As of today's date, no hearing on this motion has yet been scheduled.  [Or, if scheduled, update to include this information.]

3.      28 U.S.C. § 1715(b)(3):  Any proposed or final notification to class members of their members' rights to request exclusion from the class action.

The Proposed Mailed Notice and Proposed Publication Notice to the settlement class are provided on the enclosed CD as Exhibit 5 and Exhibit 6.  As the notices explain, there is no right to request exclusion from the settlement.

4.      28 U.S.C. § 1715(b)(4):  Any proposed or final class action settlement.

A copy of the Proposed Class Action Settlement Agreement is provided on the enclosed CD as Exhibit 7.  The Proposed Class Action Settlement included an attachment referred to as Attachment A, which will be filed with the Court under seal to protect class members' privacy and is not provided herewith.

5.      28 U.S.C. § 1715(b)(5):  Any settlement or other agreement contemporaneously made between class counsel and counsel for defendants.

All agreements between Class Counsel and Defendants' counsel are reflected in the Settlement Agreement.

6.      28 U.S.C. § 1715(b)(6):  Any final judgment or notice of dismissal.

There has been no final judgment or notice of dismissal.  Accordingly, no such document is currently available.

7.      28 U.S.C. § 1715(b)(7):  (A) If feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the

# GIBSON DUNN

Page 3

<u>entire settlement to that State's appropriate State official; or (B) if the provision of the information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement.</u>

To the best of Defendants' current knowledge and belief there are approximately 16,000 Class Members.  A list of the names of all Class Members currently known to Defendants is provided on the enclosed CD as Exhibit 8.  Defendants do not currently have access to information sufficient to identify the Class members who reside in each state, or to make a reasonable estimate of the number of class members residing in each state.  *See* 28 U.S.C. § 1715(b)(7)(A)-(B).  This is a class action involving individuals who left the Plan between 16 and 22 years ago.  During the Class Period of March 23, 2000 and August 17, 2006, PwC had offices in approximately 36 different states across the country, with its largest presence in New York.  Given the age of this case, Defendants are unable to determine where class members currently reside.  Much of this information may become available to the Notice Administrator if the Court approves the settlement.

8.    <u>28 U.S.C. § 1715(b)(8):  Any written judicial opinion relating to the materials described in 28 U.S.C. § 1715(b) subparagraphs (3) through (6).</u>

There are no such materials.

Any materials relating to the proposed settlement that are filed after the service of this notice can be found by visiting the "CM/ECF" online docket for the above captioned case at https://ecf.nysd.uscourts.gov/cgi-bin/ShowIndex.pl.   These materials will also be made available at the settlement website, which Class Counsel is in the process of creating.  Settlement Class members will be directed to the settlement website to obtain updated information regarding the settlement.

Please do not hesitate to contact me with any questions you may have regarding these materials.

Sincerely,


Daniel J. Thomasch
On behalf of PricewaterhouseCoopers LLP

Attachment and Enclosure

cc:  Attached Service List