# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **TIMOTHY D. LAURENT**, *et al.*, | : |
| | : |
| **On behalf of themselves and all** | : |
| **others similarly situated,** | : |
| | : |
| **Plaintiffs,** | :   **06 CV 2280 (JPO)** |
| **v.** | : |
| | : |
| **PRICEWATERHOUSECOOPERS LLP**, *et al.*, | : |
| | : |
| **Defendants.** | : |
| | : |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Eli Gottesdiener
Albert Huang
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
Telephone: (718) 788-1500
Facsimile: (718) 788-1650
eli@gottesdienerlaw.com
albert@gottesdienerlaw.com

*Counsel for Plaintiffs and the Class*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND................................................................................................5

I.     Background, Case History, Settlement Negotiations.................................................5

II.    The Proposed Settlement ......................................................................................11

       A.     The Total Settlement Amount....................................................................11

       B.     The Net Settlement Benefit........................................................................11

             1.     Attorneys' Fees and Expenses ......................................................12

             2.     Class Representative Service Awards............................................13

       C.     The Plan of Allocation and Individual Settlement Benefits .....................13

III.   Proposed Notice to the Class – Releases of Liability from the Class.................14

DISCUSSION ...................................................................................................................15

I.     The Proposed Settlement Meets the Standard for Preliminary Approval..........15

       A.     Plaintiffs and Class Counsel Have Adequately Represented the Class.................17

       B.     The Proposed Settlement Is the Result of Good-Faith,
             Arm's-Length Negotiations .................................................................17

       C.     The Relief Provided by the Settlement Is Adequate When Weighed
             Against the Risks of Litigation ...........................................................18

       D.     The Proposed Method for Distributing Relief Is Effective....................19

       E.     Class Counsel's Fee Request Is Fair and Reasonable............................19

       F.     All Class Members Are Treated Equitably Relative to Each Other .....................21

       G.     The *Grinnell* Factors Are Also Met ..................................................21

             1.     The Complexity, Expense, and Likely Duration of the
                  Litigation Supports Approval of the Settlement ................... 21-22

             2.     The Reaction of the Settlement Class to the Settlement ...........................22

              3.     The Stage of the Proceedings.......................................................22

4.     The Risk of Establishing Liability and Damages ......................................22

5.     The Risks of Maintaining the Class Action Through Trial........................23

6.     The Ability of Defendants to Withstand a Greater Judgment....................23

7.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................................23

II.    The Proposed Notice Satisfies Rule 23 ....................................................................23

    A.    The Proposed Notice Satisfies Rule 23 ................................................................24

    B.    The Method of Disseminating Notice to Class Members Satisfies Rule 23 ..........24

CONCLUSION ......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)..................................................................15

*City of Providence v. Aeropostale, Inc.,*
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd,* 607 F. App'x 73 (2d Cir. 2015)..................................................18

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001)....................................................................16

*Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)................................................... 16, 21-23

*Fry v. Exelon,*
571 F.3d 644 (7th Cir. 2009) ..................................................................7

*Goldberger v. Integrated Resources Inc.,*
209 F.3d 43 (2d Cir. 2000)............................................................ 19-21

*In re AOL Time Warner, Inc. Secs. & ERISA Litig.*,
2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) .......................................21

*In re Bear Stearns Companies, Inc. Sec., Deriv, and ERISA Lit.*,
909 F.Supp.2d 259 (S.D.N.Y. 2012)....................................................23

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
726 F.2d 1075 (6th Cir. 1984) .............................................................24

*In re Initial Pub. Offering Sec. Litig.,*
243 F.R.D. 79, 87 (S.D.N.Y. 2007) .....................................................17

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467, 510 (S.D.N.Y. 2009)..........................................21

*In re Namenda Direct Purchaser Antitrust Litigation*,
462 F.Supp.3d 307 (S.D.N.Y. 2020).....................................................23

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088, 1099 (5th Cir. 1977) ....................................................24

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.),
*aff'd*, 117 F.3d 721 (2d Cir. 1997) ................................................ 17-18

*In re Prudential Sec. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................22, 25

*Laurent v. PricewaterhouseCoopers LLP*,
448 F. Supp. 2d 537 (S.D.N.Y. 2006)................................................... 6-7

*Laurent v. PricewaterhouseCoopers LLP*,
2010 WL 5396089 (S.D.N.Y. Dec 22, 2010) ............................................7

*Laurent v. PricewaterhouseCoopers LLP*,
2011 WL 3794921 (S.D.N.Y. Aug. 15, 2011) ..........................................7

*Laurent v. PricewaterhouseCoopers LLP*,
963 F. Supp. 2d 310 (S.D.N.Y. 2013). ....................................................8

*Laurent v. PricewaterhouseCoopers LLP,*
2014 WL 251986 (S.D.N.Y. Jan. 22, 2014) ..............................................2

*Laurent v. PricewaterhouseCoopers, LLP*,
2014 WL 2893303 (S.D.N.Y. June 26, 2014) ...........................................8

*Laurent v. PricewaterhouseCoopers LLP*,
794 F.3d 272 (2d Cir. 2015),
*certiorari denied*, 577 U.S. 1119 (Jan. 25, 2016) ................................6, 8

*Laurent v. PricewaterhouseCoopers LLP*,
2017 WL 3142067 (S.D.N.Y. July 24, 2017) ................................... 2-3, 9

*Laurent v. PricewaterhouseCoopers LLP*,
945 F.3d 739 (2d Cir. 2019)......................................................................9

*Laurent v. PricewaterhouseCoopers LLP*,
565 F.Supp.3d 543 (S.D.N.Y. 2021)...............................................3, 10

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972)...................................................................18

*Osberg v. Foot Locker, Inc.*,
No. 07 Civ. 1358 (KBF) (S.D.N.Y. June 8, 2018)................................20

*Pender v. Bank of America Corp.,*
2010 WL 3370058 (W.D.N.C. Aug. 25, 2010).......................................7

*PricewaterhouseCoopers LLP v Laurent*,
141 S.Ct. 617 (Oct. 19, 2020) .................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96 (2d Cir. 2005).......................................................16, 17, 24

iv

## STATUTES AND RULES

ERISA § 3(24) .................................................................................................6

ERISA §§ 502(a)(1)(B) ......................................................................................9

ERISA §§ 502(a)(3) .......................................................................................9, 22

Fed. R. Civ. P. Rule 12(c) ...............................................................................8

Fed. R. Civ. P. 23(b)(2) ...................................................................................9

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................24

Fed. R. Civ. P. 23(e) ........................................................................................4

Fed. R. Civ. P. 23(e)(1) ..................................................................................24

Fed. R. Civ. P. 23(e)(1)(B) .............................................................................15

Fed. R. Civ. P. 23(e)(2) ........................................................................... 10, 15-16

Fed. R. Civ. P. 23(e)(2)(C)(i) .....................................................................22, 23

Fed. R. Evid. 408(b) .......................................................................................10


## OTHER AUTHORITIES

Brief for the U.S. as Amicus Curiae,
*Laurent v. PricewaterhouseCoopers LLP,*
2021 WL 2181532 (May 25, 2021) .............................................................3, 9

Final Order and Consent Judgment,
*Haddock v. Nationwide Fin. Serv., Inc.,*
01-cv-1552, Dkt. 601 (D. Conn. Apr. 9, 2015) .........................................21

Order Approving Settlements,
*In re U.S. Foodservice, Inc. Pricing Litig.,*
07-md-1894, Dkt. 521 (D. Conn. Dec. 9, 2014) ........................................21

**INTRODUCTION**

In August 2022, after more than 16 years of hard-fought litigation, the parties to this ERISA "whipsaw" pension benefits case reached an agreement in principle to settle it. *See* Dkt. 289. Now, after additional negotiations over the concrete terms of the agreement and working with their actuaries and experts to ensure the completeness and accuracy of the participant benefit calculations data needed to implement it, the agreement has been fully memorialized and is ready for the Court to consider on this motion for preliminary approval. *See* Mtn. Attachment 1, Class Settlement Agreement ("Agreement").

Under the Agreement, Defendants PricewaterhouseCoopers LLP ("PwC") and the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "Plan") (collectively, "Defendants") will pay a total of **$267 million** (the "Total Settlement Amount") to settle the claims brought by Plaintiffs Timothy Laurent and Smeeta Sharon ("Plaintiffs") alleging that during the March 2000 to August 17, 2006 Class period, the Plan undervalued and underpaid the pre-age 65 lump sum pension benefits it owed some 16,000 former Plan participants.

Plaintiffs submit that the settlement represents an outstanding recovery for Class members that should be preliminarily approved as likely to receive final approval by this Court under the governing standards for evaluating class action settlements in this Circuit. The Agreement provides very substantial benefits to Class members while at the same time eliminating the risk that they would end up with no recovery whatsoever or a recovery smaller than the settlement amount. Indeed, if the proposed settlement is approved, the $267 million Total Settlement Amount would represent the largest recovery ever achieved in an ERISA whipsaw case, whether through trial or settlement. *See* Declaration of Eli Gottesdiener ("Gottesdiener Decl.") ¶ 6.

# INTRODUCTION

In August 2022, after more than 16 years of hard-fought litigation, the parties to this ERISA "whipsaw" pension benefits case reached an agreement in principle to settle it. *See* Dkt. 289. Now, after additional negotiations over the concrete terms of the agreement and working with their actuaries and experts to ensure the completeness and accuracy of the participant benefit calculations data needed to implement it, the agreement has been fully memorialized and is ready for the Court to consider on this motion for preliminary approval. *See* Mtn. Attachment 1, Class Settlement Agreement ("Agreement").

Under the Agreement, Defendants PricewaterhouseCoopers LLP ("PwC") and the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "Plan") (collectively, "Defendants") will pay a total of **$267 million** (the "Total Settlement Amount") to settle the claims brought by Plaintiffs Timothy Laurent and Smeeta Sharon ("Plaintiffs") alleging that during the March 2000 to August 17, 2006 Class period, the Plan undervalued and underpaid the pre-age 65 lump sum pension benefits it owed some 16,000 former Plan participants.

Plaintiffs submit that the settlement represents an outstanding recovery for Class members that should be preliminarily approved as likely to receive final approval by this Court under the governing standards for evaluating class action settlements in this Circuit. The Agreement provides very substantial benefits to Class members while at the same time eliminating the risk that they would end up with no recovery whatsoever or a recovery smaller than the settlement amount. Indeed, if the proposed settlement is approved, the $267 million Total Settlement Amount would represent the largest recovery ever achieved in an ERISA whipsaw case, whether through trial or settlement. *See* Declaration of Eli Gottesdiener ("Gottesdiener Decl.") ¶ 6.

Perhaps even more impressive, the settlement amount represents a recovery of virtually 100% of the whipsaw benefits (inclusive of interest from the date of the original alleged underpayments until today) that both Plaintiffs' enrolled ERISA actuary and the Plan have independently estimated would be owed by the Plan were Plaintiffs were to prevail on their claims through final judgment and appeal.  *See* Declaration of Lawrence Deutsch, E.A. ("Deutsch Decl.") ¶¶ 2-4; 2020 RBAP Annual Return/Report of Employee Benefit Plan, filed April 19, 2022 (Gottesdiener Decl., Ex. A) at pdf p.41 (Financial Statements p.16:  Plan administrator reporting in April 2022 tax return that if Plaintiffs were to prevail in *Laurent*, "our present estimation is that [] damages would most likely fall within a range of $250 million - $300 million").

Full recovery is all the more exceptional in a case where, from the outset, Class members faced numerous litigation risks on the availability of remedial relief, liability, damages, and class certification that could have easily resulted in zero recovery for the Class—as confirmed by the fact that in 2014 this Court agreed with PwC that this "case presents exceptional circumstances warranting interlocutory review," Dkt. 173, *Laurent v. PricewaterhouseCoopers LLP,* 2014 WL 251986 at *1 (S.D.N.Y. Jan. 22, 2014), on one defense theory—the "five years of service" Normal Retirement Age defense, that, had it succeeded (as it had in the Fourth and Seventh Circuits), would have precluded liability; and then in 2017, on an entirely different defense theory that separately would have precluded liability—the "no remedy" defense—dismissed the case in its entirely with prejudice.  *See* Dkt. 236, *Laurent v. PricewaterhouseCoopers LLP*, 2017 WL 3142067, at *2 (S.D.N.Y. July 24, 2017) ("Plaintiffs do not have an avenue for relief under ERISA … [because] nothing in ERISA enables this Court to issue a declaration that invalidates

the Plan's projection rate and replaces it with a new projection rate that complies with ERISA's valuation requirements").

Even after Plaintiffs overcame these and other significant hurdles, and last year won partial summary judgments that the Plan's normal retirement age is age 65 and its 30-year Treasury projection rate unlawful, *see* Dkt. 276, *Laurent v. PricewaterhouseCoopers LLP*, 565 F.Supp.3d 543 (S.D.N.Y. 2021), PwC correctly pointed out that Plaintiffs continued to face a high bar to win *any* damages, since Plaintiffs had yet to prove "that if the Plan had used a reformed plan projection rate that satisfies the minimum legal standards of ERISA to calculate projected-balance amounts at a reformed Normal Retirement Age, then that calculated balance, after discounting back to present value, would have resulted in each class member receiving *an amount greater* than the lump sum distribution actually received." Dkt. 279 at 4 (PwC's emphasis). As the Solicitor General told the Supreme Court last year: despite the Second Circuit's revival of the case in 2019, "[n]o remedy has yet been—and may never be—awarded in this case." *See* Br. for the U.S. as Amicus Curiae, 2021 WL 2181532, at *21 (May 25, 2021).

Even if the Court were to find after trial that the Class is entitled to *some* relief, the Court very well could have agreed with Defendants' contention that the projection rate to perform the Plan's whipsaw calculation should be set at a level that would have not appreciably increased Class members' benefits. By contrast, under the proposed Agreement—even after deducting the maximum possible award of attorneys' fees under the Agreement, *see* Agreement § 1I (one-third of the Total Settlement Amount ($89 million); the maximum estimated expense reimbursement ($500,000), *id.* § 1I; the maximum estimated costs of settlement administration and notice to the Class ($90,000), *id.* § 1GGG; and the maximum possible class representative service awards, *id.* § 1M ($50,000 for Mr. Laurent and $40,000 for Ms. Sharon)—the approximately 16,000

members of the Class would receive an additional average payment from the Plan of almost **$11,000**, on the same tax-favored basis as their original payments. Deutsch Decl. ¶ 5.

In sum, the proposed $267 million settlement is an outstanding result. Now, instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to certain recovery for all members of the Class of essentially everything they could have reasonably expected that continued litigation could have yielded them, assuming everything broke their way through final judgment and appeal.

For now, however, the Court is not being asked to finally approve the proposed settlement, but only to find that it is likely to be approved as fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e). This will permit notice of the terms of the proposed settlement to be sent to the Class. The Court should also approve the proposed Mailed Notice (Agreement Ex. 3) and the proposed Publication Notice (Agreement Ex. 4) because, in terms of both their content and their manner of dissemination, they are the best practicable under the circumstances and comply with the requirements of Rule 23 and all requirements of due process. PwC has authorized Plaintiffs to represent that it concurs that preliminary approval of the Settlement Agreement should be granted and that notice to the Class should issue. *See* Gottesdiener Decl. ¶ 2.

For the Court's convenience, below is the parties' agreed proposed schedule of events, assuming preliminary approval is granted, for establishing deadlines for the interim steps and a date for a final approval (or "fairness") hearing. To provide sufficient time for notice and objections and because of CAFA requirements, the parties request that the fairness hearing be scheduled 90 days after entry of the proposed Preliminary Approval Order, *see* Agreement Ex. 1, or at the Court's convenience thereafter. The schedule is for illustrative purposes only, assumes

that preliminary approval is granted on Monday, September 26, 2022, and is of course subject to the Court's preferences and availability:

| Event | Days following Preliminary Approval or Preceding Final Approval Hearing | Monday, September 26, 2022 Assumed Preliminary Approval Entry Date |
|---|---|---|
| Plaintiffs send Class Members List to Notice Administrator | Within 5 business days of Entry of Preliminary Approval Order | Tuesday, September 27, 2022 |
| Defendants send CAFA Notices | Within 10 days of filing Motion for Preliminary Approval | Thursday, September 29, 2022 |
| Publication Notice Published | To be published no later than 20 days after Entry of Preliminary Approval Order | Tuesday, October 11, 2022 |
| Administrator mails Notice to Class Members | To begin within 21 days of Entry of Preliminary Approval Order | Tuesday, October 11, 2022 |
| Administrator mails Notice to Class Members | To be completed within 30 days of Entry of Preliminary Approval Order | Thursday, October 20, 2022 |
| Petition for Class Counsel Fees and Named Plaintiffs' Service Awards | No later than 45 days prior to Final Approval Hearing | Tuesday, November 8, 2022 |
| Publish fee petition to website | Within 3 business days of Fee Petition filing | Friday, November 11, 2022 |
| Class Member Objections filed + served | No later than 20 days prior to Final Approval Hearing | Friday, December 1, 2022 |
| Motion for Final Approval | No later than 14 days prior to Final Approval Hearing | Friday, December 9, 2022 |
| Parties' responses to objections | No later than 7 days prior to Final Approval Hearing | Friday, December 16, 2022 |
| Administrator files proof of mailing and publication | No later than 7 days prior to Final Approval Hearing | Friday, December 16, 2022 |
| Final Approval ("Fairness") Hearing | No earlier than 90 days after CAFA Notice served | Friday, December 23, 2022 |

## FACTUAL BACKGROUND

## I.      Background, Case History, Settlement Negotiations

1.    This case is principally a "whipsaw" case that addresses Plaintiffs' claim that the Plan, a "cash balance" defined benefit pension plan, failed to lawfully calculate the lump sum pension benefits it paid during the relevant time (March 23, 2000 to August 17, 2006) to pre-retirement age participants in accordance with ERISA's standards, which require a lump sum to be the present value of a participant's *projected* balance at normal retirement age.  *See Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 274-75 (2d Cir. 2015).

2.    Plaintiffs' contentions here are that PwC violated the law's whipsaw requirements by employing two distinct contrivances, either one of which if upheld as valid would have precluded any recovery for the Class.  First, Plaintiffs challenged the validity of the Plan's definition of Normal Retirement Age as equal to the date the Plan participants completed five years of service regardless of their age—a Plan term that, if found lawful under ERISA § 3(24), would have disposed of Plaintiffs' claims because whipsaw projections are only required when lump sums were distributed before the attainment of normal retirement age.  Second, the Plan projected the future value of participants' accounts at retirement age using the 30-year Treasury rate, even though the Plan offered a broad menu of stock and bond investments that historically produced a higher rate of return.

3.    Although the instant suit was filed in this District in March 2006, the history of this dispute dates back further still, with an initial suit filed by Plaintiff Laurent in Illinois in 2004 and a second suit filed in the District of Columbia in 2005, both of which, after some discovery, were dismissed without prejudice before the case was filed here.  *See* Gottesdiener Decl. ¶ 23.

4.    In September 2006, Judge Mukasey, the judge initially assigned to the case, denied Defendants' motion to dismiss the whipsaw claim, finding that the Plan's five years of

service normal retirement age was illegal. *Laurent v. PricewaterhouseCoopers LLP*, 448 F. Supp. 2d 537, 544-49 (S.D.N.Y. 2006).

5.      After additional discovery, in June 2008 Defendants moved for summary judgment arguing that, based on the opinion of their Nobel Prize-winning expert economist William F. Sharpe, use of the 30-year Treasury rate to make projections was consistent with ERISA's whipsaw standards, rendering the normal retirement age finding moot. *See* Dkt. 62-67.

6.      While Defendants' summary judgment motion was pending, in July 2008, the parties engaged the services of a private mediator, Eric Green, to determine if a settlement could be reached. The mediation was unsuccessful. *See* Gottesdiener Decl. ¶ 24; Dkt. 68.

7.      In September 2010, while their motion for summary judgment was still pending, Defendants filed a motion for reconsideration of Judge Mukasey's 2006 ruling on the basis of two new court decisions – *Fry* v. *Exelon,* 571 F.3d 644 (7th Cir. 2009) and *Pender* v. *Bank of America Corp.,* 2010 WL 3370058 (W.D.N.C. Aug. 25, 2010) – each of which had concluded, in disagreement with Judge Mukasey, that "normal retirement age" could be defined in terms of years of service without regard to age. Dkt. 96. Defendants' reconsideration motion was denied. *Id., Laurent v. PricewaterhouseCoopers LLP*, 2010 WL 5396089 (S.D.N.Y. Dec 22, 2010).

8.      In August 2011, PwC's motion for summary judgment was also denied. Dkt. 102, *Laurent v. PricewaterhouseCoopers LLP*, 2011 WL 3794921 (S.D.N.Y. Aug. 15, 2011).

9.      In October 2011, this case was reassigned to Your Honor. Dkt. 108. After Plaintiffs filed a second amended complaint, in September 2012 Defendants moved to dismiss, once again, on the grounds that the Plan's five years of service normal retirement age was valid as a matter of law. Dkt. 137-139.

10.      After hearing oral argument, this Court ruled in August 2013 that the Plan's five

years of service normal retirement age was indeed invalid, albeit for reasons different from those given by Judge Mukasey.  Dkt. 150, *Laurent v. PricewaterhouseCoopers LLP*, 963 F. Supp. 2d 310, 330-31 (S.D.N.Y. 2013).

11.     In January 2014, the Court certified its normal retirement age order for immediate appeal, which the Second Circuit agreed to hear.  Dkt. 174.

12.     Meanwhile, Defendants answered the second amended complaint, Dkt. 153, and thereafter, the parties briefed Plaintiffs' motion for class certification, which this Court granted in June 2014.  Dkt. 175, *Laurent v. PricewaterhouseCoopers, LLP*, 2014 WL 2893303 (S.D.N.Y. June 26, 2014).

13.     Discovery continued and, in anticipation of further summary judgment proceedings, Plaintiffs' actuarial and finance experts began finalizing their expert reports in earnest.  *See* Gottesdiener Decl. ¶ 23.   At or about at the same time, the parties briefed the normal retirement age question in the Second Circuit.

14.     In June 2014, a second mediation was held, this time before a Second Circuit mediator.  However, the parties again could not agree on settlement.  *See* Gottesdiener Decl. ¶ 25.

15.     On July 23, 2015, the Second Circuit issued its ruling, agreeing with this Court that the Plan's five years of service normal retirement age is invalid, albeit based on somewhat differing reasoning.  *See Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272 (2d Cir. 2015). The Supreme Court denied *certiorari*.  *See* 577 U.S. 1119 (Jan. 25, 2016).

16.     After further discovery and motions practice, both sides filed dispositive motions. In September 2016, PwC filed a Rule 12(c) motion for judgment on the pleadings on the grounds that the whipsaw relief Plaintiffs seek is not authorized by ERISA § 502(a).  Dkt. 209-212.

Shortly thereafter, in December 2016, Plaintiffs moved for summary judgment seeking a determination that the lawful normal retirement age under the Plan is 65; that the Plan's 30-year Treasury projection rate is invalid; and for judicial imposition of a replacement projection rate for the Plan and recalculation of Plaintiffs' lump sum benefits using that rate. Dkt. 216-221.

17.     In July 2017, the Court granted PwC's motion for judgment on the pleadings and denied Plaintiffs' motion for summary judgment, on the grounds that ERISA §§ 502(a)(1)(B) and 502(a)(3) of ERISA do not provide the relief that Plaintiffs sought. Dkt. 236, *Laurent v. PricewaterhouseCoopers LLP*, 2017 WL 3142067 (S.D.N.Y. July 24, 2017). Accordingly, the Court dismissed this case with prejudice. *Id. See also* Dkt. 244, Dkt. 251 (denying motions for reconsideration and for clarification).

18.     Plaintiffs appealed to the Second Circuit, which in December 2019 reversed and remanded for determination of appropriate relief, stating that "the nature of any reformation and consequent relief to which Plaintiffs may be entitled, whether on their motion for summary judgment or otherwise, [are] questions to be resolved by the district court in the first instance." *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739 (2d Cir. 2019) ("*Laurent VII*").

19.     In July 2020, Defendants moved to decertify the class, arguing that a Rule 23(b)(2) class cannot be maintained for the two-step remedy endorsed by the Second Circuit in *Laurent VII*. *See* Dkt. 260-263. At the same time, PwC filed for a writ of *certiorari*.

20.     In October 2020, the Supreme Court asked the U.S. Solicitor General's office for its view, *see* 141 S.Ct. 617 (Oct. 19, 2020), and this Court stayed the case. Dkt. 267. After the Solicitor recommended that the Court deny review on the grounds, among others, that the case was not yet ripe for review, *see* Br. for the United States as Amicus Curiae, 2021 WL 2181532 (May 25, 2021), in June 2021 the Supreme Court denied *certiorari*.

21.     In September 2021, the Court denied Defendants' motion to decertify the class and granted Plaintiffs partial summary judgments that the lawful normal retirement age under the Plan is 65 and that the Plan's 30-year Treasury projection rate is invalid; but the Court declined to grant judgment on the appropriate remedy, if any, and asked the parties to propose next steps. Dkt. 276, *Laurent v. PricewaterhouseCoopers LLP*, 565 F.Supp.3d 543 (S.D.N.Y. 2021).

22.     In October 2021, PwC moved for reconsideration and stated that if Defendants' motion were denied, the case should proceed to trial.  Dkts. 277-79.

23.     In November 2021, with Defendants' motion for reconsideration still pending, the parties renewed their attempts to settle.[1] *See* Gottesdiener Decl. ¶ 25.  Negotiations became more promising from Plaintiffs' perspective some months later, when—in response to a new proposal from Plaintiffs in the summer of 2022—Defendants eventually increased their offer.  *Id.* After further intensive negotiations, Defendants finally agreed in August 2022 to Plaintiffs' proposed total settlement amount of $267 million.  *Id.*

24.     The negotiations leading to the settlement were strictly arm's-length and, as noted above, had been preceded by prior failed attempts at settlement using professional mediators.  *Id.* ¶ 24.  Moreover, by July 28, 2022, when Plaintiffs reached the decision to settle on the terms embodied in the Agreement, Plaintiffs had thoroughly investigated and evaluated their claims and Defendants' available defenses and the risks attendant to further litigation.  Indeed, by that time, the case had been actively litigated for some 18 years (including to the Court of Appeals and back on two separate occasions, and subject to two petitions for certiorari); the parties had engaged in substantial, often highly contentious class certification and merits discovery as well

---

[1] Plaintiffs offer this evidence, consistent with Fed. R. Evid. 408(b), not to prove liability but to provide proof that the negotiations were non-collusive and warrant preliminary (and, eventually, final) approval as "fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e)(2).

as extensive motions practice; Plaintiffs' actuarial and economic finance experts had done extensive work on their expert reports; and Plaintiffs had received and analyzed many thousands of electronically stored and hard-copy documents, having served multiple rounds of document requests, requests for admission, and interrogatories on Defendants.  *Id.* ¶ 23.

25. The parties believe in the merits of their respective positions.  However, to avoid the expense and uncertainty of protracted litigation, the parties entered into the proposed settlement.  PwC believes the settlement is in the best interests of the Plan and Plan participants. Plaintiffs and their counsel likewise believe that the benefits promised by this Agreement make the settlement fair, reasonable and adequate, and in the best interests of the Class.

## II.     The Proposed Settlement

### A.     The Total Settlement Amount

As outlined above, the Agreement provides for Defendants' payment of a Total Settlement Amount of $267 million.  *See* Agreement § 2A.  The net settlement proceeds – *i.e.,* the Total Settlement Amount less Court-authorized deductions – would be distributed to or on behalf of the members of the Class, *i.e.,* the Plan participants, beneficiaries, alternate payees, and estates listed on the Spreadsheet attached to the Settlement Agreement as Attachment A.  *Id.* § 1G, § 1V, § 1QQ, § 1AAA.  No portion of the $267 million settlement is conditioned on applications by Class members:  100% of the Total Settlement Amount (net of Court-approved deductions) will be applied to increase Class members' retirement benefits under the Plan.  *Id.*, § 11C (describing "the requirement (*see* Section 1(AAA)) that the sum of all Final Individual Net Settlement Benefits equals the final value of the Net Settlement Fund").

### B.     The Net Settlement Benefit

The Net Settlement Benefit available for payment to the Class is the Total Settlement

Amount minus: (1) the Court-approved attorney's fees and expenses (including settlement administration costs); and (2) the Class representatives' service awards that the Court approves, if any. *See* Agreement § 3C.

        **1.**     **Attorneys' Fees and Expenses.** Plaintiffs' counsel will seek an award of attorneys' fees of no more than one-third of the Total Settlement Amount, or $89 million, in addition to costs and expenses that are estimated to not exceed $500,000. *See* Agreement § 1I. In addition, Counsel will seek reimbursement of Settlement Administration Costs of an amount not to exceed $90,000, which is to cover the Notice Administrator's costs and the cost of the ERISA enrolled actuary who will calculate all class members' individual settlement benefits according to the Agreement's plan of allocation and including all other costs and expenses in connection with future work that will be necessary to oversee and monitor implementation of the settlement and distribution of its proceeds and notice to the Class. *Id.*, § 1GGG, § 11B.

        To ensure that Class members have an adequate opportunity to review and make objections to the request, counsel will file their application for attorneys' fees, costs and expenses, settlement administration costs, and class representatives' service awards at least 45 days prior to the final approval hearing, *see* Agreement Ex. 1, proposed Preliminary Approval Order ¶ 9 ("fee petition"), and promptly post it on the website dedicated to the proposed settlement (www.laurentpensionclassaction.com), which would be activated upon the Court's grant of preliminary approval, *id.* ¶ 10. Plaintiffs currently envision filing the motion for final approval at the same time as the fee petition, in one combined filing, to avoid repeating discussions relevant to both submissions. *Id.* ¶ 9.

        The proposed Mailed Notice to the Class (discussed further below) will also apprise Class members of counsel's intended fee request and direct Class members to the website for a

copy of the fee petition, the Agreement and other information about the proposed settlement. Agreement Ex. 3, proposed Mailed Notice, pp.4-5 Item 4, pp.6-7 Item 9, p.9 Item 15.  The Mailed Notice explains to Class members that their net benefits would be proportionately higher if the Court awards Class counsel less than the amount requested and reminds them of their rights to object and that the Court will consider any such objections.  *Id.*, pp.4-5 Item 4.

   **2.**  **Class Representative Service Awards.**  Plaintiffs, both of whom had to undergo depositions by the defense, will petition the Court for an award of additional compensation for services rendered to the Class at the same time that counsel files the fee petition.  *See* Agreement § 1M (not to exceed $50,000 for Mr. Laurent; and not to exceed $40,000 for Ms. Sharon).  The Mailed Notice discloses Plaintiffs' intention to make this request and, again, that Class members' net benefit would be proportionately higher if the Court awards less than the amount requested and that the Court will consider any objections class members may have.  Ex. 3, proposed Mailed Notice, pp.4-5 Item 4.

   **C.**  **The Plan of Allocation and Individual Settlement Benefits.**

   The Agreement's plan of allocation calls for a division of the settlement proceeds based on the relative alleged underpayments Class members experienced using an assumed projection rate equal to the applicable 30-year Treasury rate plus 1 percentage point to determine what participants should have been originally paid.[2]  *See* Agreement § 3B.  All calculations – of both the estimated settlement benefits (for purposes of notice) and final benefits for purposes of distribution – were and/or will be completed by an ERISA Enrolled Actuary engaged by Plaintiffs' counsel for these purposes.  *Id.* § 3A.

---

[2] As discussed below, this represents the calculation of whipsaw benefits that the Class could have reasonably expected to receive had the litigation continued and the Class prevailed through final judgment and appeal.

Prior to arriving at each Class member's individual net settlement benefit, the individual gross settlement benefit will be determined based on the difference between the lump sum that should have originally been paid and the account balance lump sum that was originally paid, brought forward with interest. *Id.* § 3B. The individual net settlement benefit will then be determined by applying a factor to the individual gross settlement benefit that represents a *pro rata* reduction to account for (1) the member's share of the overall litigation risk (in that the sum of all individual gross settlement benefits is slightly less than the total settlement amount) and (2) all court-approved deductions (*i.e.,* attorneys' fees and expenses, settlement administration costs and class representative service awards, if any). *Id.* § 3C. Under the Agreement, in no event will any Class member's net settlement benefit be less than $100. *Id.* § 1HH.

Each Class member's net settlement benefit will be paid in a lump sum and, to the greatest extent possible, as a tax-qualified settlement benefit. *Id.* § 15. Class members will have the option of electing to roll the payment over to an IRA or receive a direct distribution, net of the Plan's withholding of federal income taxes. *Id.* § 13B.

## III.  Proposed Notice to the Class – Releases of Liability from the Class

The parties have agreed as to the form and content of both the Mailed Notice and Publication Notice, attached as Exhibits 3 and 4 to the Settlement Agreement, in order to adequately inform all Class members of their rights under the terms of the proposed Settlement and to give them the option of the form in which they wish to receive their settlement benefit, in the event the settlement is approved. The Mailed Notice explains the case history; the Settlement reached; the plan of allocation; the procedure for obtaining final approval; and procedures for objecting to or commenting on the proposed settlement and/or the requested attorneys' fee and class representative service awards once they are submitted. *See* Ex. 3.

Each Mailed Notice will be personal to the recipient and contains a specific estimate of the individual Class member's Settlement Benefit based on the assumption that the Court awards the maximum attorneys' fee, the maximum estimated expense and settlement administration award, and the maximum class representative service awards that can be requested under the Agreement. *See* Ex. 3 at p.1 Item 1, pp.4-5 Item 4. The Mailed Notice informs Class members that should the deductions that the Court ultimately awards be less than the maximums, their resulting net benefit would be proportionately higher than estimated. *Id.* In that context, the Mailed Notice reminds Class members of their rights to object. *Id,* pp.4-5 Item 4.

The Publication Notice will be published in *USA Today* and will also discuss the case history, the proposed settlements, the procedure for obtaining final approval and procedures for objecting to or commenting on the settlements and/or the attorneys' fee, expense award, and/or class representative service awards once they are submitted. *See* Ex. 4.

Plaintiffs will seek entry of a Final Order and Judgment in accordance with the terms of the Agreement dismissing with prejudice all claims in the Lawsuit and releasing Defendants. As described in the Mailed Notice, after final approval each Class member will be deemed to have released claims in accordance with the terms of the Agreement. Ex. 3, p.5 Item 4C.

## DISCUSSION

## I. The Proposed Settlement Meets the Standard for Preliminary Approval

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020).

Rule 23(e) requires judicial approval of a class action settlement, which typically takes place in two stages, preliminary and then final approval. Preliminary approval of a settlement is appropriate where "the parties ... show[] that the court will likely be able to approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B) (2018 revision). Rule 23(e)(2), which governs

final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees; and (vi) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors, known as the *Grinnell* factors, some of which overlap with Rule 23(e)(2):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). A proposed settlement is substantively fair if the totality of the *Grinnell* factors weigh in favor of that conclusion. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 117 (2d Cir. 2005); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir. 2001).

Here, Plaintiffs are requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement. As stated above and discussed further below, the proposed Settlement—providing for a Total Settlement Amount of $267 million in cash, corresponding to the Class's reasonably best possible outcome here—is

an extraordinarily favorable result for the Class and plainly "'within the range of possible approval.'" *In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

## A.     Plaintiffs and Class Counsel Have Adequately Represented the Class

The record demonstrates that Plaintiffs' interests in this case are aligned with those of the other Class members, that Plaintiffs and Class Counsel have vigorously advocated for the Class's interests throughout the exceptionally long history of this case, and have obtained unprecedented results. Plaintiffs' and Class Counsel's decision to settle this case was informed by a thorough investigation of the relevant claims and defenses; extensive discovery, motion practice and repeat litigation in the Court of Appeals and the Supreme Court; consultation with actuarial and economic finance experts; and participation in extensive, hard-fought settlement negotiations over an extended period of time. Accordingly, this factor weighs in favor of approval.

## B.     The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See Wal-Mart,* 396 F.3d at 116. As described above, the proposed Settlement was reached only after extensive, arm's-length negotiations extending over a substantial period of time and only after prior good-faith attempts at settlement earlier in the case had failed. *See* Gottesdiener Decl. ¶¶ 24-25. Moreover, Plaintiffs and Class Counsel clearly had an adequate basis for assessing the strength of the Class's claims and Defendants' defenses thereto when they agreed to the proposed Settlement. These circumstances confirm the presumption of fairness of the proposed Settlement.

The Court can give "great weight" to the opinion of experienced and non-collusive counsel in determining whether to preliminarily approve a settlement. *See, e.g., In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir.

1997).  Undersigned counsel considers the proposed settlement an excellent result in light of the defenses available to the Plan.  Defense counsel, highly experienced in complex class action litigation, also believes the proposed settlement is reasonable.  *See* Agreement at 4, Recital 10.

**C.     The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation**

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd,* 607 F. App'x 73 (2d Cir. 2015).  A court need only determine whether the settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972).

Here, the proposed Settlement is not merely in the "range" of reasonableness—it is within about 5 to 10% of the reasonably best possible recovery that could have occurred here, assuming everything broke Plaintiffs' way in further proceedings in this Court and in the Court of Appeals and the Supreme Court.  This is borne out by the fact that after this Court granted partial summary judgment to Plaintiffs in September 2021, the PwC Plan administrator disclosed in the Plan's annual report filed with the IRS that if Plaintiffs were to prevail on final judgment, "our present estimation is that [] damages would most likely fall within a range of $250 million - $300 million." Ex. A at pdf p.41 (Financial Statements p.16).  Independently, Plaintiffs estimated the Class's reasonable best case outcome to be $290 million, based on the inputs described in the Class Enrolled Actuary's and Class Counsel's Declarations.  *See* Deutsch Decl. ¶¶ 2-4; Gottesdiener Decl. ¶¶ 9-11.

Based on these independently calculated estimates, it is clear that the proposed $267 million settlement represents an extraordinary recovery, given the no-remedy, no-liability, class certification, and other defenses available to Defendants, discussed above and below and further detailed in Gottesdiener Decl. ¶¶ 13-22, that could eliminate or greatly reduce the Class's recovery.  Using $290 million as the most reasonably likely outcome were plaintiffs to prevail—the Class Enrolled Actuary's estimate and the near the top of the range calculated by the Plan—the settlement represents a discount of just 8%.  Given the gauntlet of risks Plaintiffs would have otherwise had to have run if they did not settle, with a material risk of zero recovery, this result is clearly worthy of preliminary approval.

**D.      The Proposed Method for Distributing Relief Is Effective**

The Agreement includes well-established procedures in ERISA cases for efficiently distributing the non-reversionary Net Settlement Fund to all 16,000 members of the Class in a simple and direct way:  Class members do not have to prove anything, but will automatically receive their additional benefit which they can keep as a direct payment or rollover to an IRA.

**E.      Class Counsel's Fee Request Is Fair and Reasonable**

At this stage of the proceedings, the Court is not called upon—nor in a position before Class Counsel file their fee petition and the Class reacts to it—to rule on Class Counsel's request for an award of attorneys' fees equal to one-third of the Total Settlement Amount.  Nevertheless, it is clear that a one-third fee award here would be reasonable and well-deserved, as well as consistent with "'a jealous regard to the rights of those who are interested in the fund,'" *Goldberger v. Integrated Resources Inc.*, 209 F.3d 43, 53 (2d Cir. 2000), in light of (1) the immense time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation and extraordinary results

obtained, (5) the requested fee in relation to the recovery; and (6) public policy considerations. *Id*. at 50.

Counsel achieved an exceptional result against a formidable opponent represented by first-rate legal counsel in a case that from its inception posed very high risks of non-recovery—as is confirmed by the fact that this Court dismissed the case in its entirety with prejudice in 2017, and in 2014 certified for interlocutory appeal PwC's normal retirement age contentions that, had they been successful, would have resulted in zero recovery for the Class. *Compare with Osberg v. Foot Locker, Inc.*, No. 07 Civ. 1358 (KBF) (S.D.N.Y. June 8, 2018), Dkt. 428 at 5, 11-12 (awarding undersigned counsel's firm one-third of a $290 million recovery in an 11-year pension case, saying "it's an unusual history in the amount of dedication, attention to detail, and vigor of representation that had to occur here"; "This is a case where, in my view, the lawyering was particularly critical to the outcome").

Moreover, as the Court knows, the case was exceedingly difficult and complex and of considerable scope and extraordinarily long duration. As will be documented in the forthcoming fee petition, Class Counsel expended very significant time and resources in prosecuting this action, all with no guarantee of payment. *See also* Gottesdiener Decl., Ex. C *Reflections on Osberg v. Foot Locker*, July 7, 2017 ("anyone who litigates in this area knows that it is very hard – and most circuits have adopted a range of doctrinal hurdles making it so – to get courts to award, on equitable relief grounds, any benefits different than those expressly authorized under the plan's terms").

Under *Goldberger*'s "fair percentage of the settlement [or recovery]" test, 209 F.3d at 50, courts evaluate the reasonableness of requested fee by looking to awards found reasonable in comparable cases. As will also be shown in the forthcoming petition, the requested award

compares very favorably with awards in large ERISA and other class action cases where courts, including many within this Circuit, have awarded attorneys' fees that equal or exceed the one-third fee sought here, including in circumstances that do not approach the efficacy and value that Class Counsel's tenacity and commitment created for the Class here. *See, e.g., Haddock v. Nationwide Fin. Serv., Inc*., 01-cv-1552, Dkt. 601 (D. Conn. Apr. 9, 2015) (awarding 35% of a $140 million settlement in an ERISA case which lasted 13 years but settled before any ruling on summary judgment); *In re U.S. Foodservice, Inc. Pricing Litig*., 07-md-1894, Dkt. 521 at 5 (D. Conn. Dec. 9, 2014) (awarding one-third of a $297 million fund after a lengthy litigation but prior to any ruling on summary judgment and where the recovery was apparently only a small fraction of the class's damages); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 510 (S.D.N.Y. 2009) (granting one-third of a $586 million settlement where investors recouped an estimated 2% of losses).

In addition, Counsel submit that as a matter of public policy, the requested one-third fee is necessary to ensure that counsel in future meritorious cases will not hesitate to be equally persistent and press forward as Class Counsel did here to achieve maximum recovery for their clients despite the complications, difficulties, and risk. *See In re AOL Time Warner, Inc. Secs. & ERISA Litig.*, 2006 WL 3057232, at *15 (S.D.N.Y. Oct. 25, 2006) (citing *Goldberger*) ("the Court's major focus in fashioning a fee award is encouraging the bar to undertake future risks for the public good in tomorrow's cases").

## F.     All Class Members Are Treated Equitably Relative to Each Other

The Settlement does not grant preferential treatment to anyone since each Plaintiff's and Class members' additional lump sum will be calculated in exactly the same manner.

## G.     The *Grinnell* Factors Are Also Met

### 1.     The Complexity, Expense, and Likely Duration of the Litigation Supports

**Approval of the Settlement**

The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. No court has ever applied ERISA § 502(a)(3) to reform a plan's whipsaw rate, and the Court of Appeals offered no directions here, which means this Court would have essentially nothing to guide it other than the Parties' dueling arguments and the Court's own research. Compounding the challenge, PwC has signaled that it will seek to relitigate many of the issues that have already been resolved, since the Second Circuit adopted "a legal theory entirely different from that upon which Plaintiffs always have staked their claim for class-wide relief," 3/2/20 PwC Ltr., Dkt. 259 at 3.

In other words, this case is far from the finish line. *See* Gottesdiener Decl. ¶¶ 18-22 (providing additional details). "Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class." *In re Prudential Sec. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995).

### 2. The Reaction of the Settlement Class to the Settlement

Plaintiffs Laurent and Sharon have participated throughout the prosecution of the case, were actively involved in the decision to enter into the Settlement, and wholeheartedly endorse it. *See* Declaration of Timothy Laurent ¶ 7; Declaration of Smeeta Sharon ¶ 7. This factor is otherwise inapplicable at this stage, as notice has not yet been distributed to the rest of the Class.

### 3. The Stage of the Proceedings

After more than 16 years, Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged permitted them to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants.

### 4. The Risk of Establishing Liability and Damages

The fourth and fifth *Grinnell* factors are addressed above under Rule 23(e)(2)(C)(i)

("costs, risks, and delay of trial and appeal").  For the same reasons explained above, Plaintiffs have satisfied the fourth and fifth *Grinnell* factors.

### 5.      The Risks of Maintaining the Class Action Through Trial

Defendants oppose certification, as confirmed by their recent decertification motion, and have indicated that if the litigation continues and the opportunity presents itself, they intend to ask the Court to revisit its certification order.  *See* Gottesdiener Decl. ¶ 20.  Thus, there is a real risk that this case might not be maintained on a class-wide basis through trial and appeal, which weighs in favor of preliminary approval of the Settlement.  *In re Bear Stearns Companies, Inc. Sec., Deriv, and ERISA Lit.*, 909 F.Supp.2d 259, 268-69 (S.D.N.Y. 2012).

### 6.      The Ability of Defendants to Withstand a Greater Judgment

"This factor is typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement."  *In re Namenda Direct Purchaser Antitrust Litigation*, 462 F.Supp.3d 307, 314 (S.D.N.Y. 2020).  Here, Plaintiffs do not contend that Defendants could not withstand a greater judgment.  "This factor, therefore, drops out."  *Id.* at 315.

### 7.      The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eight and ninth *Grinnell* factors are addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  For the same reasons explained above, Plaintiffs have satisfied the eighth and ninth *Grinnell* factors.

## II.      The Proposed Notice Satisfies Rule 23

Assuming the Court preliminarily approves the proposed settlement, Rule 23(e)(1) requires that the district court "direct notice in a reasonable manner to all class members who would be bound by the proposal."  The polestar for assessing the adequacy of notice, whether

through the lens of Rule 23 or constitutional due process, is "reasonableness," *Wal-Mart Stores*, 396 F.3d at 114, which in turn is "a function of anticipated results, costs, and amount involved." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977). As shown above, both the manner of dissemination and the forms of the notice proposed here aim to ensure "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### A. The Content of the Proposed Notice Satisfies Rule 23

The Mailed Notice and Publication Notice provide all of the required information concerning Class members' rights and obligations under the proposed settlement. The Notices set forth the background of the litigation, the definition of the respective Classes, and the key terms of the settlement. The Notices contain sufficient detail to permit each Class member to make an informed decision about whether to support or oppose the settlement as well as how to obtain additional information, whether through the website or by contacting Class Counsel directly. *See In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). The Notices detail the procedures for filing objections to the settlement, Class counsel's fee petition, or the request for service awards to the class representatives, and for requesting to be heard at the final approval hearing. The Notices arguably go beyond the requirements of the Rule by providing a specific estimate of each Class member's settlement benefit.

### B. The Method of Disseminating Notice to Class Members Satisfies Rule 23

The method of transmitting the Notice also satisfies Rule 23. The Notice Administrator (Continental DataLogix LLC, according to Plaintiffs' recommendation) will have Class members social security numbers and the last known mailing addresses with which to contact all Class members. Using that information, the Notice Administrator will update each Class member's address and cause the Notice to be mailed via the U.S. Postal Service to each Class member. If

any Notice is returned as undeliverable, the Notice Administrator will take further steps to obtain correct addresses and re-mail the Notice to those recipients. Dissemination of the Mailed Notice via the Postal Service is the usual notification method for class action certifications and settlements. *See In re Prudential Ins.*, 148 F.3d 283, 326-28 (3d Cir. 1998).

Under the circumstances here, it is sufficient to make only one publication of the Publication Notice in the *USA Today*. Defendants' Class member address data coupled with the Notice Administrator's address update efforts will assure the best practicable communication with Class members and will provide individualized notice via the Postal Service.

## CONCLUSION

WHEREFORE, for the reasons stated herein and for such other reasons as may appear to the Court, Plaintiffs respectfully request that the Court grant preliminary approval to the proposed settlement, enter the parties' proposed Order, authorize mailed and published notice to the Class, and schedule the hearing on final approval of the settlement.

Dated: September 19, 2022            Respectfully submitted,

                                           /s *Eli Gottesdiener*
                                             Eli Gottesdiener
                                             Albert Huang
                                             Gottesdiener Law Firm, PLLC
                                             498 7th Street
                                             Brooklyn, New York 11215
                                             Email: eli@gottesdienerlaw.com
                                             Telephone: (718) 788-1500

                                             *Counsel for Plaintiffs and the Class*